

1  HULETT HARPER STEWART LLP
2  BLAKE MUIR HARPER; SBN: 115756
   SARAH P. WEBER; SBN: 239979
3  550 West C Street, Suite 1600
   San Diego, CA  92101
4  Telephone:    (619) 338-1133
   Facsimile:    (619) 338-1139
5  e-mail:  bmh@hulettharper.com
            sweber@hulettharper.com
6
7  Attorneys for Plaintiff, Harriet Goldstein
   [Additional Counsel Listed on Signature Page]
8

ORIGINAL
FILED

06 OCT -5  PM 2:42

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J.

C06   06286

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| HARRIET GOLDSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SEHAT SUTARDJA, WEILI DAI, PANTAS SUTARDJA, GEORGE A. HERVEY, and MARVELL TECHNOLOGY GROUP, LTD.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1      Plaintiff, individually and on behalf of all other persons similarly situated, by Plaintiff's

2   undersigned attorneys, for her Complaint, alleges upon personal knowledge as to Plaintiff and

3   Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*,

4   the investigation made by and through Plaintiff's attorneys, which investigation included, among

5   other things, a review of the public documents, Securities and Exchange Commission ("SEC")

6   filings, analyst reports, news releases, and media reports of Marvell Technology Group, Ltd.

7   ("Marvell" or the "Company"), as follows:

8                    **NATURE OF THE ACTION**

9       1.      This is a securities fraud class action brought on behalf of all purchasers of

10  Marvell securities from October 3, 2001 through October 3, 2006 (the "Class Period"). Like many

11  other technology companies, Marvell compensated its executives with large grants of stock

12  options. Like too many other companies, Marvell also sometimes granted options unlawfully,

13  such that the grant date and the exercise date were manipulated to produce instant profits that were

14  hidden from shareholders and regulators. Option grants to executives − when done lawfully −

15  properly reflect the date they were granted, and bear as an "exercise price" the price at which the

16  stock closed on the day of the grant or, alternatively, a higher price. No profit should be realizable

17  on the date of grant. To circumvent this rule, some companies (including Marvell) pretended that

18  options had been granted on an earlier date than was truly the case, sometimes weeks or months

19  earlier. Although Generally Accepted Accounting Principles ("GAAP") required that a charge to

20  earnings be taken to account for these lucrative and instantly profitable option grants, taking such a

21  charge would have exposed this practice, something Marvell and its top executives did not want to

22  do.

23       2.      Options backdating among public companies remained secret until the spring of

24  2006 when investigators detected peculiarities in many companies' option grant practices

25  suggesting manipulation. Civil suits, governmental investigations, and (in some cases)

26  indictments soon followed.

27       3.      On May 22, 2006, Joe Osha, a semiconductor industry analyst at Merrill Lynch,

28  reported in a note to clients that the stock prices of six companies in the Philadelphia

1 | Semiconductor Index had surged by an average of at least 14% in the 20 days following option
2 | grants in 1997 through 2002. Among these companies was Marvell. Osha noted that Marvell
3 | executives who received options saw their shares rise an average of 36% during the 20 days
4 | following the granting of options during those six years, compared with an average annual decline
5 | of 14% for Marvell shares in those six years. In reaction to this report, Marvell shares dropped
6 | from a price of $28.11 at the close of trading on May 19, 2006 to $24.81 by May 26, 2006. This
7 | represented a loss of almost $2 billion in shareholder value. (All stock prices quoted in this
8 | Complaint have been adjusted to account for a 2:1 stock split that occurred on July 25, 2006).

9     4.      On July 5, 2006, Marvell disclosed by press release that it had received a request
10 | for documents from the SEC relating to options backdating, and a subpoena from the U.S.
11 | Attorney's Office seeking similar information. Marvell also said that a special committee of its
12 | Board of Directors would examine the Company's stock option practices. This news sent shares
13 | down an additional $1.76, to close on July 5, 2006 at a price of $20.66.

14     5.      On October 2, 2006, Marvell filed a form 8-K with the SEC which set forth the
15 | conclusion of its special committee that Marvell's financial statements for a number of years were
16 | false and could not be relied upon. This report stated, in pertinent part:

17 | > Based on the report of the special committee, and upon the recommendation of
18 | > management and the Audit Committee of the Board of Directors, the Board of
19 | > Directors concluded on October 2, 2006 that the Company will need to restate
20 | > historical financial statements to record additional non-cash charges for stock-based
21 | > compensation expense related to past option grants. The Company has not yet been
22 | > able to determine the amount of these charges, the resulting tax and accounting
23 | > impact of these actions, or which specific reporting periods require restatement.
24 | > Accordingly, the Board of Directors has concluded that the financial statements and
25 | > all earnings press releases and similar communications issued by the Company
26 | > relating to periods beginning on or after its initial public offering in June 2000
27 | > should no longer be relied upon. The Company intends to file its restated financial
28 | > statements as soon as practicable after the completion of the special committee's
     | > review.

25     6.      On October 3, 2006, based in substantial part on these revelations, Marvell stock
26 | plummeted again, closing at only $16.80 per share.

27     7.      From 2001 through 2006, the Defendants herein and other top Marvell insiders
28 | sold shares, often following the exercise of options, which yielded them *$604.7 million* in

2

CLASS ACTION COMPLAINT

proceeds. Many of the options granted were set on dates and at low prices that bespeak manipulation, and which could not have occurred by chance. Because these options were not accounted for in a lawful and proper manner, Marvell's financial performance was materially misstated, and its stock price artificially inflated. Plaintiff therefore, based on these facts, seeks damages on behalf of herself and all persons who purchased Marvell securities during the Class Period.

### JURISDICTION AND VENUE

8. The claims alleged herein arise under Section 10(b) and Section 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t, and S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

9. The jurisdiction of this Court is based on Section 27 of the Exchange Act, 15 U.S.C. §78aa, as well as on 28 U.S.C. §1331 (federal question jurisdiction).

10. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act. Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of materially false and misleading information, occurred in this judicial district. At the time of the wrongs complained of herein, Marvell maintained its executive offices in the United States at 5488 Marvell Lane, Santa Clara, California 95054.

11. In connection with the acts, transactions and conduct alleged herein, Defendants used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of a national securities exchange and market.

### THE PARTIES

12. Plaintiff Harriet Goldstein purchased shares of Marvell common stock during the Class Period, as set forth in the accompanying Certification, and has been damaged as a result of Defendants' conduct as alleged herein.

13. Defendant Marvell provides semiconductors of analog, mixed-signal, digital signal processing, and embedded microprocessor integrated circuits worldwide. Its product portfolio

1   comprises switching, transceiver, wireless, PC connectivity, gateways, communications controller,

2   storage, and power management solutions that serve various applications used in business

3   enterprise, consumer electronics, and emerging markets.  Marvell common stock trades on the

4   NASDAQ under the symbol "MRVL."

5        14.    Defendant Sehat Sutardja ("Sutardja") is a co-founder of Marvell and has served

6   as President of the Company since its inception, as Marvell's Co-Chairman of the Board (until

7   December 2003, when he became Chairman of the Board), and as Chief Executive Officer since

8   1995.  In addition, he has served as President, Chief Executive Officer, and a director of Marvell

9   Semiconductor, Inc. since its inception.  In fiscal 2006, which ended January 28, 2006, Sutardja

10  earned $558,000 in salary and bonus, augmented by $74.8 million realized through the exercise of

11  stock options and the sale of Company stock.  Sutardja, along with Defendant Weili Dai, his wife,

12  are the only two members of the Marvell Board's Stock Option Committee.  Together, as of

13  January 28, 2006, Sutardja and Weili Dai owned 37 million Marvell shares.  During the Class

14  Period, Sutardja sold $144.3 million worth of Marvell stock, much of which was obtained through

15  the exercise of stock options.

16       15.    Defendant Weili Dai ("Dai"), a co-founder of Marvell, has served as Corporate

17  Secretary and a director of Marvell Technology Group, Ltd. since its inception in 1995.  Since

18  March 2006, Ms. Dai has served as Chief Operating Officer of Marvell Technology Group, Ltd.

19  In this role, she is responsible for managing all of the Company's operations and is responsible for

20  managing and leading the Company's Communications and Consumer Business Group.  From

21  1999 until March 2006, Ms. Dai served as Executive Vice President and General Manager of the

22  Communications Business Group.  In fiscal 2006, which ended January 28, 2006, Dai earned

23  $375,000 in salary and bonus, augmented by $45.0 million realized through the exercise of stock

24  options, and sale of Company stock.  During the Class Period, Dai sold $75.4 million worth of

25  Marvell stock, much of which was obtained through the exercise of stock options.

26       16.    Defendant Pantas Sutardja has served as a director and Company Vice President

27  throughout the Class Period.  He is also Chief Technology Officer.  In fiscal 2006, which ended

28  January 28, 2006, Pantas Sutardja earned $300,000 in salary and bonus, augmented by $11.5

CLASS ACTION COMPLAINT

4

1  million realized through the exercise of stock options and the sale of Company stock. During the

2  Class Period, Pantas Sutardja sold $148.7 million worth of Marvell stock, much of which was

3  obtained through the exercise of stock options.

4        17.      Defendant George A. Hervey ("Hervey") joined Marvell in April 2000 as Vice

5  President of Finance, and serves in a similar capacity for Marvell Semiconductor, Inc. In fiscal

6  2006, which ended January 28, 2006, Hervey earned $290,000 in salary and bonus, augmented by

7  $12.0 million realized through the exercise of stock options and the sale of Company stock.

8  During the Class Period, Hervey sold $42.3 million worth of Marvell stock, much of which was

9  obtained through the exercise of stock options.

10                        **CLASS ACTION ALLEGATIONS**

11        18.      Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

12  Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased Marvell

13  common stock during the period October 3, 2001 to October 3, 2006, inclusive and who were

14  damaged thereby (the "Class"). Excluded from the Class are the Company, its officers and

15  directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns,

16  and any entity in which the Company has a controlling interest or of which the Company is a

17  parent or subsidiary.

18        19.      The members of the Class are located in geographically diverse areas and are so

19  numerous that joinder of all members is impractical. The Company has over 585.2 million shares

20  of common stock outstanding. While the exact number of Class members is unknown to the

21  Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes

22  there are, at a minimum, over one thousand members of the Class who held Company stock.

23        20.      Common questions of law and fact exist as to all members of the Class and

24  predominate over any questions affecting solely individual members of the Class. Among the

25  questions of law and fact common to the Class are:

26              a.      Whether Defendants engaged in acts or conduct in violation of the federal

27  securities laws as alleged herein;

28              b.      Whether Defendants had a duty to disclose certain information;

5

CLASS ACTION COMPLAINT

c.    Whether Defendants acted negligently, knowingly, or recklessly in making materially false and misleading statements or in failing to correct such statements upon learning that they were materially false and misleading during the Class Period;

d.    Whether the market price of the Company's common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

e.    Whether members of the Class have sustained damages and, if so, the proper measure of damages.

21.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

22.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

23.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impractical. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**Fraud on the Market Presumption**

24.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.    Defendants made public misrepresentations or failed to disclose material facts regarding Marvell's financial situation during the Class Period;

b.    the omissions and misrepresentations were material;

c.    the securities of the Company traded at all relevant times on the NASDAQ, an efficient and open market;

d.    the misrepresentations and omissions alleged would tend to induce a

6

CLASS ACTION COMPLAINT

1  reasonable investor to misjudge the value of the Company's securities; and

2           c.    Plaintiff and the members of the Class, without knowledge of the

3  misrepresented facts, purchased their Marvell securities between the time Defendants failed to

4  disclose and/or misrepresented material facts and the time the truth was disclosed.

5      25.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a

6  presumption of reliance upon the integrity of the market.

7  **The Safe Harbor Provision is Inapplicable**

8      26.    The statutory safe harbor provided for forward-looking statements under certain

9  circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

10  The statements alleged to be false and misleading herein all relate to then-existing facts and

11  conditions.  In addition, to the extent certain of the statements alleged to be false may be

12  characterized as forward-looking, they were not adequately identified as "forward-looking

13  statements" when made, there were no statements made with respect to any of those

14  representations forming the basis of the Complaint that actual results "could differ materially from

15  those projected," and there were no meaningful cautionary statements identifying important factors

16  that could cause actual results to differ materially from those in the purportedly forward-looking

17  statements.  Alternatively, to the extent that the statutory safe harbor is intended to apply to any

18  forward-looking statements pleaded herein, Defendants are liable for those false forward-looking

19  statements because at the time each of those forward-looking statements was made, the particular

20  speaker had actual knowledge that the particular forward-looking statement was materially false or

21  misleading, and/or the forward-looking statement was authorized and/or approved by an executive

22  officer of Marvell who knew that those statements were false when made.

23                          **SUBSTANTIVE ALLEGATIONS**

24      27.    A stock option granted to an employee of a corporation allows the employee to

25  purchase company stock at a specified price – referred to as the "exercise price" – for a specified

26  period of time.  Stock options are granted as part of employee compensation packages as a means

27  to create incentives to boost profitability and stock value.  When the employee exercises the

28  option, he or she purchases the stock from the company at the exercise price, regardless of the

                                                                                    7

CLASS ACTION COMPLAINT

1   stock's price at the time the option is exercised.  If the exercise price is lower than it should be, the

2   employee pays less and the company gets less when the stock option is exercised.  When shares

3   rise above that price, the holder can profit by buying shares at the lower exercise price and selling

4   them at the higher market price, profiting from the difference, less transaction costs and taxes.

5        28.        The practice of manipulating stock option dates not only potentially lined the

6   pockets of the Individual Defendants, but also resulted in the overstatement of Marvell's current

7   and historical profits, as reported in SEC filings between 2000 and 2006.  This is because options

8   priced below the stock fair market value when they are awarded bring the recipient an instant

9   paper gain.  Under accounting rules, that is the equivalent of additional compensation and thus

10  must be treated as a cost to the company.  Marvell did not properly account for the options

11  granted.  As a result of the Company's manipulating the actual dates of measurement for stock

12  options, Marvell was forced to restate its previously issued financial statements, such that the

13  statements from June 2000 to the present can no longer be relied upon.

14  **Evidence of Stock Option Manipulation**

15       29.        In fiscal 2001, Marvell claimed that the date of its option grants to Defendant

16  Hervey was January 2, 2001, with the price set at the month's lowest price, $21.38 per share.

17  Hervey was granted 40,000 options.  Soon thereafter, the price closed at a price in excess of

18  $24.00 per share.

19       30.        In fiscal 2003, Hervey again received option grants near monthly low prices.

20       31.        In February 2002, although Marvell stock traded as high as $38.00 per share,

21  Hervey was granted 40,000 options at $30.69 per share.  Then, in October 2002, Hervey was

22  granted 70,000 at $13.87, even though the stock traded as high as $16.64 in that same month.

23       32.        In fiscal 2004, Defendants Sutradja, Dai, and Pantas Sutardja received large option

24  grants:  Sutardja received 1,500,000 options; Dai, 1 million options; and Pantas Sutardja, 660,000

25  options.  Hervey received 120,000 options.  The grants were supposedly made on December 26,

26  2003 at a price of $36.50 per share; the price rose to $43.00 per share by mid-January 2004.

27  Although federal rules (as set forth in Section 403 of the Sarbanes-Oxley Act of 2002) required

28  these grants to be reported on SEC Form 4 within two days, it was not until March 9, 2004 that

CLASS ACTION COMPLAINT

8

1  Sutardja, Dai and Pantas Sutardja reported the existence, dates, and exercise prices relating to the

2  options. A grant of 70,000 options to Hervey, supposedly on January 2, 2004 at $37.90 per share,

3  was not disclosed in a Form 4 filing until February 18, 2004, by which time the price had

4  increased to over $44 per share.

5  **Defendants' Motives and Other Wrongful Acts**

6       33.    Defendants engaged in improper practices in order to bolster the Company's stock

7  price. Defendants directly participated in an accounting fraud which materially overstated the

8  Company's financial results in violation of GAAP. Defendants materially overstated Marvell's

9  financial results by improperly recording the actual dates of measurement for past stock option

10 grants. As a result of the Company's manipulation of the actual dates of measurement for stock

11 options, Marvell was forced to restate its previously issued financial statements.

12      34.    In knowing or reckless disregard of the truth, Defendants issued and/or

13 participated in the issuance of materially false and misleading statements and financial information

14 to the investing public, as particularized above. These representations were materially false and

15 misleading when made for the reasons set forth herein.

16      35.    In addition, Defendants not only falsely and materially overstated the Company's

17 earnings figures, but failed to file financial statements with the SEC which conformed to the

18 requirements of GAAP, such that the financial statements were presumptively misleading and

19 inaccurate pursuant to Regulation S-X, 17 C.F.R. 210.4-01(a)(1).

20      36.    As a result of its accounting improprieties, Marvell's reported financial results also

21 violated at least the following provisions of GAAP, for which each Defendant is necessarily

22 responsible:

23      The principle that financial reporting should provide information that is useful to
24      present and potential investors, creditors, and other users in making rational
        investment, credit, and similar decisions was violated (FASB Statement of
25      Concepts No. 1, ¶ 34);

26      The principle that financial reporting should provide information about the
        economic resources of an enterprise, the claims to those resources, and the effects
27      of transactions, events, and circumstances that change resources and claims to those
        resources was violated (FASB Statement of Concepts No. 1, ¶ 40);

28

9

CLASS ACTION COMPLAINT

The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶ 50);

The principle that financial reporting should provide information about an enterprise's financial performance during a period of time was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶ 42);

The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant to a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶ 58-59);

The principle of completeness, which means that nothing is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions, was violated (FASB Statement of Concepts No. 2, ¶ 79); and

The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶ 95, 97).

37. Defendants' false representations and material omissions were made with *scienter* in that: Defendants knew or recklessly disregarded that the Class Period SEC Filings and the Class Period press releases were materially false and misleading as described above; knew or were reckless in not knowing that the false financial results would be issued or disseminated to the investing public; and knowingly and substantially participated in the preparation and/or issuance or dissemination of such statements or documents.

## COUNT I

### For Violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5

38. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

39. During the Class Period, Defendants, individually and in concert, engaged in a plan, scheme, and course of conduct, pursuant to which they knowingly and/or recklessly engaged

10

1   in acts, transactions, practices, and courses of business which operated as a fraud upon Plaintiff

2   and other members of the Class, and made various untrue and deceptive statements of material fact

3   and omitted to state material facts necessary in order to make the statements made, in light of the

4   circumstances under which they were made, not misleading to Plaintiff and other Class members.

5   The purpose and effect of this scheme were to induce Plaintiff and the Class to purchase Marvell

6   common stock at artificially inflated prices.

7        40.    During the Class Period, Defendants, pursuant to their plan, scheme and unlawful

8   course of conduct, knowingly and/or recklessly issued, or caused to be issued, statements to the

9   investing public as described above, including the Class Period press releases and the Class Period

10   SEC Filings.

11        41.    Defendants knew and/or recklessly disregarded the falsity of the foregoing

12   statements. As senior officers and/or directors of the Company, involved in its business and

13   operations, the Individual Defendants had access to the non-public information detailed above, by

14   virtue of their receipt of periodic internal reports detailing actual sales, advertising revenues, and

15   other financial information.

16        42.    Throughout the Class Period, Marvell acted through the Individual Defendants,

17   whom it portrayed and represented to the press and public as its valid representatives. The

18   willfulness, motive, knowledge, and recklessness of the Individual Defendants are therefore

19   imputed to Marvell, which is primarily responsible for the securities law violations of the

20   Individual Defendants while acting in their official capacities as Company representatives, or, in

21   the alternative, which is liable for the acts of the Individual Defendants under the doctrine of

22   *respondent superior.*

23        43.    Each of the Defendants knew or recklessly disregarded the fact that the above acts

24   and practices, misleading statements, and omissions would adversely affect the integrity of the

25   market in Marvell's common stock. Had the adverse facts that Defendants concealed been

26   properly disclosed, Marvell's stock would not have sold at the artificially inflated prices that it did

27   during the Class Period.

28        44.    The value of Marvell common stock declined materially upon public disclosure of

11

CLASS ACTION COMPLAINT

the truth concerning the Company's financial circumstances, financial circumstances which had been misrepresented or concealed as alleged in this Complaint. Plaintiff and other members of the Class have suffered substantial damages as a result of the wrongs alleged herein.

45.    By reason of the foregoing, Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46.    By reason of their status as officers and/or members of management and as directors of Marvell, the Individual Defendants were "controlling persons" of Marvell within the meaning of § 20 of the Exchange Act, and had the power and influence to cause Marvell to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Marvell's business, the information contained in its filings with the SEC, and public statements about its business.

## COUNT II

### For Violations of Section 14(a) of the Exchange Act and Rule 14a-9

47.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

48.    Rule 14a-9, promulgated pursuant Section 14(a) of the Exchange Act provide that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."

49.    The Proxy Statements filed with the SEC and disseminated to shareholders during the Class Period violated Section 14(a) and Rule 14a-9 because they materially misrepresented the method used to value the stock options issued to Defendants. The Individual Defendants herein are liable for any damages caused by these proxy violations.

### PRAYER

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action maintainable pursuant to Rule 23

12

CLASS ACTION COMPLAINT

1   of the Federal Rules of Civil Procedure, and Plaintiff to be a proper class representative and

2   Plaintiff's counsel lead counsel;

3        B.    Awarding Plaintiff and the Class compensatory damages, together with

4   appropriate pre-judgment interest at the maximum rate allowable by law;

5        C.    Awarding Plaintiff and the Class their costs and expenses for this litigation,

6   including reasonable attorneys' fees and disbursements; and

7        D.    Granting such other and further relief as this Court deems to be just and proper.

8                             **DEMAND FOR JURY TRIAL**

9       Plaintiff demands a trial by jury on all issues.

10   DATED: October 5, 2006          HULETT HARPER STEWART LLP
                                      BLAKE MUIR HARPER

11                                      SARAH P. WEBER

13

14                                      SARAH P. WEBER

15                                   550 West C Street, Suite 1600
                                  San Diego, CA 92101

16                                   Telephone:   (619) 338-1133

17                                   Facsimile:    (619) 338-1139

18                                   JACOBS LAW GROUP, PC
                                  SAMUEL R. SIMON

19                                   1800 JFK Boulevard, Suite 404

20                                   Philadelphia, PA 19103
                                  Telephone:   (215) 569-9701

21                                   Facsimile:    (215) 569-9788
                                  e-mail: ssimon@jacobslawpc.com

22

23                                   THE PASKOWITZ LAW FIRM PC
                                  LAURENCE D. PASKOWITZ

24                                   ROY L. JACOBS
                                  60 East 42nd Street, 46th Floor

25                                   New York, NY 10016
                                  Telephone:   (212) 685-0969

26                                   Facsimile:    (212) 685-2306
                                  e-mail: classattorney@aol.com

27

28                                   Attorneys for Plaintiff, Harriet Goldstein

13

CLASS ACTION COMPLAINT

1  <u>CERTIFICATE OF INTERESTED PARTIES</u>

2       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, no such interest is

3  known other than that of the named parties to the action.

4  DATED: October 5, 2006                    HULETT HARPER STEWART LLP
                                             BLAKE MUIR HARPER
5                                            SARAH P. WEBER

6

7

8                                            _____
                                             SARAH P. WEBER
9
                                             550 West C Street, Suite 1600
10                                           San Diego, CA  92101
                                             Telephone:    (619) 338-1133
11                                           Facsimile:    (619) 338-1139

12                                           JACOBS LAW GROUP, PC
                                             SAMUEL R. SIMON
13                                           1800 JFK Boulevard, Suite 404
                                             Philadelphia, PA  19103
14                                           Telephone:    (215) 569-9701
                                             Facsimile:    (215) 569-9788
15                                           e-mail: ssimon@jacobslawpc.com

16
                                             THE PASKOWITZ LAW FIRM PC
17                                           LAURENCE D. PASKOWITZ
                                             ROY L. JACOBS
18                                           60 East 42nd Street, 46th Floor
                                             New York, NY  10016
19                                           Telephone:    (212) 685-0969
                                             Facsimile:    (212) 685-2306
20                                           e-mail: classattorney@aol.com

21

22                                           Attorneys for Plaintiff, Harriet Goldstein

23

24

25

26

27

28
                                                                                          14

CLASS ACTION COMPLAINT

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint against Marvell Technology Group, Ltd. ("MRVL") and certain other defendants.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.     Plaintiff made the following transactions during the Class Period (Oct. 3, 2001 through Oct. 3, 2006) in the common shares of MRVL:

| Purchases | | | | Sales | | |
|---|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 6/28/06 | 400 | $42.30 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

6.     During the three years prior to the date of this Certification, Plaintiff has not moved to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.     I declare under penalty of perjury, this 5th day of October, 2006 that the information above is accurate.

_Harriet Goldstein_