Joseph J. Tabacco, Jr. (75484)
jtabacco@bermanesq.com
Nicole Lavallee (165755)
nlavallee@bermanesq.com
Julie J. Bai (227047)
jbai@bermanesq.com
**BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: 415-433-3200
Facsimile:  415-433-6382

**Liaison Counsel for Lead Plaintiffs**
**Police and Fire Retirement System of the City of Detroit, Monte Paschi Asset Management S.G.R. S.p.A. and Puerto Rico Government Employees Retirement System**

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE MARVELL TECHNOLOGY GROUP, LTD. SECURITIES LITIGATION | Master File No. C-06-06286 RMW<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | Date:  September 12, 2008<br>Time:  9:00 a.m.<br>Ctrm:  6, 4th Floor<br>The Honorable Ronald M. Whyte |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I. INTRODUCTION ...............................................................................................................3

II. LEAD PLAINTIFFS' PARTICULARIZED REQUESTS FOR DISCOVERY ...................5

III. STATEMENT OF FACTS ..................................................................................................5

    A. THE RESTATEMENT AND GOVERNMENTAL INVESTIGATIONS.................6

    B. GOVERNMENTAL ACTION AND MARVELL'S SETTLEMENTS ....................7

IV. ARGUMENT........................................................................................................................7

    A. CONGRESS EXPRESSLY PROVIDED THAT THE PSLRA SHOULD BE LIFTED WHERE, AS HERE, UNDUE PREJUDICE WOULD OTHERWISE RESULT ........................................................................................7

        1. The Requested Discovery Must Be Sufficiently Particularized..........................9

        2. The Requested Discovery Must Be Necessary To Preserve Evidence Or To Prevent Undue Prejudice ..........................................................................10

        3. Key Opinions Support The Lifting Of The PSLRA Stay Of Discovery...........10

    B. THE LIMITED DISCOVERY REQUESTED BY LEAD PLAINTIFFS IS APPROPRIATE UNDER THE PSLRA ...................................................................11

        1. Lead Plaintiffs' Discovery Requests Are Highly Particularized.......................11

        2. Lead Plaintiffs And The Class Will Suffer Undue Prejudice If The PSLRA Discovery Stay Is Not Partially Modified........................................................12

            a) With the Benefit of Discovery, the Other Plaintiffs Have Been Able to Reach Settlements...............................................................................12

            b) By Exploiting the PSLRA Stay of Discovery, Defendants Have Been Selectively Citing From the Findings of the Special Committee and Using Such "Findings" as Evidence ..................................................13

            c) Plaintiffs are not Attempting to Embark on a Fishing Expedition to Support Frivolous Claims ........................................................................14

        3. Partial Modification Of The Discovery Stay Is Necessary To Preserve Key Evidence ......................................................................................................15

V. CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. First Sec. Corp.*, 157 F.Supp.2d 1230 (D. Utah 2001) .................................................10

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 Civ. 342 (DLC),
    1999 U.S. Dist. LEXIS 5439, at *5 (S.D.N.Y. Apr. 16, 1999) ....................................................10

*In re Brocade Sec. Litig.*, No. C-05-0242, Transcript of Proceedings, at 28:20-23
    (N.D. Cal. Nov. 3, 2006) ........................................................................................................8, 10

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, MDL No. 1725,
    2007 U.S. Dist. LEXIS 10408, at *12 (E.D. Mich. Feb. 15, 2007) ......................................passim

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, No. MDL-1446,
    2002 U.S. Dist. LEXIS 26261, at *30 (S.D. Tex. Aug. 16, 2002) ........................................passim

*In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541 (N.D. Ohio 2004) ...............................8, 11, 12

*In re Flir Sys., Inc. Sec. Litig.*, Civil No. 00-360-HA, U.S. Dist. LEXIS 19391, at **8-9
    (D. Or. Dec. 13, 2000) ..................................................................................................................13

*In re Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d 100 (D. Mass. 2002) ...........................9, 10, 15

*In re Marvell Tech. Group Ltd. Derivative Litig.*, No. C-06-03894 RMW,
    2007 U.S. Dist. LEXIS 41268 (N.D. Cal. May 29, 2007) .............................................................2

*In re Royal Ahold N.V. Sec. & "ERISA" Litig.*, 220 F.R.D. 246 (D. Md. 2004) ...............8, 9, 11, 15

*In re Tyco Int'l, Ltd.*, No. MDL 1335, Practice and Procedure Order No. 5, at 10-11
    (D.N.H. Jan. 29, 2003) .......................................................................................................8, 10, 12

*In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301 (S.D.N.Y. 2002) ...................................passim

*Tobias Hldgs., Inc. v. Bank United Corp.*, 177 F.Supp.2d 162 (S.D.N.Y. 2001) .........................8, 14

*Vacold LLC v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 U.S. Dist. LEXIS 1589, at *24
    (S.D.N.Y. Feb. 16, 2001) .............................................................................................................14

**Statutes**

15 U.S.C. §78u-4(b)(3)(B) ..........................................................................................................passim

**Other Authorities**

H.R. Conf. Rep. No. 104-369 at 37 (1995); S. Rep. No. 104-98 (1995) ....................................7, 14

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Ronald M. Whyte, United States District Judge, Lead Plaintiffs Police and Fire Retirement System of the City of Detroit, Monte Paschi Asset Management S.G.R. S.p.A., and Puerto Rico Government Employees Retirement System (collectively, "Lead Plaintiffs") will, and hereby do, move this Court for an Order granting a partial modification of the Private Securities Litigation Reform Act of 1995's ("PSLRA") discovery stay.

This motion is made pursuant to 15 U.S.C. §78u-4(b)(3)(B) on the ground that the particularized discovery that Lead Plaintiffs seek is necessary to prevent undue prejudice and to preserve evidence.

This motion is based on the following Memorandum of Points and Authorities, the Declaration of Julie J. Bai ("Bai Declaration" or "Bai Decl."), filed concurrently herewith, and all other pleadings and matters of record and further representations as may be presented at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiffs request that the Court lift the stay of discovery imposed pursuant to 15 U.S.C. §78u-4(b)(3)(B) for the limited purpose of allowing Lead Plaintiffs to obtain (1) a copy of documents that Marvell Technology Group, Ltd. ("Marvell" or "Company") has already gathered, reviewed and produced to federal authorities, *i.e.,* the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ"), and the plaintiffs in the derivative action, *In re Marvell Technology Group Ltd. Derivative Litigation*, Case No. 5:06-cv-03894-RMW, pending in the U.S. District Court for the Northern District of California, ("Derivative Action"); and (2) a copy of documents collected and reviewed by the Special Committee and the outside auditors in conjunction with their investigation of the conduct at issue in this case and any draft and final reports the Special Committee created in connection with its investigation into Marvell's fraudulent stock option backdating.

These limited and particularized discovery requests are necessary to prevent undue prejudice to Lead Plaintiffs, *see* 15 U.S.C. §78u-4(b)(3)(B), since (1) settlement agreements have been reached with plaintiffs in the Derivative Action and the SEC, which brought a formal action against Marvell and Weili Dai, the Company's former chief operating officer on May 8, 2008 ("SEC Action") and both of them entered into consent decrees; (2) presumably the Derivative Action plaintiffs, the SEC and the DOJ – *i.e.,* all parties and governmental entities prosecuting and/or investigating Marvell *other than Lead Plaintiffs* – have had access to core documents that are critical to the claims alleged in the instant action; (3) the lack of access to *any* internal documents make attempted settlement efforts with Defendants in the instant action more difficult particularly because Defendants selectively use internal investigative reports in their defense but refuse to allow Lead Plaintiffs any access to findings contained therein; and (4) there is a limited amount of insurance proceeds over which the other prosecuting parties and Lead Plaintiffs are vying to settle claims against Marvell – proceeds which are also being depleted to cover the legal costs incurred by Marvell in defending these actions.

While this Court previously did not lift the stay of discovery in the Derivative Action, the circumstances have changed. *See In re Marvell Tech. Group Ltd. Derivative Litig.*, No. C-06-03894 RMW, 2007 U.S. Dist. LEXIS 41268 (N.D. Cal. May 29, 2007). At that time, there were no settlements reached, and the Derivative Action plaintiffs had failed to proffer any evidence why they were being prejudiced. *Id* at \*\*9-10 (This Court held that "[t]his statement in Marvell's SEC filing does not show that the plaintiffs would be unduly prejudiced by a stay."). Significantly, this Court did recognize that some courts have found prejudice to plaintiffs where the discovery stay "puts plaintiffs advancing claims under the Exchange Act at an informational disadvantage relative to plaintiffs asserting different claims or government investigators." *Id*. at \*\*8-9. This Court also acknowledged that, while the fact that "certain production may be a minimal burden to the defendants because they have already compiled documents for their internal investigation does not independently justify lifting a stay, though *it could be considered as a factor when ruling on a motion to lift a stay to prevent undue prejudice.*" *Id.* at \*8 (emphasis added).

As discussed below, Lead Plaintiffs respectfully submit that the landscape has changed

2

1  substantially since the Court issued the Order in the derivative case (*e.g.,* Marvell has produced
2  documents to the SEC, and the Special Committee and has settled with the SEC and the Derivative
3  Action plaintiffs) and they are at a substantial informational disadvantage relative to other
4  prosecuting parties, some of whom have already reached settlement agreements with Marvell.

**I.     INTRODUCTION**

On August 16, 2007, Lead Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") against Marvell and certain of its current and former executives.[1] In addition to this case, there are at least two additional actions currently pending against Marvell arising from the same fraudulent conduct alleged in Lead Plaintiffs' Complaint: (1) the Derivative Action, and (2) the SEC Action.  Marvell is also under investigation by the office of the U.S. Attorney for the Northern District of California.  In both the Derivative Action and the SEC Action, the prosecuting parties have reached settlement agreements.

Furthermore, the prosecuting parties in both of these actions presumably have been allowed to obtain discovery from Marvell.  However, Lead Plaintiffs in this case are not on equal footing with these other plaintiffs/prospective parties because they have been prevented from obtaining any discovery pursuant to the PSLRA stay of discovery.

Additionally, as noted above, the prosecuting parties in these actions, as well as Lead Plaintiffs, are competing for the same pot of limited funds.  The limited funds must cover not only settlements or judgments in all actions, but also, presumably, the legal costs incurred by Marvell in defending these actions.  Indeed, before this Court rules upon the currently pending motions to dismiss Lead Plaintiffs' Complaint, Marvell and Dai will have settled claims against them by the SEC for $10 million and $500,000, respectively.  Moreover, on June 10, 2008, the parties in the Derivative Action announced that they had reached a settlement including "corporate governance enhancements" and up to $16 million in attorneys' fees.  Marvell's quick settlements are more than just an implicit admission of wrongdoing – they also indicate a significant depletion in the funds

---

[1] Lead Plaintiffs asserted claims against the following individuals: Sehat Sutardja ("Sutardja"), Weili Dai ("Dai"), George Hervey and John Cioffi (collectively, "Individual Defendants").

3

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR                    No.: C-06-06286 RMW
PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

1  available to Lead Plaintiffs to settle their claims. Indeed, when a company's conduct is so blatantly fraudulent, as is Marvell's here, the attention that it draws is not only that of its investors. Instead, when a company like Marvell deliberately chooses to commit fraud, the result is multiple injured parties seeking to be compensated out of a limited fund.

Without access to documents presumably already made available to the U.S. Attorney, the SEC, the Derivative Action plaintiffs and, in whole or in part, Marvell's Special Committee, Lead Plaintiffs are prejudiced by their inability to make informed decisions about their litigation strategy. Indeed, although the SEC and the Derivative Action plaintiffs have reached settlements with various Defendants, Lead Plaintiffs' mediation efforts with Defendants have not been successful. Without access to these basic documents, Lead Plaintiffs cannot fully evaluate the strengths and weaknesses of Defendants' defenses.

Furthermore, based upon publicly available information, Lead Plaintiffs believe that Marvell has reviewed, gathered and produced a readily identifiable universe of documents to federal agencies in the course of the ongoing investigations – a universe of documents that can and should be easily reproduced and provided to Lead Plaintiffs. For example, the SEC complaint cites internal correspondence by Marvell personnel suggesting that "long delays between option grants…were caused not by a time lag between the date of the Stock Option Committee meeting and the time the grant date was communicated to stock administration personnel, but rather by the practice of using historical stock price information to select grant dates with low stock prices." *SEC v. Marvell Technology Group, Ltd.*, No. 5:08-cv-02367-HRL (N.D. Cal.), Dkt. No. 1, ¶24. The SEC complaint further identifies "at least 30 sets of fraudulent Stock Option Committee minutes," ¶22, and the existence of lists of Marvell's "historic stock prices dating back to the last date a grant was made," ¶21, used by Dai to select grant dates. In addition, Marvell's Form 10-K for the 2007 fiscal year, filed with the SEC on July 2, 2007 ("Restatement"), states that the Company provided the results of its internal review of stock options practices to both the SEC and the U.S. Attorney for the Northern District of California.

In order to keep pace with the other entities prosecuting Marvell for its wrongdoing, particularly those who have already entered into settlement agreements with the Company, as well

4

as to prevent significant prejudice to Lead Plaintiffs, Lead Plaintiffs believe that it is necessary and in the best interests of the prospective Class for this Court to partially modify the PSLRA discovery stay to allow Lead Plaintiffs to obtain a discrete set of documents that have already been produced.

## II. LEAD PLAINTIFFS' PARTICULARIZED REQUESTS FOR DISCOVERY

Lead Plaintiffs' requests for discovery are limited. On information and belief, Marvell has maintained a complete set of documents that have been produced in the above-described investigations and can easily provide a copy of these documents to Lead Plaintiffs with minimal, if any, burden. Lead Plaintiffs specifically request entry of an order requiring Marvell to immediately produce the following documents:

    a. Copies of all documents collected and/or reviewed by Marvell's Special Committee and/or outside auditors in conjunction with their investigation of the conduct at issue in this case;

    b. Copies of all documents produced in conjunction with the SEC and DOJ investigations;

    c. Copies of all documents, if any, produced to the Derivative Action plaintiffs in connection with the investigation into Marvell's fraudulent stock option backdating; and

    d. Any draft and final reports the Special Committee created in connection with its investigation into Marvell's fraudulent stock option backdating.[2]

## III. STATEMENT OF FACTS

The factual background of this case is detailed in Lead Plaintiffs' Complaint and its Omnibus Memorandum of Points and Authorities in Support of Lead Plaintiffs' Opposition to All Defendants' Motions to Dismiss, which are incorporated herein by reference. However, a short summary of specific facts relevant to this motion is provided below.

---

[2] If the Court denies Defendants' motions to dismiss prior to the time a hearing is held on this motion, which would serve to automatically lift the PSLRA's discovery stay, Lead Plaintiffs nevertheless would request an Order from the Court requiring Marvell to immediately produce the documents itemized above without further delay. Lead Plaintiffs make this request in an effort to avoid the unnecessary waste of time and resources that would occur if Lead Plaintiffs had to serve Marvell with discovery requests for these same documents, and Marvell had 30 days to object and respond.

5

### A.  THE RESTATEMENT AND GOVERNMENTAL INVESTIGATIONS

The options backdating scheme carried out by Marvell and the Individual Defendants caused Marvell to materially misrepresent its financial statements during the Class Period. The Company's SEC filings, including its Forms 10-K and 10-Q and its proxy statements, for the period from its initial public offering in June 2000 through June 2006, were false and misleading because they omitted material facts related to the Company's backdating scheme. ¶34.[3]

Marvell's scheme began to come to light on May 22, 2006, when Merrill Lynch issued a research analyst report that examined the unusually fortuitous timing of stock option grants by semiconductor equipment companies comprising the Philadelphia Semiconductor Index. Marvell was one of the companies on which Merrill Lynch's analyst report focused. Then, on July 5, 2006, Marvell filed a Form 8-K with the SEC disclosing that the Company had "received a letter of formal inquiry from the [SEC] requesting certain documents relating to the Company's stock option grants and practices." The filing also revealed that a grand jury subpoena to the Company had been issued by the office of the U.S. Attorney for the Northern District of California and announced the Special Committee's internal review of the Company's stock option practices. On August 17, 2006, Marvell announced that it was unlikely to timely file its second quarter 2007 results with the SEC on Form 10-Q because of the ongoing investigation into the Company's historical stock option practices and accounting matters. On October 2, 2006, Marvell finally admitted that the Company's executives had backdated stock options when it announced the preliminary results of the Special Committee's review. On January 4, 2007, the Company filed a Form 8-K that announced that the Special Committee had determined that with respect to certain option grants to the Individual Defendants, the exercise prices of the grants were significantly lower than the fair market value of the stock on the measurement date. On April 24, 2007, Marvell filed a Form 8-K with the SEC and disclosed that the SEC's "informal investigation" into the Company's stock option practices had been upgraded to a "formal investigation." ¶¶81-94.

Finally, on July 2, 2007, Marvell restated its consolidated financial statements and related

---

[3] All "¶__" references are to the Complaint.

6

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

No.: C-06-06286 RMW

1  disclosures for fiscal years ended January 28, 2006 and January 29, 2005, "Selected Consolidated
2  Financial Data" in Item 6 for fiscal years 2006, 2005, 2004 and 2003 and "Management's
3  Discussion and Analysis of Financial Condition and Results of Operation" in Item 7 for fiscal years
4  2006 and 2005.  The Restatement resulted from the investigation by Marvell's Special Committee.
5  ¶132.

6  As a result of these findings, the Special Committee recommended that Dai have "no
7  continuing role with the Company," and Sutardja step down as Chairman of the Company's board
8  to assume a non-executive Chairman position.  ¶131.  Marvell also admitted its internal controls,
9  particularly as they related to stock option grants, were virtually non-existent.  ¶129.  These were
10 startling admissions by the Company, which has not even attempted to explain why it failed to do
11 anything about the lack of internal controls or the pervasive accounting violations that went on
12 right under its nose.

13 **B.    GOVERNMENTAL ACTION AND MARVELL'S SETTLEMENTS**

14 On May 8, 2008, the SEC announced the filing of its complaint against Marvell and Dai,
15 and that the Company and Dai would settle the SEC's charges for $10 million and $500,000,
16 respectively.  Subsequently, on June 10, 2008, Marvell announced that it had reached a settlement
17 with the Derivative Action plaintiffs, including "corporate governance enhancements" and up to
18 $16 million in attorneys' fees.

19 **IV.    ARGUMENT**

20 **A.    CONGRESS EXPRESSLY PROVIDED THAT THE PSLRA SHOULD BE
21         LIFTED WHERE, AS HERE, UNDUE PREJUDICE WOULD OTHERWISE
              RESULT**

22 The reasons for the PSLRA discovery stay are not present in this case.  The PSLRA
23 provides that "all discovery and other proceedings shall be stayed during the pendency of any
24 motion to dismiss …." 15 U.S.C. §78u-4(b)(3)(B).  The purpose of this stay is:  (1) "to minimize
25 the incentives for plaintiffs to file frivolous securities class actions in the hope either that the
26 corporate defendants will settle those actions rather than bear the high costs of discovery; (2) or
27 that the plaintiff will find during discovery some sustainable claim not alleged in the complaint."
28 *In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 305 (S.D.N.Y. 2002) (citing H.R. Conf. Rep.

1   No. 104-369 at 37 (1995); S. Rep. No. 104-98 (1995)); *see also In re Delphi Corp. Sec., Deriv. &*
2   *"ERISA" Litig.*, MDL No. 1725, 2007 U.S. Dist. LEXIS 10408, at *12 (E.D. Mich. Feb. 15, 2007);
3   *In re Royal Ahold N.V. Sec. & "ERISA" Litig.*, 220 F.R.D. 246, 249 (D. Md. 2004); *In re Brocade*
4   *Sec. Litig.*, No. C-05-0242, Transcript of Proceedings, at 28:20-23 (N.D. Cal. Nov. 3, 2006) ("[I]n
5   looking at what I think is the spirit of the PSLRA, it is to make sure that discovery is not used as a
6   vehicle in order to gather evidence to warrant liability…in the initial statements."), attached to the
7   Bai Declaration as Exh. A.

8     Importantly, however, Congress did not impose an absolute stay on discovery. Rather, it
9   expressly provided courts with discretion to allow limited discovery during the stay "upon the
10  motion of any party that particularized discovery is necessary to preserve evidence or to prevent
11  undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B). These exceptions exist because the
12  PSLRA's stay was not intended to apply to cases where, as here, the fraud is apparent, particularly
13  when the requested discovery has already been collected, was produced in response to
14  governmental investigations and/or was made public. *See*, *e.g.*, *In re FirstEnergy Corp. Sec. Litig.*,
15  229 F.R.D. 541, 545 (N.D. Ohio 2004) ("[M]aintaining the discovery stay as to materials already
16  provided to government entities does not further the policies behind the PSLRA."); *In re Enron*
17  *Corp. Sec., Deriv. & "ERISA" Litig.*, No. MDL-1446, 2002 U.S. Dist. LEXIS 26261, at *30 (S.D.
18  Tex. Aug. 16, 2002) (The PSLRA was "not designed to keep secret from counsel in securities cases
19  documents that have already become available for review by means other than discovery in the
20  securities case.") (citation omitted); *WorldCom*, 234 F.Supp.2d at 306 (where the plaintiffs were
21  not engaged in a fishing expedition or an abusive strike suit, they did not act in contravention of the
22  fundamentals underlying the PSLRA discovery stay, a limited lifting of the stay was granted); *see*
23  *also In re Tyco Int'l, Ltd.*, No. MDL 1335, Practice and Procedure Order No. 5, at 10-11 (D.N.H.
24  Jan. 29, 2003), attached to the Bai Declaration as Exh. B. Indeed, by its terms, the PSLRA
25  discovery stay provides this Court with discretion to order limited discovery in appropriate
26  circumstances. *See Tobias Hldgs., Inc. v. Bank United Corp.*, 177 F.Supp.2d 162, 167 (S.D.N.Y.
27  2001) ("If…Congress had intended an absolute stay on discovery, then Congress would not have
28  authorized a judicial reprieve from such a stay, when a reprieve is needed.") (citing *In re Grand*

1  *Casinos Sec. Litig.*, 988 F.Supp. 1270, 1272 (D. Minn. 1997)).

### 1. The Requested Discovery Must Be Sufficiently Particularized

As an initial matter, this Court must determine whether the limited discovery sought is sufficiently particularized. 15 U.S.C. §78u-4(b)(3)(B). It appears clear that the test is met if the "party seeking discovery under the exception…adequately specif[ies] the target of the requested discovery .…" *In re Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d 100, 108 (D. Mass. 2002). The meaning of "particularized" in any specific case must "take into account the nature of the underlying litigation." *Royal Ahold*, 220 F.R.D. at 250 (where plaintiff's complaint alone was 430 pages and alleged multibillion dollar accounting errors by a firm with operations on at least four continents, the volume of requested documents – which was estimated at one million pages – was not unreasonable).

Furthermore, the particularity requirement is satisfied if the requesting party requests documents already collected, produced in response to governmental investigations and/or made public. *WorldCom*, 234 F.Supp.2d at 306 (particularity requirement met where plaintiffs sought "a clearly defined universe of documents, specifically certain documents which WorldCom has already produced in connection with other identified proceedings"); *Enron*, 2002 U.S. Dist. LEXIS 26261, at **29-30 (particularity requirement met when plaintiff sought production of "all documents and materials produced by [Enron] related to any inquiry or investigation by any legislative branch committee, the executive branch, including the Department of Justice and the Securities and Exchange Commission, and all transcripts of witness interviews and/or depositions related to those inquiries"); *Delphi*, 2007 U.S. Dist. LEXIS 10408, at *16.

The requirement of a particularized request protects the defendant from undue burden and complies with the PSLRA's prohibition on abusive litigation tactics. *Enron*, 2002 U.S. Dist. LEXIS 26261, at *32. Indeed, a request that seeks documents already collected and produced in response to governmental investigations, and/or otherwise made public, is nothing more than a request for discovery already provided, "and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse." *Id*.

9

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  
PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

No.: C-06-06286 RMW

1    **2.    The Requested Discovery Must Be Necessary To Preserve Evidence Or To Prevent Undue Prejudice**

Once the particularity requirement is satisfied, the court must then determine whether production "is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B). Undue prejudice in the instant context is defined as "improper or unfair detriment that need not reach the level of irreparable harm." *Lernout*, 214 F.Supp.2d at 107. Employing this accepted standard, several courts have modified the PSLRA's discovery stay to provide fair treatment to plaintiffs. *See*, *e.g.*, *id.* at 109; *WorldCom*, 234 F.Supp.2d at 305; *Anderson v. First Sec. Corp.*, 157 F.Supp.2d 1230, 1242 (D. Utah 2001); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 Civ. 342 (DLC), 1999 U.S. Dist. LEXIS 5439, at *5 (S.D.N.Y. Apr. 16, 1999); *Royal Ahold*, 220 F.R.D. 246; *Tyco*, Practice and Procedure Order No. 5, Bai Decl. Exh. B; *Delphi*, 2007 U.S. Dist. LEXIS 10408, at **20-25.

**3.    Key Opinions Support The Lifting Of The PSLRA Stay Of Discovery**

Several recent opinions provide guidance regarding the circumstances under which the PSLRA stay should be lifted. *See WorldCom*, 234 F.Supp.2d 301; *Enron*, 2002 U.S. Dist. LEXIS 26261; *Tyco*, Practice and Procedure Order No. 5, Bai Decl., Exh. B; *Delphi*, 2007 U.S. Dist. LEXIS 10408; *Brocade*, Transcript of Proceedings, at 28:5-35:17, Bai Decl., Exh. A; *see also* 15 U.S.C. §78u-4(b)(3)(B).

Like here, these cases involved situations where the Company's fraud had resulted in massive restatements that led to wide-ranging investigations by governmental agencies. In all of these cases, the courts partially modified the PSLRA discovery stay to allow the plaintiffs to obtain copies of documents previously produced to governmental authorities because they recognized that that the cases were not frivolous lawsuits and there was no reason to delay discovery.

More specifically, as Judge Cote recognized in *WorldCom*, the PSLRA stay of discovery should be lifted to avoid undue prejudice when the following circumstances exist:

> Without access to documents already made available to the U.S. Attorney, the SEC, and in whole or in part to the WorldCom's Creditor Committee and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, [Lead Plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape. It would essentially be the only

major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings.

234 F.Supp.2d at 305; *see also Enron*, 2002 U.S. Dist. LEXIS 26261, at \*\*29-32; *Delphi*, 2007 U.S. Dist. LEXIS 10408, at \*22.

### B. THE LIMITED DISCOVERY REQUESTED BY LEAD PLAINTIFFS IS APPROPRIATE UNDER THE PSLRA

Lead Plaintiffs' requests for limited discovery meet each and every element required by the PSLRA and interpreting case law.

#### 1. Lead Plaintiffs' Discovery Requests Are Highly Particularized

Lead Plaintiffs' requests for limited discovery are highly particularized as set forth in detail in Section II, *supra*. These requests are narrowly tailored and limited to the "closed universe of materials" that Marvell has already assembled and produced to other entities in the course of the ongoing investigations. *See FirstEnergy*, 229 F.R.D. at 545. Furthermore, the nature and background of the underlying litigation in this case – the Complaint alone is 82 pages in length and alleges a pervasive scheme of stock option backdating fraud committed by Marvell and its executives – clearly render Lead Plaintiffs' requests reasonable under the circumstances. *See Royal Ahold*, 220 F.R.D. at 249.

In light of the foregoing circumstances, it is quite obvious that Lead Plaintiffs' claims are far from frivolous and that Lead Plaintiffs are "not in any sense engaged in a fishing expedition or an abusive strike suit and does not thereby act in contravention of the fundamental rationales underlying the PSLRA discovery stay." *WorldCom*, 234 F.Supp.2d at 306. The apparent strength of Lead Plaintiffs' Complaint and the breadth of their allegations demonstrate that the limited set of documents requested is not unreasonable and should factor into the Court's determination. *See Royal Ahold*, 220 F.R.D. at 249.

Accordingly, Lead Plaintiffs have satisfied the particularity requirement of the PSLRA.

**2.  Lead Plaintiffs And The Class Will Suffer Undue Prejudice If The PSLRA Discovery Stay Is Not Partially Modified**

**a)  With the Benefit of Discovery, the Other Plaintiffs Have Been Able to Reach Settlements**

Lead Plaintiffs and the Class already have suffered, and will continue to suffer, undue prejudice if the PSLRA discovery stay is not partially modified. Just as in *WorldCom*, if this request is not granted, Lead Plaintiffs and the Class will be "the only major interested party in the criminal and civil proceedings against [defendant] without access to documents that currently form the core of those proceedings." 234 F.Supp.2d at 305. Indeed, every entity investigating and/or prosecuting Marvell for its fraudulent option backdating conduct – the SEC, DOJ and, presumably, the Derivative Action plaintiffs – has been granted access to critical documents, while Lead Plaintiffs have been left with nothing other than publicly available information. The SEC and the Derivative Action plaintiffs have reached settlements with Marvell. Lead Plaintiffs have been unable to engage in meaningful settlement negotiations with Marvell, as evidenced by the unsuccessful mediation attempt. Like the plaintiffs in *FirstEnergy*, "[w]ithout discovery of documents already made available to government entities, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategies." 229 F.R.D. at 545; *see also Tyco*, Practice and Procedure Order No. 5, at 11, Bai Decl. Exh. B.

Judge Harmon addressed a similar issue in *Enron*, where the securities plaintiffs sought to obtain copies of all documents and materials that Enron produced in connection with related inquiries by the DOJ and the SEC. 2002 U.S. Dist. LEXIS 26261, at *29. In ordering a limited lifting of the discovery stay, Judge Harmon recognized that the requested discovery would not burden the defendants because there, as here, such documents had already been found, reviewed and organized. *Id*. at *32; *see also FirstEnergy*, 229 F.R.D. at 545 (Defendant cannot "allege any burden from providing documents that it has already reviewed and compiled.") (footnote omitted). Other courts have similarly decided that the PSLRA discovery stay does not apply to documents, such as those at issue here, which were already produced to other parties in related proceedings. *See, e.g.*, *WorldCom*, 234 F.Supp.2d at 306 (because documents have already been produced to others it is "easily understood" that defendants have not raised "undue burden" as an obstacle to the

1 requested production). The reasoning of each of these courts applies here.

    **b)  By Exploiting the PSLRA Stay of Discovery, Defendants Have Been Selectively Citing From the Findings of the Special Committee and Using Such "Findings" as Evidence**

  Defendants should not be permitted to rely on the discovery stay as both a sword and a shield, yet that is precisely what they have done with their one-sided access and use of the material that formed the basis for their internal investigation into the fraudulent conduct. In its 2007 Form 10-K, Marvell published findings of a Special Committee charged with investigating the options backdating fraud. Against the backdrop of the highly incriminating findings of the Special Committee, Marvell and the Individual Defendants have asked this Court to disregard these highly incriminating findings and instead focus upon narrow and nuanced abstracts of the findings to draw strained (and entirely implausible) inferences of non-culpable conduct. *See, e.g.,* Marvell's motion to dismiss the Complaint, Dkt. No. 142, at 17-19 ("The Special Committee Findings Do Not Give Rise to a 'Strong Inference' That Marvell Acted With Scienter"); Sutardja and Dai's motion to dismiss the Complaint, Dkt. No. 154, at 5, 12-13 ("Plaintiffs fail to plead which Special Committee findings pertain to their allegations").

  The "undue prejudice" exception was designed to prevent defendants from using the PSLRA stay provision as a sword, especially where, as here, the fraud is the subject of an admission. *See WorldCom*, 234 F.Supp.2d at 305 (Plaintiffs not engaged in a "'fishing expedition' in search of sustainable claims to force defendants to settle an otherwise frivolous class action."); *In re Flir Sys., Inc. Sec. Litig.*, Civil No. 00-360-HA, U.S. Dist. LEXIS 19391, at **8-9 (D. Or. Dec. 13, 2000) (granting plaintiffs leave to depose third party witness, stating, "[t]he PSLRA is a shield intended to protect security-fraud defendants from costly discovery requirements not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information") (citation omitted). Marvell should not be permitted to self-select, edit and then publish summary findings of a Special Committee, and then argue certain (albeit implausible) inferences to be drawn from those findings, all the while denying Lead Plaintiffs access to the documents that form the basis for the Committee's findings. Lead Plaintiffs would suffer undue prejudice if denied equal access to the material that is clearly relevant to the Court's consideration of Defendants' motions to dismiss, and

1  there is no burden to produce documents that have already been collected and reviewed by the

2  Special Committee, along with any draft and final reports that the Special Committee created.

     **c)  Plaintiffs are not Attempting to Embark on a Fishing Expedition to Support Frivolous Claims**

  Furthermore, Lead Plaintiffs are neither fishing to support frivolous claims nor imposing costly discovery requests upon Marvell.

  In enacting the PSLRA stay, Congress was motivated by a belief that "the cost of discovery often forces innocent parties to settle frivolous securities class actions." *Id.* (citing H.R. Conf. Rep. No. 104-369 at 37 (1995); S. Rep. No. 104-98 (1995)).  However, as one court succinctly noted, "maintaining the discovery stay as to materials already provided to the federal authorities…does not further the policies behind the PSLRA."  *Delphi*, 2007 U.S. Dist. LEXIS 10408, at *25.  Moreover,

> [t]he fact that the SEC brought an action predicated upon the very same accounting irregularities alleged in the [Complaint] and named as defendants in that action many of the same [officers and directors] named in this suit, coupled with the fact that Defendants are consenting to judgment in that action, demonstrates that this is not a "frivolous securities class action" brought against innocent parties.

*Id.* (footnote omitted).

  Furthermore, the burden of producing the same set of documents to Lead Plaintiffs will be slight considering this fact.  Indeed, Lead Plaintiffs' limited discovery requests will not cause Marvell to incur additional expenses, nor will it disrupt Marvell's business.

  Therefore, "[n]one of the perceived abuses addressed by Congress are present in this case." *Tobias*, 177 F.Supp.2d at 166; *see also WorldCom*, 234 F.Supp.2d at 305 (granting lead plaintiff's request for production of documents already produced to regulatory authorities); *Vacold LLC v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 U.S. Dist. LEXIS 1589, at *24 (S.D.N.Y. Feb. 16, 2001) (lifting stay for particularized discovery after finding that "request does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

### 3. Partial Modification Of The Discovery Stay Is Necessary To Preserve Key Evidence

Finally, the PSLRA's discovery stay also may properly be modified when necessary to preserve evidence. 15 U.S.C. §78u-4(b)(3)(B). Simply stated, no statutory provision or preservation order can preserve documents after they have already been destroyed or have been lost. The early production of core documents is the preferred method to ensure that such materials are available for the prosecution of the action. *Lernout*, 214 F.Supp.2d at 109.

Although the documents produced to outside agencies presumably will be preserved, those documents – which likely comprise the most critical evidence in the case – could assist Lead Plaintiffs in identifying other specific materials that may be at risk of loss. *Royal Ahold*, 220 F.R.D. at 249. Faced with Marvell's settlements and concerns about evidentiary loss that are by no means speculative, Lead Plaintiffs should not be required to simply rely "on the assurances of counsel that relevant evidence will be preserved." *See id.* at 251 (footnote omitted).

## V. CONCLUSION

For the reasons discussed above, Lead Plaintiffs' Motion for Partial Modification of the PSLRA Discovery Stay should be granted.

DATED: July 25, 2008                                    Respectfully Submitted,

                                              /s/ Nicole Lavallee
                                              NICOLE LAVALLEE

Joseph J. Tabacco, Jr.
Julie J. Bai
BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: 415-433-3200
Facsimile:  415-433-6382

**Liaison Counsel for Lead Plaintiffs**

---

15
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR                     No.: C-06-06286 RMW
PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

Michael K. Yarnoff (admitted *Pro Hac Vice*)
John A. Kehoe (admitted *Pro Hac Vice*)
Robert W. Biela (admitted *Pro Hac Vice*)
SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, PA  19087
Telephone: 610-667-7706
Facsimile:  610-667-7506
myarnoff@sbtklaw.com
jkehoe@sbtklaw.com
rbiela@sbtklaw.com

Joseph C. Kohn (admitted *Pro Hac Vice*)
Denis F. Sheils (admitted *Pro Hac Vice*)
William E. Hoese (admitted *Pro Hac Vice*)
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: 215-238-1700
Facsimile:  215-238-1968
jkohn@kohnswift.com
dsheils@kohnswift.com
whose@kohnswift.com

**Co-Lead Counsel for Lead Plaintiffs**

Jeffrey J. Angelovich (admitted *Pro Hac Vice*)
Bradley E. Beckworth (admitted *Pro Hac Vice*)
Susan Whatley (admitted *Pro Hac Vice*)
NIX PATTERSON & ROACH, LLP
205 Linda Drive
Daingerfield, TX  75638
Telephone: 903-645-7333
Facsimile:  903-645-4415
bbeckworth@nixlawfirm.com
jangelovich@nixlawfirm.com
susanwhatley@nixlawfirm.com

**Additional Counsel for Lead Plaintiffs**