STEVEN M. SCHATZ, sschatz@wsgr.com, State Bar No. 118356
BORIS FELDMAN, boris.feldman@wsgr.com, State Bar No. 128838
RODNEY G. STRICKLAND, rstrickland@wsgr.com, State Bar No. 161934
GREGORY L. WATTS, gwatts@wsgr.com, State Bar No. 197126
NICOLE HEALY, nhealy@wsgr.com, State Bar No. 157147
PAMELA E. GLAZNER, pglazner@wsgr.com, State Bar No. 247007
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Defendant
Marvell Technology Group Ltd.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

|  |  |
|---|---|
| In re Marvell Technology Group, Ltd. Securities Litigation | Master File No. C-06-6286 RMW |
|  | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **MARVELL'S OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY** |
| All Actions. | |
|  | DATE:   September 12, 2008 |
|  | TIME:    9:00 a.m. |
|  | JUDGE:  Hon. Ronald M. Whyte |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ............................................................... 3

ARGUMENT ........................................................................................................................... 5

I.  THE PSLRA AND NINTH CIRCUIT PRECEDENT REQUIRE A DISCOVERY
    STAY UNTIL THIS COURT HAS SUSTAINED THE LEGAL SUFFICIENCY
    OF A COMPLAINT ........................................................................................................ 5

II. PLAINTIFFS FAIL TO SATISFY THEIR BURDEN OF SHOWING
    EXCEPTONAL CIRCUMSTANCES THAT JUSTIFY LIFTING THE PSLRA
    DISCOVERY STAY ....................................................................................................... 7

    A.  There Is No Imminent Risk That Discovery Will Be Lost ................................... 7

    B.  Plaintiffs Will Not Suffer Undue Prejudice ........................................................ 8

        1.  There Is No Exception to the PSLRA Discovery Stay for
            Productions That Would Not Burden the Defendant ................................. 9

        2.  There is No Exception to the PSLRA Discovery Stay For
            Documents Previously Produced to Government Agencies or Other
            Private Parties ........................................................................................... 9

        3.  Plaintiff Will Not Suffer Undue Prejudice to Their Litigation
            Strategy or Settlement Prospects ............................................................. 13

        4.  Plaintiffs Will Not Suffer Undue Prejudice From Defendants'
            Arguments in Their Motions to Dismiss that Plaintiffs Cannot
            Selectively Quote Marvell's Public Disclosure of the Special
            Committee's Findings ............................................................................... 15

        5.  The PSLRA Discovery Stay Is Not Limited to Cases In Which The
            Court Perceives Abuses ............................................................................ 16

    C.  Plaintiffs' Document Requests Are Not Particularized and Will Unduly
        Burden Marvell ................................................................................................. 17

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. First Security Corp.*, 157 F. Supp. 2d 1230 (D. Utah 2001) .....................................12

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 CIV 342 (DLC),
   1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) ..................................................................12

*In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103 (C.D. Cal. 2007)..................................*passim*

*In re AOL Time Warner, Inc. Sec.& "ERISA" Litig.*, No. 1500, 02-5575 SWK, 2003
   WL 21729842 (S.D.N.Y. July 25, 2003) ......................................................................11

*In re Asyst Techs., Inc. Deriv. Litig.*, No. C-06-04669 EDL, 2008 WL 916883
   (N.D. Cal. April 3, 2008) .........................................................................5, 10, 17

*In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260 (N.D. Okla. 2001)..........................13

*In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008)...........*passim*

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, MDL No. 1725, 2007 WL
   518626 (E.D. Mich. Feb. 15, 2007) ......................................................................2, 11, 14

*In re Elan Corp. Sec. Litig.*, No. 02 Civ.865 RMB FM, 2004 WL 1303638
   (S.D.N.Y. May 18, 2004) .........................................................................9, 10, 11

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, No. MDL-1446, Civ. A H-01-
   3624, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002)..........................................*passim*

*In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37 (D.D.C. 2005) ...............................*passim*

*In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541 (N.D. Ohio 2004) ..................................12

*In re Flir Systems, Inc. Securities Litigation*, No. Civ. 00-360-HA, 2000 WL
   33201904 (D. Or. Dec. 13, 2000)............................................................................12

*In re Fluor Corp. Sec. Litig.*, No. SA CV 97-734 AHS EEX, 1999 WL 817206
   (C.D. Cal. Jan. 15, 1999)......................................................................................6, 8

*In re Lantronix, Inc. Sec. Litig.*, No. CV 02-03899 PA, 2003 WL 22462393 (C.D.
   Cal. Sept. 26, 2003) ...........................................................................................*passim*

*In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100 (D. Mass. 2002)........................2, 14

*In re Marvell Tech. Group, Ltd. Deriv. Litig.*, No. C-06-03894-RMW, 2007 WL
   1545194 (N.D. Cal. May 29, 2007).....................................................................*passim*

*In re NextCard Inc. Sec. Litig.*, No. C-01-21029-JF, 2003 WL 23142199 (N.D. Cal.
   Sept. 17, 2003) ...............................................................................................6, 10

*In re Odyssey Healthcare, Inc. Sec. Litig.*, No. Civ.A.3:04-CV-0844-N, 2005 WL
   1539229 (N.D. Tex. June 10, 2005)...................................................................7, 10, 13

*In re PMC-Sierra, Inc. Deriv. Litig.*, No. 06-05330 RS, 2008 WL 2024888 (N.D. Cal. May 8, 2008)................................................................................................5

*In re Royal Ahold N.V. Securities & ERISA Litigation*, 220 F.R.D. 246 (D. Md. 2004)...................................................................................................2, 8, 14

*In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) ............................................................*passim*

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL 02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003) ...............................................................................12

*In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129 (S.D.N.Y. 2003)................*passim*

*In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ........................2, 11, 15

*Medhekar v. United States Dist. Ct.*, 99 F.3d 325 (9th Cir. 1996).......................................*passim*

*SG Cowen Sec. Corp. v. United States Dist. Ct.*, 189 F.3d 909 (9th Cir. 1999) ...................*passim*

*Sisk v. Guidant Corp.*, No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090 (S.D. Ind. Mar. 30, 2007)............................................................................................10, 11

*Swartz v. Deutsche Bank AG*, No. C03-1252-M 2008 WL 534535 (W.D. Wash. Feb. 26, 2008)..................................................................................................*passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ..........................................16

*Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001) ..................11

*Vacold LLC v. Cerami*, No. 00 CIV.4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001)......................................................................................................17

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(B) ....................................................................................................*passim*

**MISCELLANEOUS**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 693 ...................................................5

H. R. Conf. Rep. No. 104-369 (1995) *reprinted in* 1995 U.S.C.C.A.N. 731 ............................1, 8

1    Defendant Marvell Technology Group, Ltd. ("Marvell" or the "Company") respectfully

2  submits this Opposition to Lead Plaintiff's Motion for Partial Modification of the PSLRA

3  Discovery Stay (the "Motion").

4                                     **INTRODUCTION**

5    This is a securities class action governed by the Private Securities Litigation Reform Act of

6  1995 (the "PSLRA" or the "Reform Act").  The PSLRA mandates that "all discovery and other

7  proceedings shall be stayed during the pendency of any motion to dismiss."  15 U.S.C. § 78u-

8  4(b)(3)(B).  Marvell and the other defendants filed their motions to dismiss on October 18, 2007.

9  Thus, all discovery is stayed unless and until plaintiffs can demonstrate "exceptional

10  circumstances" that "particularized discovery is necessary to preserve evidence or to prevent

11  undue prejudice [to plaintiffs]."  *Id*; *SG Cowen Sec. Corp. v. United States Dist. Ct.*, 189 F.3d 909,

12  911-12 (9th Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995

13  U.S.C.C.A.N. at 736).  They cannot do so.

14    As explained below, the Ninth Circuit has vigilantly protected against any erosion of the

15  PSLRA's discovery stay by twice employing the extraordinary remedy of granting a writ of

16  mandamus.  *See SG Cowen*, 189 F.3d 909; *Medhekar v. United States Dist. Ct.*, 99 F.3d 325 (9th

17  Cir. 1996).  Following the Ninth Circuit's lead, courts in this Circuit frequently deny similar

18  requests to lift the PSLRA discovery stay.  Plaintiffs have cited only one case in this Circuit in

19  which the discovery stay was lifted, and that case involved very difference circumstances than

20  those present here.

21    Simply put, there are no valid grounds for lifting the discovery stay in this case.  In fact,

22  this Court enforced the discovery stay in a related case involving the same corporate defendant,

23  the same underlying factual allegations, and many of the same arguments by plaintiffs' counsel.

24  *In re Marvell Tech. Group, Ltd. Deriv. Litig.*, No. C-06-03894-RMW, 2007 WL 1545194 (N.D.

25  Cal. May 29, 2007) (ordering stay of discovery).  This Court also rejected plaintiffs' overture

26  during the motion to dismiss hearing in this action to lift the discovery stay for the same

27  documents requested in plaintiffs' instant Motion.  Those documents are the following:

28

a. Copies of all documents collected and/or reviewed by Marvell's Special Committee and/or outside auditors in conjunction with their investigation of the conduct at issue in this case;

b. Copies of all documents produced in conjunction with the SEC and DOJ investigations;

c. Copies of all documents, if any, produced to the Derivative Action plaintiffs in connection with the investigation into Marvell's fraudulent stock option backdating; and

d. Any draft and final reports the Special Committee created in connection with its investigation into Marvell's fraudulent stock option backdating.

Pl. Mem. at 5.[1]

Plaintiffs contend that these documents should be produced for a variety of reasons. None rises to the level of the "exceptional circumstances" required by the statute. For example, plaintiffs assert that certain of the documents should not be subject to the stay because they have been provided to government agencies and the derivative action plaintiffs. *Id*. at 8-9. This assertion finds no support in the text or purposes of the PSLRA. Congress did not create an exception to the PSLRA discovery stay for private securities plaintiffs seeking to exploit simultaneous government investigations or other civil actions. Indeed, it is quite common in securities class actions for there to be simultaneous SEC investigations and derivative actions. If providing documents to the SEC or derivative plaintiffs in these parallel proceedings constitutes undue prejudice to class action plaintiffs, the discovery stay would be eviscerated.

Plaintiffs also argue that these documents should be produced because plaintiffs allegedly need them in order to "make informed decisions about their litigation strategy" and improve their settlement prospects relative to other interested parties. *Id*. at 4. Plaintiffs, however, cannot escape their own cited authority. The courts in *WorldCom*, *Enron*, *Delphi*, *Lernout* and *Royal Ahold* only found undue prejudice related to settlement prospects or a risk that evidence would be destroyed when the defendants were in bankruptcy or dire financial straits. There are no similar allegations here and, in any event, there is no such risk with respect to Marvell because Marvell is

---

[1] Citations to "Pl. Mem." are to Lead Plaintiffs' Notice of Motion and Motion for Partial Modification of the PSLRA Discovery Stay; Memorandum of Points and Authorities in Support Thereof.

financially healthy and has ample cash (over $700 million) to cover any settlement even if insurance proceeds are not available.

Unable to demonstrate any undue prejudice, plaintiffs attempt to re-write the statute to include exceptions to the discovery stay for discovery that allegedly present a minimal burden on the defendant or in cases that are not (according to plaintiffs) representative of the abuses the PSLRA was designed to prevent.  Again, plaintiffs' assertion finds no support in the statute or case law.  The proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, *not* whether the defendant would be burdened by lifting the stay.  Further, "Congress did not merely instruct courts to stay discovery in cases in which courts perceived abuses." *Marvell*, 2007 WL 1545194, at *3.

Plaintiffs also attempt to argue that the requested documents—documents they do not doubt will be preserved—"could assist" them "in identifying other specific materials that may be at risk of loss."  Pl. Mem. at 15.  This contention is nowhere close to reaching plaintiffs' burden of showing that the loss of evidence is imminent as opposed to merely speculative, and certainly does not constitute an exceptional circumstance.  Moreover, plaintiffs' requests are not sufficiently particularized and would unduly burden Marvell in reviewing documents for relevance and privilege.

In short, plaintiffs have not demonstrated the "exceptional circumstances" necessary to lift the PSLRA discovery stay.  The Court should deny plaintiffs' Motion and let discovery in this securities class action proceed along the course Congress intended.

## BACKGROUND AND PROCEDURAL HISTORY

On May 22, 2006, Merrill Lynch issued a research analyst report that examined the timing of stock option grants by semiconductor equipment companies, including Marvell.  This report triggered an internal review by a Special Committee of Marvell's Board of Directors, an SEC inquiry, shareholder derivative lawsuits and this shareholder class action.  On July 2, 2007, following the completion of the Special Committee's internal review, Marvell restated its consolidated financial statements and related disclosures.

<u>This Class Action</u>: The first complaint in this action was filed on December 5, 2006. Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") in August 2007 alleging federal securities laws violations against the Company, as well as certain individual directors and officers.  Defendants moved to dismiss the Complaint on October 18, 2007.  The Court held a hearing on the motions to dismiss the Complaint on February 15, 2008.

<u>SEC Action</u>:  On April 20, 2007, the SEC informed Marvell that it was conducting a formal investigation into the Company's stock option granting practices.  Marvell cooperated with the SEC's investigation.  On May 8, 2008, the SEC filed in this Court a civil complaint against Marvell and one of its employees captioned *SEC v. Marvell Technology Group, Ltd., et al*., Case No. CV-08-2367-HRL.  That same day Marvell announced that it had reached an agreement with the SEC whereby the Company, without admitting or denying the allegations in the SEC's complaint, consented to a permanent injunction against any future violations of various provisions of the federal securities laws and agreed to pay a civil penalty of $10 million.  On July 1, 2008, the Court entered a final judgment against the Company.  The Company shortly thereafter paid the civil penalty (without using any insurance proceeds).  This settlement and consented judgment concluded the SEC matter.

<u>Derivative Actions</u>:  Starting on June 22, 2006, several purported shareholder derivative actions were filed in this Court against Marvell and certain of its officers and directors.  On May 1, 2007, this Court consolidated these actions.  The consolidated derivative complaint includes alleged violations of the federal securities laws.  On May 29, 2007, this Court denied the derivative plaintiffs' request for discovery due to the PSLRA's discovery stay.  *See Marvell*, 2007 WL 1545194, at *4.  The derivative plaintiffs argued, as plaintiffs argue here, that the PSLRA discovery stay does not apply because their case is not (according them) representative of the perceived abuses the PSLRA was designed to stop.  This Court rejected this argument, stating that "Congress did not merely instruct courts to stay discovery in cases in which courts perceived abuses."  *Id*. at *3.

On March 5, 2008, the parties in the derivative action entered into a Memorandum of Understanding ("MOU") that tentatively settles and resolves the derivative action, subject to this

-4-

1    Court's preliminary and final approval.  The terms of the MOU include certain corporate

2    governance enhancements and an agreement by the Company to pay up to $16 million in

3    plaintiffs' attorneys' fees.  The Company anticipates filing a stipulation of settlement with this

4    Court in the coming weeks.

5                                            **ARGUMENT**

6    **I.    THE PSLRA AND NINTH CIRCUIT PRECEDENT REQUIRE A DISCOVERY
            STAY UNTIL THIS COURT HAS SUSTAINED THE LEGAL SUFFICIENCY OF
7           A COMPLAINT**

8            The PSLRA mandates that in private actions asserting violations of the Securities

9    Exchange Act of 1934, "all discovery and other proceedings shall be stayed during the pendency

10   of any motion to dismiss, unless the court finds upon the motion of any party that particularized

11   discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15

12   U.S.C. § 78u-4(b)(3)(B).  The Ninth Circuit has interpreted this provision to mean that

13   "'discovery should be permitted in securities class actions *only after the court has sustained the*

14   *legal sufficiency of the complaint*.'"  *SG Cowen*, 189 F.3d at 912-13 (quoting S. Rep. No. 104-98,

15   at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. at 693).

16           The Ninth Circuit has twice granted petitions for a writ of mandamus enforcing the

17   PSLRA discovery stay and directing district courts to properly apply the stay's provisions.  In

18   *Medhekar*, 99 F.3d at 328, the Ninth Circuit held in a *per curiam* opinion that the PSLRA

19   discovery stay included initial disclosures.  In *SG Cowen*, the Ninth Circuit denied a request by

20   class action plaintiffs to lift the PSLRA discovery stay and held that a "failure to muster facts

21   sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue

22   prejudice' to the plaintiff justifying a lift of the [PSLRA] discovery stay."  189 F.3d at 913.

23   Plaintiffs fail to even acknowledge these two Ninth Circuit decisions in their Motion.

24           District courts in this Circuit have also consistently denied requests to lift or partially lift

25   the PSLRA's discovery stay.  *See, e.g.*, *In re PMC-Sierra, Inc. Deriv. Litig.*, No. 06-05330 RS,

26   2008 WL 2024888, at *4 (N.D. Cal. May 8, 2008) (Seeborg, J.) (denying plaintiffs' motion to lift

27   the discovery stay in federal derivative action); *In re Asyst Techs., Inc. Deriv. Litig.*, No. C-06-

28   04669 EDL, 2008 WL 916883, at *2-3 (N.D. Cal. April 3, 2008) (Laporte, J.) (denying plaintiffs'

motion to partially lift discovery stay so they could obtain documents produced by Asyst to the SEC and DOJ); *In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1181 (C.D. Cal. 2008) (Pfaelzer, J.) (denying plaintiffs' motion for expedited discovery of documents due to PSLRA discovery stay); *Swartz v. Deutsche Bank AG*, No. C03-1252-MJP, 2008 WL 534535, at *1 (W.D. Wash. Feb. 26, 2008) (Pechman, J.) (denying plaintiffs' motion to lift discovery stay for documents produced in other civil and criminal matters); *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007) (Feess, J.) (denying plaintiffs' motion to partially lift discovery stay so they could obtain documents produced to the California Attorney General's Office); *Marvell*, 2007 WL 1545194, at *4 (Whyte, J.) (refusing to lift discovery stay in federal derivative action); *In re Lantronix, Inc. Sec. Litig.*, No. CV 02-03899 PA, 2003 WL 22462393, at *1-2 (C.D. Cal. Sept. 26, 2003) (Anderson, J.) (denying plaintiffs' motion to partially lift discovery stay so they could obtain documents Lantronix produced to governmental entities and in parallel state court actions); *In re NextCard Inc. Sec. Litig.*, No. C-01-21029-JF, 2003 WL 23142199, at *2 (N.D. Cal. Sept. 17, 2003) (Fogel, J.) (denying plaintiffs' request to partially lift discovery stay in class action so they could obtain documents NextCard produced to the SEC, FDIC and the Office of the Comptroller of the Currency); *In re Fluor Corp. Sec. Litig.*, No. SA CV 97-734 AHS EEX, 1999 WL 817206, at *1, 3 (C.D. Cal. Jan. 15, 1999) (Stotler, J.) (denying plaintiffs' motion to partially lift discovery stay so they could issue "preservation subpoenae" on third-parties).

In fact, this very Court in this very action rejected plaintiffs' counsel's overture during oral argument on the pending motion to dismiss to partially lift the discovery stay:

Mr. Tabacco:

> . . . What would be the burden of the Company for you to say today, "you know what? There's enough going forward here, *why don't you guys turn over the documents you've already produced to the Department of Justice, turn over the documents you've already organized and turned over to the Securities and Exchange Commission*. Let the plaintiffs get what the other people have had for two years," rather than waiting for the extended period of time it's going to take if we somehow partially grant and partially deny, then we're going to come back in six or eight months, we'll have another amendment, we'll then issue our document request.
>
> Let's get this thing on a fast track, judge, because one of the great things that works to the disadvantage of the shareholders and the institutions it takes to bring these cases is the time it takes just to get off the dime. Already it's been - -

we're approaching almost two years.  *So I would ask you to consider today just letting us go ahead with that first stage.  What's the harm in that?*

The Court:

Isn't it against the law, though?

Transcript of Proceedings Before the Honorable Ronald M. Whyte, United States District Judge at 32-33, *In re Marvell Technology Group, Ltd. Sec. Litig.*, No. C-06-06286 (N.D. Cal. Feb. 15, 2008) (emphasis added).[2]

## II.   PLAINTIFFS FAIL TO SATISFY THEIR BURDEN OF SHOWING EXCEPTONAL CIRCUMSTANCES THAT JUSTIFY LIFTING THE PSLRA DISCOVERY STAY

It is plaintiffs' burden to establish "that particularized discovery is necessary" to either "preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B). *See, e.g.*, *Countrywide*, 542 F. Supp. 2d at 1179 ("Plaintiffs have not demonstrated the need for an exception to the PSLRA."); *Am. Funds*, 493 F. Supp. 2d at 1107 ("Plaintiffs have failed to establish they will suffer undue prejudice . . . as required by to justify lifting the PSLRA's discovery stay."); *Marvell*, 2007 WL 1545194, at *2 (denying stay because plaintiffs failed to show the stay would lead to the destruction of evidence or cause them undue prejudice).[3]  Here, plaintiffs fail to satisfy their burden of establishing that either of these "exceptional circumstances" exists.

### A.   There Is No Imminent Risk That Discovery Will Be Lost

In order to meet their burden that the discovery stay should be lifted to preserve evidence, plaintiffs must show that the "loss of evidence is imminent as opposed to merely speculative." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (Berman, J.)

---

[2] Attached to the Declaration of Pamela E. Glazner In Support of Marvell's Opposition to Lead Plaintiffs' Motion for Partial Modification of the PSLRA Discovery Stay ("Glazner Decl.") as Exhibit A.

[3] *See also In re Odyssey Healthcare, Inc. Sec. Litig.*, No. Civ.A.3:04-CV-0844-N, 2005 WL 1539229, at *2 (N.D. Tex. June 10, 2005) (Godbey, J.) ("[i]t is the burden of any plaintiff seeking an exception to the stay to explain why."); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005) (Leon, J.) ("The plaintiffs bear the [heavy] burden of establishing that lifting of the mandatory stay is necessary.").

1  (internal quotations and citations omitted).  Here, plaintiffs concede that "the documents

2  produced [by Marvell] to outside [government] agencies presumably will be preserved. . . ."  Pl.

3  Mem. at 15.  *This concession is fatal to plaintiffs' effort to satisfy the "necessary to preserve*

4  *evidence" exception to the discovery stay.*

5         Plaintiffs' generic and speculative argument that the requested documents "could assist"

6  them "in identifying other specific materials that may be at risk of loss" (*id.*) could be made in

7  any case governed by the PSLRA subject to a discovery stay.  It is exactly the sort of argument

8  that courts reject as insufficient to overcome the discovery stay.  *See, e.g.*, *Fluor*, 1999 WL

9  817206, at *3 ("Plaintiffs also fail to make any credible showing that discovery is necessary to

10 preserve evidence beyond generalizations of fading memories and allegations of possible loss or

11 destruction.").  Plaintiffs reliance on *In re Royal Ahold N.V. Securities & ERISA Litigation*, 220

12 F.R.D. 246 (D. Md. 2004), the only support for their contention, is misplaced.  Unlike the present

13 situation, in *Royal Ahold*, plaintiffs raised a "reasonable concern that documents may be lost

14 despite Royal Ahold's best efforts to preserve them" because the company was engaged in a

15 "wide-ranging corporate reorganization" that involved "aggressive divestitures" of "key

16 subsidiaries," including some "that allegedly played central roles in the company's purported

17 fraud."  *Id.* at 251-52.  No such facts are present in this matter.  To the contrary, plaintiffs have

18 conceded that the requested documents will be preserved.  Pl. Mem. at 15.

19         **B.      Plaintiffs Will Not Suffer Undue Prejudice**

20         Having failed to satisfy their burden of showing that the discovery stay should be lifted in

21 order to preserve evidence, plaintiffs must convincingly demonstrate the second "exceptional

22 circumstance"—that the discovery stay must be lifted in order "to prevent undue prejudice" to

23 them. 15 U.S.C. § 78u-4(b)(3)(B).  Congress clearly intended for undue prejudice to be found in

24 only the most extraordinary of circumstances.  This is evidenced by the fact that the sole

25 illustration proffered by Congress as to what justifies lifting the stay is "the terminal illness of an

26 important witness," which "might require the deposition of the witness prior to ruling on the

27 motion to dismiss."  Conf. Rep. No. 104-369 at 736; *see also SG Cowen*, 189 F.3d at 912

28

1   (quoting Conf. Rep. No. 104-369).  As shown below, plaintiffs fall far short of reaching this high

2   standard for showing undue prejudice.

3        **1. There Is No Exception to the PSLRA Discovery Stay for Productions That Would Not Burden the Defendant**

4

5       Plaintiffs begin their argument by obfuscating the inquiry this Court should make.

6   Plaintiffs claim that because Marvell previously produced many of the requested documents to

7   government agencies, "the burden of producing the same set of documents to Lead Plaintiffs will

8   be slight . . . ."  Pl. Mem. at 14.  Plaintiffs then attempt to use this perception that Marvell could

9   "easily reproduce[]" these documents as somehow supporting their argument that the discovery

10  stay is unduly prejudicing them and should be lifted.  *Id.* at 2, 4.  Assuming for the sake of

11  argument that Marvell could "easily reproduce" these documents, the production burden on

12  Marvell is not the proper inquiry.  "There is no exception to the discovery stay for cases in which

13  discovery would not burden the defendant.  The proper inquiry under the PSLRA is whether the

14  plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened

15  by lifting the stay."  *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006

16  WL 1738078, at *3 (S.D.N.Y. June 26, 2006) (Pauley, J.) (denying plaintiffs' motion to lift the

17  PSLRA discovery stay).  Courts in this Circuit have rejected this "minimal burden" argument.

18  *See, e.g., Countrywide*, 542 F. Supp. 2d at 1180 (rejecting motion to lift the stay despite

19  plaintiffs' argument that production would "pose a 'minimal' burden on the Defendants");

20  *Marvell*, 2007 WL 1545194, at *3 ("minimal burden to the defendants . . . does not

21  independently justify lifting a stay").[4]

22       **2. There is No Exception to the PSLRA Discovery Stay For Documents Previously Produced to Government Agencies or Other Private Parties**

23

24      Plaintiffs repeatedly argue that the discovery stay should be lifted because Marvell has

25  already provided documents to the SEC, the DOJ and the plaintiffs in the derivative action.  Pl.

26

27    [4] *See also In re Elan Corp. Sec. Litig.*, No. 02  Civ.865 RMB FM, 2004 WL 1303638, at *1 (S.D.N.Y. May 18, 2004) (Maas, J.) (finding that absence of an undue burden on defendants to produce the requested documents "does not justify overriding the existing statutory stay").

28

Mem. at 8-9.  This assertion finds no support in the text or purpose of the statute.  Congress did

not "create[] an exception to the PSLRA stay for private securities plaintiffs hoping to exploit

simultaneous government investigations." *In re Odyssey Healthcare, Inc. Sec. Litig.*, No.

Civ.A.3:04-CV-0844-N, 2005 WL 1539229, at *1 (N.D. Tex. June 10, 2005) (Godbey, J.); *see*

*also Countrywide*, 542 F. Supp. 2d at 1180 n.29 ("there is no 'categorical exception' to the

PSLRA discovery stay for documents that have already been provided to a governmental agency

or other private parties."); *In re Elan Corp. Sec. Litig.*, No. 02  Civ.865 RMB FM, 2004 WL

1303638, at *1 (S.D.N.Y. May 18, 2004) (Maas, J.) (same).  Indeed, there is absolutely nothing

"exceptional" about a simultaneous SEC investigation and securities class action.  *See Sisk v.*

*Guidant Corp.*, No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090, at *4 (S.D. Ind. Mar. 30,

2007) (Barker, J.) ("[t]his circumstance is not exceptional, and does not prejudice Plaintiffs in an

unfair manner outside the policy considerations inherent in the PSLRA.").

　　　　　If the production of documents to the SEC or other government agency is deemed to

qualify as an "exceptional circumstance" justifying lifting of the discovery stay, the statutory

stay would be eviscerated.  Thus, district courts in this Circuit and around the country frequently

deny plaintiffs' requests to lift the discovery stay so they can obtain documents previously

produced to government agencies.  *See, e.g.*, *Asyst*, 2008 WL 916883, at *2-3 (denying motion to

lift the discovery stay for limited discovery of documents produced by Asyst to the SEC and

DOJ); *Deutsche Bank*, 2008 WL 534535, at *2 ("The fact that relevant information has been

made available in the course of other civil and criminal actions not subject to the Act's discovery

stay is by itself insufficient to show undue prejudice"); *Am. Funds*, 493 F. Supp. 2d at 1104

(refusing to partially lift discovery stay to allow plaintiffs to obtain documents already produced

to the California Attorney General's Office); *Lantronix*, 2003 WL 22462393, at *2 (denying

plaintiff's motion to lift the discovery stay because of prior document productions to government

agencies and state court plaintiffs); *NextCard*, 2003 WL 23142199, at *2 (denying request to

1    partially lift discovery stay in class action so plaintiffs could obtain documents NextCard

2    produced to the SEC, FDIC and the Office of the Comptroller of the Currency).[5]

3            The cases relied upon by plaintiffs are inapposite.  Plaintiffs rely heavily on *WorldCom*

4    and *Enron*—cases involving two of the largest corporate frauds and bankruptcies in United

5    States history.  Courts consistently distinguish *WorldCom* and *Enron* as exceptional situations

6    where "the defendant corporation has filed for bankruptcy or engaged in wholesale document

7    shredding. . . ."  *Guidant*, 2007 WL 1035090, at *4; *see, e.g.*, *Deutsche Bank*, 2008 WL 534535,

8    at *2 (*WorldCom* and *Enron* cases cited by plaintiffs "involved unique additional circumstances,

9    such as corporate bankruptcy and global settlement negotiations"); *Am. Funds*, 493 F. Supp. 2d

10   at 1105-06 (distinguishing *WorldCom* because it involved "unique circumstance" of corporate

11   bankruptcy); *Vivendi*, 381 F. Supp. 2d at 130-31 (same).  As shown more thoroughly below in

12   Section II.B.3, the bankruptcies of the defendant corporations in *WorldCom*, *Enron* and *Delphi*

13   distinguish these cases from the posture here where Marvell is financially very healthy.  As the

14   *Delphi* court stated: "It was precisely because the defendants in *Enron* and *WorldCom* were

15   bankrupt and subject to other civil lawsuits that a partial lifting of the PSLRA stay was

16   necessary. . . ."  *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, MDL No. 1725, 2007 WL

17   518626, at *7 (E.D. Mich. Feb. 15, 2007) (Rosen, J.) (holding that Delphi's bankruptcy justified

18   lifting the discovery stay).[6]

19   _____

20       [5] *See also Guidant,* 2007 WL 1035090, at *4 (denying motion to partially lift discovery stay
     for documents provided to the FDA, SEC, DOJ, and the New York State Attorney General);
21   *Smith Barney*, 2006 WL 1738078, at *1 (denying motion to lift discovery stay for documents
     defendants had previously produced to the SEC); *Fannie Mae*, 362 F. Supp. 2d at 38-39
22   (refusing to lift mandatory stay where documents had already been produced to governmental
     and regulatory agencies); *Elan*, 2004 WL 1303638, at *1 (refusing to lift stay where documents
23   were previously produced to the SEC); *Vivendi*, 381 F. Supp. 2d at 129, 131 (refusing to partially
     lift discovery stay where defendants had previously produced documents to various agencies,
24   including the DOJ and SEC); *In re AOL Time Warner, Inc. Sec.& "ERISA" Litig.*, No. 1500, 02-
     5575 SWK, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (Kram, J.) (refusing to lift
25   discovery stay where documents had previously been produced to various government agencies,
     including SEC and DOJ).

26       [6] *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001)
     (Scheindlin, J.), is distinguishable because it presented a "narrow question" as to "whether the
27   PSLRA stays discovery with respect to plaintiffs non-fraud state law claims where jurisdiction
     over such claims is based on diversity of citizenship."  *Id*. at 164-65.  That "narrow question" has
28   not been asked here.

Plaintiffs cite several decisions that lifted the PSLRA discovery stay without explaining the "exceptional circumstances" present in those cases—but not present here—or the extent to which the court lifted the discovery stay.  Pl. Mem. at 10.  In *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 CIV 342 (DLC), 1999 WL 223158, at *2 (S.D.N.Y. Apr. 16, 1999) (Cote, J.), the court lifted the discovery stay because the defendants, "based on holdings acquired in connection with [the] alleged scheme," were "seeking to take over the [plaintiff] company in other forums, raising the possibility that success in those forums will prevent Global from seeking redress in this Court."  In other words, defendants were attempting to obtain control of the plaintiff; once that control was obtained, they could terminate the litigation.  In *Anderson v. First Security Corp.*, 157 F. Supp. 2d 1230, 1242 (D. Utah 2001), the court only lifted the discovery stay for discovery from third-parties Zions Bank and certain of Zions Bank's employees because they were willing to voluntarily provide documents and information to plaintiffs but were precluded from doing so due to provisions in a confidentiality agreement between First Security and Zions Bank that First Security refused to waive.  Similarly, in *In re Flir Systems, Inc. Securities Litigation*, No. Civ. 00-360-HA, 2000 WL 33201904, at *2-3 (D. Or. Dec. 13, 2000) (Haggerty, J.), the court only lifted the discovery stay to allow for discovery from a third-party who had already filed a civil complaint in state court that "directly corroborate[d] plaintiff's allegations of fraud" and who was willing to provide information voluntarily but for defendants' threat of legal action against him if he did so.

Plaintiffs' other authority ignores the language and purpose of the PSLRA and therefore is inconsistent with controlling Ninth Circuit authority.  *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio  2004) (Gwin, J.), and *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL 02-1335-B, 2003 WL 23830479, at *1 (D.N.H. Jan. 29, 2003) (Barbadoro, J.) did not find any "exceptional circumstances" other than the fact that defendants had already produced documents to the government.  As noted previously, Congress did not include an exception in the PSLRA for cases where documents have been produced to government agencies.  *See supra* at 9-10.  A much higher bar for "exceptional circumstances" has been set in this Circuit.  *See SG Cowen*, 189 F.3d at 913; *Medhekar*, 99 F.3d at 328.  Further, the courts in plaintiffs' cases did

1   not even address one of the key purposes of the discovery stay: to ensure plaintiffs satisfy the

2   PSLRA's heightened pleading standards before they have access to information or records in

3   discovery.  *See Medhekar*, 99 F.3d at 328.

### 3.   Plaintiff Will Not Suffer Undue Prejudice to Their Litigation Strategy or Settlement Prospects

6       Plaintiffs claim that they need discovery in order to make "informed decisions about their

7   litigation strategy" and to "fully evaluate the strengths and weaknesses of Defendants' defenses."

8   Pl. Mem. at 4.  But plaintiffs' situation is no different from the situation faced by *every* plaintiff

9   in *every* securities lawsuit and thus is not "exceptional."  "Prejudice caused by the delay inherent

10  in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is

11  neither improper nor unfair.  Rather, it is prejudice which has been mandated by Congress."  *In*

12  *re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001).  *See also In re*

13  *Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005) (Leon, J.) (rejecting plaintiffs'

14  argument that without discovery materials, they would be unable to plan their litigation and

15  settlement strategies); *Odyssey Healthcare*, 2005 WL 1539229, at *2 (rejecting "amorphous

16  notion" that securities plaintiffs suffer "undue prejudice" when they have "a perceived inability

17  to make informed decisions about litigation strategy").

18      Plaintiffs also contend that they need discovery because they are at an "informational

19  disadvantage relative to other prosecuting parties" against whom they "are competing for the

20  same pot of limited funds" that have been significantly depleted by Marvell's settlement with the

21  SEC and tentative settlement of the derivative action.  Pl. Mem. at 3, 7.  This contention is

22  wrong.  "'Undue prejudice' does not arise from a delay in the gathering of evidence or the

23  development of settlement or litigation postures."  *Smith Barney*, 2006 WL 1738078, at *2; *see*

24  *also Fannie Mae*, 362 F. Supp. 2d at 39 (same); *Lantronix*, 2003 WL 22462393, at *2 (same).[7]

---

26  [7] Plaintiffs state that their "mediation efforts with Defendants have not been successful" and that "the lack of access to *any* internal documents" make attempted settlement efforts "more

27  difficult."  Pl. Mem. at 2, 4.  While the parties did conduct a mediation in November 2007 that proved to be short and unsuccessful, the parties have not engaged in any settlement discussions

28  since that time.  The settlement discussions did not break off due to plaintiffs' lack of access to Marvell's documents.

Plaintiffs complain that they effectively are being "left behind" with the settlements of the SEC and derivative actions.  This is a curious contention.  Assuming for the sake of argument that Marvell's settlements with the SEC and tentative settlement of the derivative action have somehow harmed the class action plaintiffs (they did not), it is entirely unclear how producing documents to the class action plaintiffs now will alleviate this harm.  As the *Lantronix* court reasoned when it refused a similar request to lift the PSLRA discovery stay: "Although Lantronix has apparently settled with plaintiffs in another action, Plaintiff here makes no showing of how the discovery materials sought are necessary at this moment to effectuate a settlement in this case or how one settlement in another case creates anything more than the routine delay contemplated by the PSLRA."  2003 WL 22452393, at *2.

Moreover, plaintiffs' own authority shows that an "informational disadvantage" relative to other interested parties only qualifies (if it does) as an "exceptional circumstance" that justifies lifting the stay when urgency exists because there are insufficient funds available due to a defendant that is financially *in extremis* or already in bankruptcy.  In *WorldCom*, *Enron*, *Delphi*, *Lernout*, and *Royal Ahold*, the defendant corporations were in bankruptcy or in dire financial straits.  *See Deutsche Bank*, 2008 WL 534535, at *2 (distinguishing plaintiffs' authorities due to corporate bankruptcies); *Am. Funds*, 493 F. Supp. 2d at 1106 (same).  In *Royal Ahold*, for example, the court lifted the discovery stay because the company was engaged in a "wide-ranging corporate reorganization" that involved "aggressive divestitures" that, "like WorldCom's bankruptcy, create[d] a risk that delay may limit recovery." 220 F.R.D. at 251-52.  Notably, the court did not lift the discovery stay for defendant Deloitte & Touche because it was not reorganizing its affairs like Royal Ahold.  *Id.* at 252-53.  In *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100 (D. Mass. 2002) (Saris, J.), the corporate defendant was a Belgian company in bankruptcy facing potential dissolution.  *Id.* at 108-109.  Despite these circumstances, the *Lernout* court only lifted the discovery stay for "any party with respect to which a motion to dismiss has been denied. . . ."  *Id.* at 109.  Marvell's motion to dismiss has not been denied here. *See also Delphi*, 2007 WL 518626, at *7 (stay lifted where plaintiffs faced the prospects of "being left with nothing" due to Delphi's bankruptcy and substantial settlements depleting what

1   little funds remained); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y.

2   2002) (Cote, J.) (stay lifted where plaintiffs faced "the very real risk that it will be left to pursue

3   its action against defendants who no longer have anything or at least as much to offer" due to

4   WorldCom's bankruptcy and a court ordered global settlement discussion for all matters); *In re*

5   *Enron Corp. Sec., Deriv. & "ERISA" Litig.*, No. MDL-1446, Civ. A H-01-3624, 2002 WL

6   31845114, at *1-2 (S.D. Tex. Aug. 16, 2002) (Harmon, J.) (lifting discovery stay where Enron

7   Corporation was in bankruptcy).

8        In stark contrast to the situations present in plaintiffs' cited authority, Marvell is a

9   financially healthy company with over $700 million in cash or cash equivalents, quarterly net

10  revenue of over $804 million, and quarterly net income of nearly $70 million.  *See* Marvell 10-Q

11  filed June 6, 2008, at 3-5 (Glazner Decl., Ex. B).  Here, Marvell's $10 million SEC civil penalty

12  and tentative derivative settlement that includes payment of plaintiffs' attorneys' fees up to $16

13  million falls ($26 million in total) does not constitute a significant depletion of available funds.

14  Even if Marvell had no remaining insurance funds (it does), the Company clearly has sufficient

15  cash to cover any settlement of this action.  Thus, Marvell's financial health precludes a finding

16  of "exceptional circumstances" related to a possible settlement.  *See, e.g.*, *Smith Barney*, 2006

17  WL 1738078, at *2 (refusing to find undue prejudice because the defendants were solvent and

18  plaintiffs "offer[ed] no evidence that Defendants lack[ed] the resources needed to reach a

19  settlement or to satisfy a judgment."); *Vivendi*, 381 F. Supp. 2d at 130-31 (refusing to find undue

20  prejudice where there was "no evidence" that plaintiffs face the prospect "that they would be left

21  without remedy in light of settlement discussions").

**4.   Plaintiffs Will Not Suffer Undue Prejudice From Defendants' Arguments In Their Motions to Dismiss that Plaintiffs Cannot Selectively Quote Marvell's Public Disclosure of the Special Committee's Findings**

25       Plaintiffs also argue that Marvell's use of the published findings of Marvell's Special

26  Committee charged with investigating Marvell's stock option granting policies in its motion to

27  dismiss constitutes using the PSLRA discovery stay as both a "sword" and a "shield" that

28  necessitates the production of the Special Committee's draft and final reports.  Pl. Mem. at 13.

*Marvell and the other defendants do not rely upon the Special Committee's report in their motions to dismiss.*  Instead, as shown in Marvell's motion to dismiss, Marvell argued that plaintiffs cannot be permitted to selectively quote or cherry-pick the Special Committee's published findings and conclusions.  Marvell's arguments are rooted in the uncontroversial position that the Court should consider the entire disclosure, not just the parts plaintiffs think benefit their allegations, when it engages in a "comparative inquiry" of "competing inferences rationally drawn from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504, 2509-10 (2007); *see* Marvell's Motion to Dismiss filed October 18, 2007, at 17-24.  Plaintiffs provide no authority in this or any other Circuit where defendants' use of a special committee's findings and conclusions published in a corporate defendant's SEC filings required the corporate defendant to produce the special committee's report, let alone drafts of the report, and all documents collected or reviewed by the committee.  Pl. Mem. at 5.

### 5.   The PSLRA Discovery Stay Is Not Limited to Cases In Which The Court Perceives Abuses

Plaintiffs also argue, as plaintiffs did in the derivative action, that the PSLRA's discovery stay provisions should not apply here because, in their opinion, this case does not represent any of the perceived abuses the PSLRA was designed to prevent, *e.g.*, a "fishing expedition to support frivolous claims" or the threat of "costly discovery requests" to extract a settlement.  Pl. Mem. at 14.  This argument ignores the statute's plain meaning.  The PSLRA discovery stay contains no provision limiting its application to only those cases in which there are abuses.  As this Court noted in its order denying the derivative plaintiffs' similar request to lift the PSLRA discovery stay: "Congress did not merely instruct courts to stay discovery in cases in which courts perceived abuses."  *Marvell*, 2007 WL 1545194, at *3; *see also Medhekar*, 99 F.3d at 328 ("Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants

1   after the action has been filed.").  Plaintiffs' effort to re-write the statute should not be

2   countenanced.[8]

3       **C.**     **Plaintiffs' Document Requests Are Not Particularized and Will Unduly Burden Marvell**

4

5       Even if plaintiffs had sustained their burden of demonstrating an imminent risk that

6   evidence may be lost or that they will otherwise suffer undue prejudice as a result of the

7   discovery stay, the PSLRA also requires that their requested discovery be "particularized."  15

8   U.S.C. § 78u-4(b)(3)(B).  Here, plaintiffs' discovery requests are not particularized and, in fact,

9   would impose a significant undue burden on Marvell.

10      Plaintiffs have asked for "all documents" Marvell's Special Committee and outside

11  auditors collected or reviewed, "all documents" Marvell produced to the SEC or DOJ, "all

12  documents" Marvell provided to the plaintiffs in the derivative action, and all drafts or final

13  Special Committee reports.  Pl. Mem. at 5.  Plaintiffs argue that these requests are "highly

14  particularized" because they already have been assembled and produced to governmental

15  entities.  *Id*. at 11.  Courts around the country, however, have rejected such contentions.  *See*,

16  *e.g.*, *Countrywide*, 542 F. Supp. 2d at 1180 n.29 (denying plaintiffs' request for an exception to

17  the PSLRA's discovery stay because plaintiffs' requests were not particularized and noting that

18  requests for documents produced in other proceedings are not necessarily particularized); *Am.*

19  *Funds*, 493 F. Supp. 2d at 1104, 1107 (finding that plaintiffs' request for all documents

20  defendants produced to the California Attorney General's Office was not sufficiently

21  particularized under the PSLRA's standards); *Fannie Mae*, 362 F. Supp. 2d at 38-39 (denying

22  plaintiffs' request to lift the PSLRA discovery stay for documents produced to governmental

23  agencies because such requests were not particularized); *Vivendi*, 381 F. Supp. 2d at 130

24  (denying plaintiffs' motion to lift PSLRA discovery stay for documents provided to French and

25  ───────────────

26      [8] Plaintiffs' reliance on *Vacold LLC v. Cerami*, No. 00 CIV.4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) (Schwartz, J.), is misplaced.  The *Vacold* court acknowledged that

27  Ninth Circuit authority contradicts its conclusion that the discovery stay should be lifted when no abuses were present in the instant action, and there was a possibility that the stay may shield defendants from liability.  *Id*. at *6 (citing *SG Cowen* as a "*but see*").  *See also Asyst*, 2008 WL

28  916841, at *2 (recognizing the "tension" between Ninth Circuit authority and *Vacold*).

1   U.S. governmental agencies, including the SEC and DOJ, because a request for such documents

2   was not sufficiently particularized).

3          Plaintiffs also argue that Marvell could produce the requested documents "with minimal,

4   if any, burden" and that such a production would "not cause Marvell to incur additional

5   expenses." Pl. Mem. at 5, 14.  Plaintiffs are wrong.  The burden on Marvell would be both

6   significant and expensive.  For example, in connection with the SEC's investigation, Marvell

7   produced hundreds of thousands of pages of documents that are completely irrelevant to the

8   claims asserted in this case.  Plaintiffs' requests, therefore, are not sufficiently particularized and

9   would require Marvell to sift through its SEC production to remove these irrelevant documents

10  from any production in this case.  Courts have recognized that requests calling for irrelevant

11  documents do not comply with the PSLRA's particularity requirement.  *See Countrywide*, 542 F.

12  Supp. 2d at 1180 n.29 (refusing to lift PSLRA discovery stay, noting that requests for documents

13  previously produced in government investigations or other litigation are not particularized if they

14  call for documents that are "irrelevant to the claims asserted in *this* case"); *Am. Funds*, 493 F.

15  Supp. 2d at 1107 (refusing to lift PSLRA discovery stay because plaintiffs did not identify

16  "specific categories or types of documents sought" from defendants' production to the California

17  Attorney General's Office "or how the documents sought will be relevant to the claims Plaintiffs

18  intend to assert in this case"); *Fannie Mae*, 362 F. Supp. 2d at 39 (refusing to lift PSLRA

19  discovery stay for documents produced in response to government investigations because they

20  were "voluminous and possibly irrelevant to the claims likely to be raised" in a consolidated

21  complaint).  Similarly, plaintiffs' requests would require Marvell to review documents for

22  privilege prior to their production.  This laborious and expensive review would be necessary

23  because plaintiffs have requested broad categories that comprise documents protected by the

24  attorney-client privilege or the attorney work product doctrine, *e.g.*, drafts of any Special

25

26

27

28

1   Committee reports, documents collected and reviewed by the Special Committee, and other

2   documents protected by attorney-client privilege or the attorney work product doctrine.[9]

3                                          **CONCLUSION**

4          For the foregoing reasons, Marvell respectfully requests that the Court deny Lead

5   Plaintiff's Motion for Partial Modification of the PSLRA Discovery Stay.

6

7   Dated:  August 22, 2008                        Respectfully submitted,

8                                                  WILSON SONSINI GOODRICH & ROSATI
                                                   Professional Corporation
9

10

11                                                 By:   /s/ Steven M. Schatz
                                                             Steven M. Schatz
12

13

14

15

16

17

18

19

20

21

22

23
   _____

24   [9] Plaintiffs' request that in the event the Court denies defendants' motions to dismiss, it order
     Marvell to "*immediately* produce" the documents sought in their Motion.  Pl. Mem. at 5 n.2
25   (emphasis added).   While plaintiffs may view the Federal Rules of Civil Procedure as an
     "unnecessary waste of time and resources," Marvell does not.  *Id*.  In light of the relevance and
     privilege objections Marvell would be required to make in response to plaintiffs' premature
26   document requests, and the time and expense involved in reviewing these documents for
     relevance and privilege, compliance with an order to "immediately produce" all documents
27   requested by plaintiffs would be impossible.  *Id*.  Discovery in this matter should follow the
     course proscribed by the Federal Rules of Civil Procedure if and when plaintiffs demonstrate the
28   legal sufficiency of their complaint.

1

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

2          I, Gregory L. Watts, am the ECF User whose identification and password are being used

3  to file Marvell's Opposition to Lead Plaintiffs' Motion for Partial Modification of the PSLRA

4  Discovery Stay.  In compliance with General Order 45.X.B., I hereby attest that Steven M.

5  Schatz has concurred in this filing.

6

7  Dated:  August 22, 2008                          WILSON SONSINI GOODRICH & ROSATI
                                                     Professional Corporation
8

9

10                                                   By:    /s/ Gregory L. Watts
                                                                Gregory L. Watts
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28