United States District Court
For the Northern District of California

**E-FILED on** __09/29/08____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re MARVELL TECHNOLOGY GROUP LTD. SECURITIES LITIGATION | No. C-06-06286 RMW |
| This Documents Relates To: | ORDER RE: MOTIONS TO DISMISS |
| All Actions | **[Re Docket No. 142, 147, 154, 163]** |

Before the court are separate motions to dismiss by the corporate defendant Marvell Technology Group, Ltd. ("Marvell") and individual defendants, Suhat Sutardja ("Sutardja") and Weili Dai ("Dai"),[1] George Hervey ("Hervey") and John Cioffi ("Cioffi"). Each defendant contends that Lead Plaintiffs fail to state a claim in their Consolidated Class Action Complaint ("Compl.") for Section 10(b), Section 14 or Section 20 violations. For the reasons set forth below, the court grants in part and denies in part defendants' motions to dismiss.

## I. BACKGROUND

Marvell is a Bermuda corporation with its headquarters in Santa Clara, California where it conducts its United States business through its wholly owned subsidiary Marvell Semiconductor, Inc. Marvel provides a wide range of high-performance analog, mixed signal, digital signal

---

[1] Sutardja and Dai originally moved to dismiss jointly as "Founder Defendants." However, Dai has subsequently retained separate counsel from Sutardja and has submitted a separate reply brief.

1   processing and embedded microprocessor integrated circuits to end users and others.  Marvell's

2   common stock is registered with the Securities and Exchange Commission ("SEC") pursuant to the

3   Exchange Act and trades on the NASDAQ National Market.

4       Defendants Suhat Sutardja and Weili Dai, who are married to one another, co-founded

5   Marvell in 1995.  Sutardja has served as Marvell's President and CEO since the company's inception

6   and served as the co-Chairman of the Board of Directors from 1995 to December 2003, until he

7   became the company's sole Chairman.  Dai was a director of Marvell from 1995 through May 2007

8   and was Chief Operating Officer of Marvell from April 2006 to May 2007.  Sutardja and Dai were

9   the sole members of Marvell's Stock Option Committee, which granted all stock options to non-

10  executive employees.  Defendant Hervey was Marvell's Vice President of Finance and CFO from

11  April 2000 through May 2007, when he resigned.  Defendant Cioffi was a director of Marvell from

12  March 2000 to April 1, 2006.  Cioffi was a member and Chairman of Marvell's Executive

13  Compensation Committee until April 2006.

14      On May 22, 2006 Marvell was one of the sixteen companies identified in the now-famous

15  research analyst report by Merrill Lynch questioning the timing of the companies' stock option

16  grants and suggesting that companies may have been engaged in backdating. At the close of trading

17  that day, Marvell's stock price dropped $1.61/share or 5.7% from the previous day to close at

18  $26.50.  On  July 3, 2006 after the close of trading, Marvell announced in its 8-K filing that it was

19  conducting an internal review of stock option practices and that it received an informal inquiry letter

20  from the SEC.  The stock price dropped $1.76/share or 7.8% in the next day's trading, closing at

21  $20.66.

22      Two events occurred on October 2, 2006 after trading had closed: (1) Marvell issued a press

23  release after the market closed that measurement dates for certain stock option grants likely differed

24  from the recorded dates and that the company would need to restate financials; (2) Marvell issued a

25  second press release that net revenue for 3QFY07 would be down 10% and expenses would be

26  higher due to costs related to stock option grant accounting.  As a result, the stock dropped

27  $2.29/share or 12% from the closing price on October 2, 2006.  Plaintiffs allege a total drop in

28  Marvell's stock price from May 22 - October 2 of $11.31/share or 40%.

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                                     2

United States District Court
For the Northern District of California

On May 2, 2007, Dai was demoted from COO to Director of Business and Marketing.  On that day, Hervey, Marvell's CFO, resigned.  The unvested stock options granted to both Dai and Hervey were cancelled.  In its Form 10-K filed on July 2, 2007 for the fiscal year ended January 27, 2007, Marvell announced the findings of the Special Committee ("Findings").[2]   In general, the Special Committee found that 74% of Marvell's option grants were backdated such that the original measurement dates were lower than the appropriate measurement dates for 97% of remeasured grants.  The Special Committee also found that the minutes of Stock Option Committee (made up of Dai and Sutardja) meetings, of which there were 53, were false because no meetings were held and that Dai played a central role in grants by the Stock Option Committee.  But the Findings also stated that Dai and Sutardja did not receive the benefit of proper or frank advice regarding their responsibilities for stock options and financial findings.

The Special Committee findings also stated that Dai, Sutardja and Hervey all received backdated grants.  Marvell subsequently restated its financial statements from FY2000 through FY2007 Q1.  The company allegedly understated cumulative effect of its compensation expense by $331 million and overstated its net income by $360 million for FY 2003-2006.

The first of the consolidated complaints in this action was filed on October 5, 2006.  Plaintiffs seek to establish a shareholder class of those who purchased shares between February 27, 2003 and October 2, 2006.  They assert claims against Marvell, Sutardja, Dai, Hervey and Cioffi for violations of Section 10(b) and Rule 10b-5 and for Section 14 violations based on allegedly false or misleading proxy statements.  They also assert claims for Section 20 violations for controlling person liability against the individual defendants.

---

[2]  Defendants ask the court to take judicial notice of Marvell's SEC filings.  Plaintiffs do not object to the court taking judicial notice of these filings.  Plaintiffs do, however, object on the basis that the court may not consider any conclusions regarding scienter the Special Committee Findings may present.  The court overrules this objection.  While the court need not consider the Findings to be conclusive, the court may reasonably rely on the contents of these SEC comments in evaluating competing inferences with respect to the instant motion under the PSLRA.  *Tellabs*, 127 S.Ct. at 2509 (comparative analysis must consider inferences that can be drawn from "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *see also In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1001 (N.D. Cal. 2007) (Alsup, J.) ("Plaintiff cannot be allowed to exclude the rest of the Form 10K because he wishes to pick and choose which statements should be considered.").

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                          3

**II. ANALYSIS**

**A.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its  claim that would entitle it to relief.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007).  In deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006);  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In this case, the plaintiffs are subject to two heightened pleading standards.  First, Federal Rule of Civil Procedure 9(b) requires complaints alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Second, and as set forth in further detail below, the plaintiffs must satisfy the Private Securities Litigation Reform Act ("PSLRA") pleading standard under which a complaint alleging misleading statements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Further, for those causes of action which require proof of scienter, the PSLRA requires plaintiffs to plead with particularity facts "giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  Thus, plaintiffs must state with particularity "both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2504 (2007) (quotation omitted) (citing 15 U.S.C. § 78u-4(b) (l), (2)).

**B.    Section 10(b) and Rule 10b-5 Claims**

Lead Plaintiffs assert a claim against all defendants under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  The Ninth Circuit has identified five basic elements of a Rule 10b-5 claim: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  connection with the purchase or sale of a security, (4) transaction and loss causation, and (5)

2  economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms.*,

3  544 U.S. at 341-42).  Defendants argue that the complaint's allegations are inadequate with respect

4  to scienter and loss causation.

### 1.    Misrepresentation

6      "It is well established that claims brought under Rule 10b-5 and section 10(b) must meet the

7  particularity requirements of Federal Rule of Civil Procedure 9(b)." *Id.*  Rule 9(b) provides that,

8  "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

9  stated with particularity." Fed. R. Civ. P. 9(b).  Rule 9(b), therefore, requires that allegations of

10  fraud identify the parties to the misrepresentation such that each defendant is on notice of what

11  specifically he or she is accused.  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d

12  397, 405 (9th Cir. 1991).  The allegations set forth that Sutardja and Hervey signed the following

13  financial statements alleged to be materially false and misleading and which were subsequently

14  restated by Marvell:

15          • 2003 10-K, filed with the SEC on May 2, 2003, Compl. ¶¶ 148-52;

16          • 2004 10-K, filed with the SEC on April 13, 2004, *Id.* ¶¶ 156-60;

17          • 2005 10-K, filed with the SEC on April 14, 2005, *Id.* ¶¶ 165-68;

18          • 10-Q, filed with the SEC on June 9, 2005, *Id.* ¶¶ 175-77;

19          • 10-Q, filed with the SEC on September 8, 2005, *Id.* ¶¶ 179-81;

20          • 10-Q, filed with the SEC on December 7, 2005, *Id.* ¶¶ 183-85;

21          • 2006 10-K, filed with the SEC on April 13, 2006, *Id.* ¶¶ 187-90; and

22          • 2007 10-Q, filed with the SEC on June 8, 2006, *Id.* ¶¶ 196-98.

23      Defendants do not challenge the existence of misrepresentations by Marvell and the

24  individual defendants, however, the individual defendants assert that plaintiffs have failed to allege

25  misrepresentations with adequate particularity because they do not allege which statements in these

26  documents were made by which defendant and instead rely upon the group pleading doctrine.

27      The group pleading doctrine allows a presumption that false and misleading information

28  disseminated through documents were made by the collective action of the corporation's officers. *In*

United States District Court
For the Northern District of California

*re GlenFed, Inc.*, 60 F.3d 591, 593 (9th Cir. 1995). The Ninth Circuit has not said whether this doctrine remains viable after the enactment of the PSLRA. In fact, two recent cases to consider the matter came to conflicting decisions regarding the continued survival after the PSLRA. *Cf. In re BP Prudhoe Bay Royalty Trust Securities Litigation*, 2007 WL 3171435 at *7 (W.D. Wash. October 26, 2007) (joining "those majority of Ninth Circuit district courts that have ruled on the issue" to find that the group pleading doctrine survives the PSLRA) *with In re Hansen Natural Corp. Securities Litigation*, 527 F.Supp. 2d 1142, 1153-54 (C.D. Cal. October 16, 2007) (concluding that the group pleading doctrine can no longer be used in cases under the PSLRA).

The court finds the reasoning in *In re Hansen* to be persuasive. There, the court based its decision on the Supreme Court's recent refusal to overturn the Seventh Circuit's determination in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602-03 (7th Cir. 2006), that the group pleading doctrine did not survive the PSLRA and joined courts in this district finding that the group pleading doctrine is contrary to the PSLRA. *Hansen*, 527 F.Supp. 2d at 1153-54 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S.Ct. 2499, 2511 n.6 (2007)). The court in *In re BP Prudhoe Bay*, by contrast, did not consider *Tellabs*. Accordingly, the court finds that plaintiffs may not rely on the group pleading doctrine. *See also Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007) (interpreting *Tellabs* to abolish the group pleading doctrine).

Nevertheless, without relying upon the group pleading doctrine, the court finds that the complaint alleges with sufficient particularity misrepresentations made by Hervey, Sutardja and Dai. Hervey and Sutardja are alleged to have both prepared and signed the SEC filings listed above (the other individual defendants are alleged only to have signed these documents). Further, Hervey was the CFO of Marvell at the time each of the above documents was allegedly prepared and signed. Although Hervey contends that misrepresentations cannot be attributed to him by virtue of his position alone, the court concludes that the allegation that he was CFO combined with the allegations that he signed the forms above containing numerous accounting errors of which he, as CFO, should have been aware is sufficient to allege that Hervey made misrepresentations. With regard to both Sutardja and Dai, plaintiffs allege that Marvell filed proxy statements with the SEC for fiscal years 2001 to 2006 which reported that the Stock Option Committee had met numerous

times throughout the applicable year (over 53 times total).  The Special Committee Findings, however, revealed that the Stock Option Committee, of which Sutardja and Dai were the sole members, never convened a single meeting and that all of the minutes were false.  This allegation of misrepresentation is enough to permit plaintiffs to survive defendants' motion to dismiss.

### 2.    Scienter

Defendants challenge the sufficiency of Lead Plaintiffs' allegations of scienter.  "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs*, 127 S.Ct. at 2509.

In *Tellabs*, the Supreme Court elaborated on the PSLRA's "strong inference" standard for pleading scienter.  The Court held that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss . . . . The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 2509 (emphasis in original).

Under the PSLRA "when determining whether plaintiffs have shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).  As the Court explained in *Tellabs*, a district court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged."  *Tellabs*, 127 S. Ct. at 2510.  The factual allegations must give rise to an inference of scienter that is "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*  In considering the strength of the inference established by the allegations, a district court cannot consider allegations "in a vacuum," but instead must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id.* at 2509.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

**a.      Special Committee Findings**

Plaintiffs rely heavily upon the Findings to allege the requisite scienter.  *See* Opp'n at 14, n.12 (stating plaintiff's position that "where a plaintiff is able to rely upon the defendant company's own public admission of "I did it,' the plaintiff need not rely upon information from confidential sources.").[3]  Defendants contend that the following Findings do not support a finding of scienter with respect to any of the defendants.

**i.      Backdating**

The Findings state that "[t]he Special Committee determined that in a substantial number of instances grant dates were chosen with the benefit of hindsight so as to provide exercise prices lower than the fair market value on the actual measurement date."  Compl. ¶ 102; Thomas Decl., Ex. A at 56.  It determined that approximately 74% of the shares granted during the period reviewed were backdated or resulted in additional accounting charges.  For 97% of these grants, the price on the backdated date was more favorable than the price on the appropriate measurement date.  The Special Committee determined "that the total cumulative, pre-tax, non-cash, stock-based compensation expense resulting from revised measurement dates under APB 25 was $327.4 million for periods through fiscal 2006."  Thomas Decl., Ex. A at 60.

**ii.      Stock Option Committee Minutes and Meetings**

As discussed briefly above, the Findings also set forth that of 53 minutes of meetings of the Stock Option Committee, only the first set of minutes was prepared for and signed by both of the members of the Committee, Dai and Sutardja.  The remaining minutes were prepared for and signed by only one member of the Committee, which appears to have been Dai.  The Committee determined that these minutes were false because the Stock Option Committee conducted no meetings with respect to option grants.

**iii.      Restatement of Financials**

---

[3]  To the extent that plaintiffs seek to rely on statements by confidential witnesses, defendants argue that they have failed to allege sufficient details about these confidential witnesses to establish that they were in a position to know the information they are alleged to know.  Plaintiffs do not appear to contest this assertion, therefore the court does not consider any statements that may be attributable to confidential witnesses for purposes of determining scienter.

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                                                          8

1    After the Special Committee released its Findings, Marvell restated its consolidated financial

2    statements and related disclosures for fiscal years ended January 28, 2006 and January 29, 2005

3    along with other disclosures for fiscal years 2003 through 2006.  In all, the additional stock-based

4    compensation expense was increased to $362.6 million.

5    To the extent Lead Plaintiffs seek to rely solely on the restatement of financials, plaintiffs

6    cannot show scienter solely by pointing to the fact that Marvell restated its financial statements.  *In*

7    *re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 962-63 (N.D. Cal. 2007) (company's decision to

8    restate its financial statements and reprice stock options does not alone support an inference of

9    fraud).  Further, as a general rule, failure to follow GAAP is not sufficient to raise an inference of

10   scienter.  In *DSAM Global Value Fund v. Altris Software*, for example, the plaintiff alleged that the

11   defendant's auditor "egregiously failed to see the obvious" GAAP violations in the financial

12   statements.  288 F.3d 385, 387 (9th Cir. 2002).  The defendant subsequently admitted that the

13   audited financial statements did not comply with GAAP.  *Id.* at 390.  The plaintiff in *DSAM* alleged

14   specific "red flags" that should have put the defendant on notice of the GAAP violations (the fees for

15   the transaction at issue were exorbitant, the transaction was recorded on the last day of the year, and

16   the transaction was described as "special").  These facts suggested that the auditor should have

17   undertaken further investigation before approving the transaction.  *Id.* at 389.  Yet, despite the

18   admitted failure to comply with GAAP and the undisputedly suspicious nature of the transaction, the

19   court held that "the allegations of negligence are insufficient to establish a strong inference of

20   deliberate recklessness."  *Id.*  at 391.  Pursuant to *DSAM*, even an obvious failure to follow GAAP,

21   does not alone give rise to an inference of scienter.  Here, however, the allegations point to facts

22   other than GAAP violations and the restatement of financials.

23                              **iv.    Remedial Actions**

24   As set forth briefly above, after the Special Committee released its findings, Dai was

25   removed as director and COO of Marvell and assigned to a "substantially reduced capacity as

26   Director of Strategic Marketing and Business Development, an individual contributor in a non-

27   managerial role" without "authority to undertake any decisions affecting [Marvell's] internal controls

28   or financial matters."  Her unvested stock options were cancelled and her ability to exercise her

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                                         9

**United States District Court**
For the Northern District of California

1    vested options was limited. Hervey resigned as CFO and all unvested stock options awarded to him

2    were cancelled. Sutardja remained CEO of Marvell and a member of the Board, but stepped down

3    as Chairman of the Board. He agreed to reduce the number of shares received in his December 26,

4    2003 grant by 500,000 pre-split shares (or roughly 2,000,000 present shares – Marvell stock

5    underwent two 2:1 stock splits on June 2004 and July 2006). This reduction purportedly

6    corresponds with the amount of shares awarded by the Executive Compensation Committee in

7    excess of what was authorized by the stock option plan applicable to Sutardja in December 2003.

8                     **b.**     **Dai**

9       Dai asserts that the complaint should be dismissed as to her because it fails to allege that she

10    acted with scienter. Dai concedes for purposes of this motion that the Complaint alleges that she

11    participated in backdating options but contends that it fails to allege that she did so with the intent to

12    defraud investors. Dai argues that a competing and compelling inference is that she backdated

13    options in order to further "Marvell's business interest in recruiting and retaining the most talented

14    employees in an intensely competitive market" and that she did so without awareness of the

15    accounting and disclosure implications of her conduct. Dai Reply at 1.

16       Lead Plaintiffs must provide detailed factual allegations demonstrating that defendants

17    "knew or were deliberately reckless in not knowing that the backdated options would have a

18    material effect on the financial reports." *Middlesex Ret. Sys v. Quest Software, Inc.*, 527 F. Supp. 2d

19    1164, 1188 (C.D. Cal. 2007). As alleged in the Complaint, the Findings set forth that Dai, who was

20    an Executive Vice President and the COO of Marvell, was a member of the Stock Option Committee

21    with her husband, Sutardja. The Stock Option Committee comprised of only the two awarded all

22    grants to non-executive employees from December 2000 until June 9, 2006. The Findings state that

23    Dai "played a central role in all Stock Option Committee grants,"(Thomas Decl., Ex. at 57), and that

24    the Special Committee "concluded that only one member of the Stock Option Committee was

25    actively involved in the grant approval process." *Id.* at 55. The Findings state that Dai "participated

26    in the selection of grant dates with the benefit of hindsight and signed false minutes and other

27    employee related corporate documents." *Id.* at 57. The Special Committee also found that she failed

28    to establish proper internal controls, failed to exercise proper review and inquiry as an officer,

signed inaccurate external documents including 10K's and proxy statements, and that "certain individuals involved in the process said that they did not feel able to provide her with frank advice." *Id.*

On May 6, 2007, Dai was demoted from her position as Executive Vice President and COO to Director of Strategic Marketing and Business Development, a non-managerial role. Her unvested options as of May 6, 2007 were cancelled. Further, Dai was asked to pay back to Marvell $3,421,249, which allegedly represented the difference between the exercise price of her stock option grants and the fair market value of the stock on the actual measurement dates.

While none of these allegations individually would be sufficient to plead scienter, taken together, they do. It is also reasonable to infer from the pleadings that Dai participated in backdating in order to further retention of employees. However, Dai's motive to retain good employees in a competitive market does not negate an inference that she knew what she was doing was illegal and her actions would affect the financial disclosures of the company.

### c.    Sutardja

Sutardja argues that Lead Plaintiffs have failed to allege facts sufficient to show scienter because they have failed to allege facts to support a strong inference that he had any knowledge of the backdated option grants. As set forth above, Sutardja and Dai were the sole members of the Stock Option Committee. The Special Committee found that Sutardja "had a limited role in the stock option process and [ ] participated in only a few instances in awards with incorrect measurement dates with respect to which he had received no or inadequate advice." Thomas Decl., Ex. A at 57. He, like Dai, was found to have failed to establish proper internal controls and to have signed inaccurate external documents including SEC filings, financial statements and proxy statements. *Id.* Further, the Special Committee found that "certain individuals involved in the process said that they did not feel able to provide him with frank advice." *Id.*

As discussed with respect to Dai, Lead Plaintiffs have alleged that all of the minutes for 53 meetings of the Stock Option Committee were false because no meetings occurred. Unlike Dai, Sutardja signed only minutes of one of those meetings. Nevertheless, the allegations made by Lead Plaintiffs allow a sufficiently strong interference that Sutardja participated in instances of awards

1    with incorrect measurement dates and that, because he was the only other member of the Stock

2    Option Committee, he knew or should have known that the minutes were falsified whether he signed

3    them or not.

4        Following the publication of the Findings, Sutardja remained CEO of Marvell and a member

5    of the Board, however, he stepped down as Chairman of the Board.  Sutardja received an option

6    grant of 1.5 million shares dated December 26, 2003. Sutardja's shares received in the December 26,

7    2003 grant were reduced by 500,000 pre-split shares (or roughly 2,000,000 present shares – Marvell

8    stock underwent two 2:1 stock splits on June 2004 and July 2006).  This reduction purportedly

9    corresponds with the amount of shares awarded by the Executive Compensation Committee in

10   excess of what was authorized by the stock option plan applicable to Sutardja in December 2003.

11       Although it is a slightly closer call with respect to Sutardja than with Dai, the court finds that

12   the allegations taken as a whole are sufficient to conclude that Sutardja had sufficient scienter to

13   survive defendants' motion to dismiss.

14                                **d.      Hervey**

15       Hervey moves separately to dismiss the claims against him.  He contends that none of the

16   allegations against him, whether taken alone or together, are sufficient to establish scienter.  Hervey

17   was Marvel's Vice President of Finance and CFO from April 2000 through May 2, 2007 when he

18   resigned.  He was not a member of either the Stock Option Committee or the Executive

19   Compensation Committee.  Hervey's unvested stock options were cancelled as of the date of the

20   termination of his employment.  He also paid back to Marvell $615,673.

21       In addition to the statements set forth above, the Findings state that the Special Committee

22   found that one grant to Hervey made by the Executive Compensation Committee dated October 16,

23   2002 was backdated. According to the Findings, Hervey "failed to properly advise upper

24   management . . . about their responsibilities and duties regarding stock options and other financial

25   filings," "was found to have been aware of awarding options to two employees prior to their start

26   date," and "failed to establish a system of proper controls despite being on notice of repeated

27   concerns raised by others regarding the stock option process."  Thomas Decl., Ex. A at 56-57.

28

United States District Court
For the Northern District of California

The Findings also state that Hervey as Marvell's CFO signed inaccurate external documents, including SEC filings and financial statements. Finally, Lead Plaintiffs argue that Hervey resigned from his position as CFO in May 2007, coinciding with the conclusion of the Special Committee investigation. Absent particularized allegations refuting the reasonable assumption that a CFO "was fired simply because the errors that lead to the restatement occurred on his watch or because he failed adequately to supervise his department," the inference that the termination of such an officer's employment was due to participation in accounting fraud is unwarranted. *See, e.g., In re U.S. Aggregates Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073-74 (N.D. Cal. 2002). Here, however, Lead Plaintiffs have alleged sufficient facts to strongly suggest that Hervey was fired because of involvement in backdating stock options and accounting misstatements related thereto.

### e.     Cioffi

Of the individual defendants, Lead Plaintiffs' allegations regarding Cioffi are the weakest. The Findings do not mention Cioffi by name, but, the parties agree, he was the director of Marvell's Executive Compensation Committee. The Findings set forth that the first grant made to Hervey by the Executive Compensation Committee was found to have been backdated. Plaintiffs assert that the court should infer Cioffi's knowledge of backdating because of his position on the Executive Compensation Committee and the large percentage of the stock option grants found to be backdated. The Findings state, "[t]he Special Committee found that current board members who had served or are serving on the Executive Compensation Committee had not engaged in impropriety or intentional backdating with the benefit of hindsight." *Id.* While this statement refers only to the current board members and Cioffi was only a director until April 2006, the court nevertheless does not find that Cioffi's membership on the Executive Compensation Committee creates a strong inference of scienter on Cioffi's part in the absence of specific allegations regarding his participation, even considering the magnitude of the backdating at Marvell found by the Special Committee. *See, e.g., In re Affiliated Computer Servs. Deriv. Litig.,* 540 F.Supp 2d 695, 701 (N.D. Tex. 2007) (position on compensation committee when backdated options were granted was insufficient to establish scienter).

### f.     Conclusion

United States District Court
For the Northern District of California

1   The court finds that the allegations in the operative complaint give rise to an inference that is

2   at least as compelling as any opposing inference that Marvell was issuing backdated stock options,

3   and that Dai either knew, or was reckless in not knowing, about the fact that the options were

4   wrongfully backdated.  The allegations are also sufficient to give rise to such an inference with

5   respect to Sutardja and Hervey.  However, the allegations as to Cioffi are not sufficient to raise an

6   inference that Cioffi was either involved in the stock option backdating or, even assuming he was,

7   that he acted with scienter.

8                           **3.       Loss Causation**

9       Defendants contend that Lead Plaintiffs have failed to adequately allege loss causation.[4]  To

10  establish loss causation, "the plaintiff must demonstrate a causal connection between the deceptive

11  acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff."  *In*

12  *re Gilead Sciences Securities Litigation*, 536 F.3d 1049, (9th Cir. 2008) (quoting *In re Daou Sys.,*

13  *Inc.*, 411 F.3d 1006,1025 (9th Cir. 2005).  "The misrepresentation need not be the sole reason for the

14  decline in value of the securities, but it must be a substantial cause."  *Id.* (quotation marks and

15  citations omitted).

16      Lead Plaintiffs have set forth disclosures that they allege caused a drop in Marvell's stock

17  price: (1) the publication on May 22, 2006 of the Merrill Lynch report identifying Marvell as one of

18  several semiconductor companies with statistically suspicious option grant patterns; (2) the

19  publication of Marvell's July 3, 2006 Form 8-K which disclosed that the SEC and DOJ were seeking

20  documents relating to Marvell's stock option grants and practices and that Marvell had formed a

21  Special Committee to investigate stock option grants; (3) Marvell's August 17, 2006 statement after

22  the close of trading that it did not expect to be in a position to file its Form 10-Q for the second

23  fiscal quarter by the required date because its Special Committee was conducting an internal review

24  of historical stock option procedures and related accounting matters; and (4) Marvel's October 2,

25  2006 disclosure that it had back dated stock options and would have to restate its financial

26  statements.

27

28  [4]  Marvel's contention that Lead Plaintiff's cannot prove any damages from alleged misstatements
    made before May 17, 2005 appears to have merit.  However, this issue is probably better addressed
    at a class certification motion or in a motion for partial summary judgment.

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                                              14

United States District Court
For the Northern District of California

1    At a minimum, Marvell's announcement on October 2, 2006 that Marvell would restate prior

2    financial results in light of stock option accounting practices was a corrective announcement.

3    However, defendants point out that a separate announcement on the same day stated that Marvell

4    would fail to meet its revenue targets for the upcoming third quarter. Defendants contend that this

5    demonstrates that the court cannot, based on the present allegations, determine whether any of the

6    loss was caused by the restatement announcement. The court disagrees. Even though the October 2,

7    2006 announcement that Marvell would restate prior financial results due to the revelation about the

8    stock option grants was accompanied by an announcement that Marvell would fail to meet its

9    revenue targets, it is reasonable to infer that the revelation regarding the stock option accounting was

10   significant and could plausibly have caused the drop in Marvell's stock price on October 3, 2006.

11   Accordingly, the court declines to dismiss based upon the assertion that Lead Plaintiffs failed to

12   adequately plead loss causation.

### 4.     Statute of Repose

14   28 U.S.C. § 1658(b) provides

[A] private right of action that involves a claim of fraud, deceit, manipulation, or contravance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of –
(1) 2 years after the discovery of the facts constituting the violation; or
(2) 5 years after such violation.

This statute of limitations is not subject to equitable tolling. *Durning v. Citibank, In'l*, 990 F.2d

1133, 1136-37 (9th Cir. 1993). Thus, a claim under § 10(b) that is based upon backdating accrues

on the date the option grant was made. *In re Ditech Networks, Inc. Derivative Litig.*, 2007 WL

2070300 at *7 (N.D. Cal. July 16, 2007). Here, because the complaint was filed on October 5, 2006,

the statute of limitations has run on any alleged misrepresentations made prior to October 5, 2001

that concern the backdating of options. This determination does not, however, appear to require the

dismissal of any of the Section 10(b) claims in this action as plaintiffs have alleged backdating

occurring after October 5, 2001.

### C.     Section 14(a)

27   Rule 14a-9 provides that "No solicitation subject to this regulation shall be made by means of

28   any proxy statement . . . containing any statement which, at the time . . . it is made, is false or

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                                                          15

**United States District Court**
For the Northern District of California

1  misleading with respect to any material fact, or which omits to state any material fact necessary in

2  order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9(a).  To

3  state a claim under Rule 14a-9 and Section 14(a), a plaintiff must allege a false or misleading

4  statement or omission of material fact; that the misstatement or omission was made with the

5  requisite level of culpability; and that it was an essential link in the accomplishment of the

6  transaction.  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  "An omitted fact or

7  misrepresentation in a proxy statement is material when there is a substantial likelihood that a

8  reasonable shareholder would consider it important in deciding how to vote."  *TSC Indus., Inc. v.*

9  *Northway, Inc.*, 426 U.S. 438, 449 (1976).

10           **1.      Statute of Repose**

11          Defendants argue that the Section 14(a) claim is time-barred to the extent it relies upon

12  Marvell's 2002 and 2003 proxy statements because a claim must be filed within one year after

13  discovery of the facts constituting the violation, and in no event more than three years following

14  publication of the proxy statement.  The Lead Plaintiffs argue that the statute of repose applying to a

15  Section 10(b) claim applies to a Section 14(a).  *See* 28 U.S.C. § 1658(b) (providing that a private

16  right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention

17  of a regulatory requirement concerning the securities laws must be filed within two years after

18  discovery or five years of the violation).  As in *In re Atmel Corp. Derivative Litigation*,  2007 WL

19  2070299 at *8 (N.D. Cal. July 16, 2007), the court "concludes that the one-year/three-year scheme

20  applies to the Section 14(a) claim because such a claim does not sound in fraud."  *See also In re*

21  *Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1016-17 (N.D. Cal. 2007) ("A Section 14(a)

22  claim is not a claim that 'sounds in fraud' under the Sarbanes-Oxley Act of 2002, so its statute of

23  limitations was not extended by 28 U.S.C. 1658(b)(2).");  *In re Verisign, Inc. Derivative Litig.*, 531

24  F. Supp. 2d 1173, 1212 (N.D. Cal. 2007) (same).

25          Accordingly, Lead Plaintiffs' Section 14(a) claim cannot be based on the 2002 or the 2003

26  proxy.  Because both were published over three years before the date the complaint was filed, claims

27  based upon those Proxy statements are time-barred.

28           **2.      Essential Link**

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW

United States District Court
For the Northern District of California

As to plaintiffs' Section 14(a) claim based on the 2004, 2005 and 2006 proxy statements, defendants assert that plaintiffs have not sufficiently alleged facts that show an essential link.  First, defendants correctly point out that none of plaintiffs' claims are based on the 2006 proxy statement. Second, damages are recoverable under § 14(a) "only when the votes for a specific corporate transaction requiring shareholder authorization . . . are obtained by a false proxy statement, and that transaction was the direct cause of pecuniary injury for which recovery is sought." *Gen'l Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 932 (3rd Cir.1992). With regard to the 2004 and 2005 proxy statements, plaintiffs' allegations are that the proxies were used to solicit shareholder votes on the re-election of certain directors.  This does not constitute an essential link between the proxy statement and the backdating that is alleged to be the cause of Lead Plaintiffs' injury absent particularized facts demonstrating that the directors to which the 2004 and 2005 proxies applied had a role in backdating.  The Section 14(a) claim is dismissed for the failure to allege that the directors up for election in 2004 and 2005 had anything to do with option backdating.

**D.     Section 20(a)**

Lead Plaintiffs allege control person liability under section 20(a) against all four individual defendants.  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  "To establish 'controlling person' liability, the plaintiff must show that a primary violation was committed and that the defendant 'directly or indirectly' controlled the violator." *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

Since the court has concluded above that allegations are sufficient to establish a primary violation by Sujarta, Dai, and Hervey, the question is whether the Lead Plaintiffs have sufficiently alleged that each of those defendants had actual power or control over a primary violator.

> In order to make out a prima facie case, it is not necessary to show actual participation or the exercise of power; however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation. Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                                        17

United States District Court
For the Northern District of California

1    day-to-day affairs of the corporation and the defendant's power to control
2    corporate actions. "Control" is defined in the regulations as "the possession,
     direct or indirect, of the power to direct or cause the direction of the
     management and policies of a person, whether through the ownership of
3    voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.

4    *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America*, 320 F.3d 920, 945 (9th

5    Cir. 2003) (internal quotations and citations omitted).  Sutardja, in his position as Marvell's

6    President and CEO and as one of two members of the Stock Option Committee (the other member

7    being Dai), had power over Marvell given his postions in the company and involvement with

8    compensation and the granting of options. Similarly Dai, as COO of Marvel, had control of Marvel's

9    backdating of options as the active member of the Stock Option Committee. Finally, Hervey as

10   Vice-President of Finance and CFO had the power to control Marvell's financial reporting and the

11   setting of controls over the granting of options.  In light of the allegations of control that Sutardja,

12   Dai and Hervey had over Marvell's financial management, backdating and financial reporting, the

13   Section 20(a) claims survive defendants' motion to dismiss.

14       **E.    PSLRA Stay**

15       The PSLRA imposes a stay on discovery until such time as plaintiffs have filed a complaint

16   that meets applicable pleading standards.  Plaintiffs previously moved for relief from this stay,

17   which the court denied.  On July 25, 2008, plaintiffs again moved for relief from that stay under 15

18   U.S.C. § 78u-4(b)(3)(B) for the purportedly limited purposes of allowing plaintiffs to obtain a copy

19   of (1) documents that Marvell has gathered, reviewed and produced to the SEC and DOJ and the

20   plaintiffs in a parallel derivative action, *In re Marvell Technology Group Ltd. Derivative Litigation*,

21   Case No. 06-03894-RMW and (2) documents collected and reviewed by the Special Committee and

22   the outside auditors in conjunction with their investigation, as well as any draft and final reports the

23   Special Committee created in connection with its investigation into Marvell's stock option granting

24   practices.

25       Lead Plaintiffs' request is denied. 15 U.S.C. § 78u-4(b)(3)(B) permits consideration of relief

26   from the PSLRA discovery stay upon a "motion of any party that particularized discovery is

27   necessary to preserve evidence or to prevent undue prejudice to that party."  Plaintiffs argue they

28   will suffer undue prejudice because defendants have settled with the SEC and with the plaintiffs in

1   the derivative action.  First, there is no evidence that Marvell is engaging in any discovery abuses.

2   Second, plaintiffs cannot point to prejudice in light of the court's instant ruling on defendants'

3   motions to dismiss.

4          As the court has denied defendants' motions to dismiss as to some of plaintiffs' claims,

5   plaintiffs could elect to not amend those claims and proceed with discovery.

6                                         **III.  ORDER**

7          For the foregoing reasons, the court grants in part and denies in part defendants' motions to

8   dismiss as follows:

9          1.     The Motions to Dismiss of Defendants Marvell, Sutardia, Dai and Hervey are denied

10                as to Count I of Lead Plaintiffs' Complaint  (Violation of Section 10(b) of Exchange

11                Act and Rule 10b-5 Thereunder);

12         2.     The Motions to Dismiss of Defendants Sutardia, Dai and Hervey as to Count II

13                (Violation of Section 20(a) of Exchange Act) are denied;

14         3.     The Motions to Dismiss of Defendants Sutardia, Dai and Hervey are granted as to

15                Counts III and IV (Violations of Section14(a) of Exchange Act and Rule 14a-9

16                Thereunder) with 30 days leave to amend;

17         4.     Cioffi's Motion to Dismiss is granted with 30 days leave to amend as to all claims;

18         5.     Lead Plaintiffs' Motion for Relief from the PSLRA Discovery Stay is denied.  As an

19                alternative, Lead Plaintiffs may elect to not amend their complaint and proceed as to

20                Counts I and II as permitted by this order and begin discovery at this time.

21

22   DATED:        09/29/08                          _Ronald M Whyte_

23                                                   RONALD M. WHYTE
                                                     United States District Judge

24

25

26

27

28

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiffs:**

3    Julie Juhyun Bai                      jbai@bermanesq.com
     Christine Bartholomew             cbartholomew@finkelsteinthompson.com
4    Stuart L. Berman                     sberman@sbtklaw.com
     Michael David Braun               service@braunlawgroup.com
5    Stephanie L. Dieringer             sldieringer@hulettharper.com
     Donald J. Enright                    dje@ftllaw.com
6    Steven Eliott Fineman             sfineman@lchb.com
     Lawrence Timothy Fisher          ltfisher@bramsonplutzik.com
7    Linda M. Fong                        lfong@kaplanfox.com
     Lesley Ann Hale                     lhale@bermanesq.com
8    Blake M. Harper                     Bmh@hulettharper.com
     Christopher T. Heffelfinger       cheffelfinger@bermanesq.com
9    Laurence D. King                    lking@kaplanfox.com
     Joseph C. Kohn                      jkohn@kohnswift.com
10   Elisa P. Laird                        elaird@finkelsteinthompson.com
     Nicole Catherine Lavallee         nlavallee@bermanesq.com
11   Bruce W. Leppla                     bleppla@lchb.com
     James Christopher Magid          jmagid@bermanesq.com
12   Mark Cotten Molumphy            mmolumphy@cpmlegal.com
     Alan R Plutzik                        aplutzik@bramsonplutzik.com
13   Kathryn Anne Schofield            kschofield@bramsonplutzik.com
     Denis Francis Sheils               dsheils@kohnswift.com
14   Joseph J. Tabacco , Jr             jtabacco@bermanesq.com
     Sarah Pickeral Weber              sweber@hulettharper.com
15
     **Counsel for Defendants:**
16
     Jennie L. Wang                      jenniewang@quinnemanuel.com
17   Jessica L. Grant                     jgrant@tcolaw.com
     Michele Hirshman                   mhirshman@paulweiss.com
18   Nicholas George Campins         ncampins@tcolaw.com
     Stephen E. Taylor                    staylor@tcolaw.com
19   Steven B. Rosenfeld                srosenfeld@paulweiss.com
     Theodore V. Wells                   twells@paulweiss.com
20   Timothy S. Martin                   tmartin@paulweiss.com
     Boris Feldman                        boris.feldman@wsgr.com
21   Caroline McIntyre                   cmcintyre@be-law.com
     Steven Mark Schatz                 sschatz@wsgr.com
22   Gregory Lewis Watts               rbrown@wsgr.com
     Laurence Andrew Weiss            kris.elder@hellerehrman.com
23
     Counsel are responsible for distributing copies of this document to co-counsel that have not
24   registered for e-filing under the court's CM/ECF program.

25

26   **Dated:**    _____09/29/08_____                    _____JAS_____
                                                              **Chambers of Judge Whyte**
27

28

ORDER RE: MOTIONS TO DISMISS—No. C-06-06286 RMW
MAG                                              20