1   Michael K. Yarnoff (admitted *Pro Hac Vice*)
    John A. Kehoe (admitted *Pro Hac Vice*)
2   Bharati O. Sharma
    **BARROWAY TOPAZ KESSLER**
3       **MELTZER & CHECK, LLP**
    280 King of Prussia Road
4   Radnor, PA  19087
    Telephone: (610) 667-7706
5   Facsimile:  (610) 667-7056
    myarnoff@btkmc.com
6   jkehoe@btkmc.com
    bsharma@btkmc.com
7
    *Co-Lead Counsel*
8
9   Joseph C. Kohn (admitted *Pro Hac Vice*)        Joseph J. Tabacco, Jr. (Bar No. 75484)
    Denis F. Sheils (admitted *Pro Hac Vice*)       Nicole Lavallee (Bar No. 165755)
    William E. Hoese (admitted *Pro Hac Vice*)      Julie J. Bai (Bar No. 227047)
10  **KOHN, SWIFT & GRAF, P.C.**                    **BERMAN DeVALERIO**
    One South Broad Street, Suite 2100              425 California Street, Suite 2025
11  Philadelphia, PA  19107                         San Francisco, CA  94104
    Telephone: (215) 238-1700                       Telephone: (415) 433-3200
12  Facsimile:  (215) 238-1968                      Facsimile:  (415) 433-6382
    jkohn@kohnswift.com                             jtabacco@bermandevalerio.com
13  dsheils@kohnswift.com                           nlavallee@bermandevalerio.com
    whoese@kohnswift.com                            jbai@bermandevalerio.com
14
15  *Co-Lead Counsel*                               *Liaison Counsel*
    [Additional counsel appear on signature page]

16

17                   **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
18                         **SAN JOSE DIVISION**

19                                                  Master File No. C-06-06286 RMW
    In re Marvell Technology Group Ltd.
20  Securities Litigation                           **<u>CLASS ACTION</u>**

21  _____         **LEAD PLAINTIFFS' NOTICE OF
                                                     MOTION AND MOTION FOR
22  THIS DOCUMENT RELATES TO:                        PRELIMINARY APPROVAL OF
                                                     PROPOSED CLASS ACTION
23  All Actions                                      SETTLEMENT AND MEMORANDUM
                                                     OF POINTS AND AUTHORITIES IN
24                                                   SUPPORT THEREOF**

25
                                                     DATE: JULY 31, 2009
26                                                   TIME:  9:00 A.M.
                                                     PLACE: COURTROOM 6
27                                                   THE HONORABLE RONALD M. WHYTE

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... iii

NOTICE OF MOTION AND MOTION ..................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I.      INTRODUCTION ........................................................................................... 2

II.     DESCRIPTION OF THE LITIGATION ......................................................... 3

        A.      Overview ............................................................................................. 3

        B.      Litigation History ............................................................................... 4

III.    PRELIMINARY SETTLEMENT APPROVAL ............................................... 6

        A.      The Standards for Preliminary Approval of a Class Action
                Settlement ........................................................................................... 6

        B.      The Settlement Should be Preliminarily Approved Because
                the Proposed Settlement Falls Within the Range of What
                Could be Found to be Fair, Reasonable, and Adequate ...................... 8

                1.      The Strength of Plaintiffs' Case and the Risk, Expense,
                        Complexity and Likely Duration of Further
                        Litigation ................................................................................. 8

                2.      The Amount Offered in Settlement ......................................... 9

                3.      The Risk of Maintaining Class Action Status ........................ 9

                4.      The Extent of Discovery Completed and the
                        Stage of the Proceedings ........................................................ 9

                5.      The Settlement Resulted From Arm's-Length
                        Negotiations and is Not the Product of Collusion .............. 10

IV.     CERTIFICATION OF THE CLASS UNDER FED. R. CIV. P. 23 IS
        APPROPRIATE ............................................................................................ 11

        A.      The Requirements of Rule 23(a) are Satisfied ............................... 12

                1.      The Proposed Class is so Numerous that Joinder of
                        All Class Members Would be Impracticable ....................... 12

                2.      Common Questions of Law and Fact Exist With Respect
                        to the Plaintiffs' and the Class Members' Claims ............... 13

3.   The Claims of the Proposed Class Representatives
     are Typical of the Claims of the Proposed Class ............................ 14

4.   The Proposed Class Representatives Will Fairly
     and Adequately Protect the Interests of the Class........................... 16

B.   The Requirements of Rule 23(b)(3) are Satisfied ......................................... 17

V.   THE PROPOSED CLASS NOTICE ....................................................................... 19

VI.  PROPOSED SCHEDULE ...................................................................................... 20

VII. CONCLUSION ....................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alberto v. GMRI, Inc.*,
    No. CIV. 07-1895 WBS DAD,
    2008 U.S. Dist. LEXIS 50418 (E.D. Cal. June 23, 2008) ........................................................ 8

*In re Alco Int'l Group Sec. Litig.*,
    158 F.R.D. 152 (S.D. Cal. 1994) ........................................................................................... 18

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................................. 11

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ................................................................................................. 14

*Basic v. Levinson*,
    486 U.S. 224 (1988) .............................................................................................................. 18

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ........................................................................................... 13, 17

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................................. 6

*In re Computer Memories Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986) ........................................................................................... 17

*In re Cooper Co. Inc. Sec. Litig.*,
    No. 06-00169,
    2009 U.S. Dist. LEXIS 3244 (C.D. Cal. Jan. 6, 2009) .................................................. *passim*

*Danis v. USN Communs., Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999) ............................................................................................. 15

*In re DJ Orthopedics, Inc.*,
    Case No. 01-CV-2238-K (RBB),
    2003 U.S. Dist. LEXIS 21534 (S.D. Cal. Nov. 16, 2003) ......................................... 13, 18, 19

*Freedman v. Louisiana-Pacific Corp.*,
    922 F. Supp. 377 (D. Or. 1996) ............................................................................................. 18

*Glass v. Fin. Servs. Inc.*,
    No. C-06-4068 MMC,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ......................................................... 10

**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION**
**FOR PRELIMINARY APPROVAL OF PROPOSED CLASS**      iii
**ACTION SETTLEMENT**

**CASE NO.: C-06-06286 RMW**

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998).............................................................................*passim*

*In re Memorex Sec. Cases*,
   61 F.R.D. 88 (N.D. Cal. 1973) ...................................................................................... 17

*In re Mego Financial Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)........................................................................................ 6, 7

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980)....................................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)........................................................................................ 6, 7

*Perez-Funez v. District Director, Immigration & Naturalization Service*,
   611 F. Supp. 990 (C.D. Cal. 1994)................................................................................ 12

*Santos v. Camacho*,
   Civil Case No. 04-00006,
   2007 U.S. Dist. LEXIS 1668 (D. Guam Jan. 9, 2007) ............................................. 20

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) .................................................................................. 12

*In re Sorbates Direct Purchaser Antitrust Litig.*,
   Nos. C 98-4886MMC et al.,
   2002 WL 31655191 (N.D. Cal. Nov. 25, 2002) ......................................................... 20

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)........................................................................... 11, 13, 16

*In re THQ Inc. Sec. Litig.*,
   Case No. CV 00-1783 AHM (Ex),
   2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ......................................... 12

*Torrisi v. Tuscon Elec. Power*,
   8 F.3d 1370 (9th Cir. 1993)............................................................................................. 6

*In re Unioil Sec. Litig.*,
   107 F.R.D. 615 (C.D. Cal. 1985) ............................................................................ 16, 18

*Utility Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989)........................................................................................... 6

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)........................................................................................... 6

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D. Cal. 1987) .......................................................................................... 13

*Weinberger v. Jackson*,
    102 F.R.D. 839 (N.D. Cal. 1984) .......................................................................................... 15

*West v. Circle K Stores, Inc.*,
    No. CIV. S-04-0438 WBS GGH,
    2006 U.S. Dist. LEXIS 42074 (E.D. Cal. June 13, 2006) .................................................. 7, 8

*Yeagley v. Wells Fargo & Co.*,
    No. C 05-03403,
    2008 U.S. Dist. LEXIS 5040 (N.D. Cal. Jan. 18, 2008) ......................................................... 7

*Young v. Polo Retail, LLC*,
    No. C-02-4546 VRW,
    2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ........................................................ 7

STATUTES

15 U.S.C. § 78u-4(a)(7) ................................................................................................................. 19

15 U.S.C.A. § 78u-4(a)(7)(A)-(F) ................................................................................................. 19

OTHER AUTHORITIES

FED. R. CIV. P. 23 ................................................................................................................. *passim*

Herbert B. Newberg & Alba Conte,
    NEWBERG ON CLASS ACTIONS, §8816 (1977) ....................................................................... 15

MANUAL FOR COMPLEX LITIGATION SECOND §30.44 (1985) ...................................................... 7

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on July 31, 2009 at 9:00 a.m., or as soon thereafter as

4  counsel may be heard before the Honorable Ronald M. Whyte, Courtroom 6, United States

5  Courthouse, 280 South First Street, San Jose, California, Lead Plaintiffs Police and Fire

6  Retirement System of the City of Detroit, Monte Paschi Asset Management S.G.R. S.p.A., and

7  Puerto Rico Government Employees Retirement System will and do hereby move for an order (1)

8  preliminarily approving the proposed settlement of this action; (2) preliminarily certifying a class

9  for purposes of implementing the proposed settlement; (3) approving the form and manner of

10  giving notice of the proposed settlement to the settlement class; and (4) scheduling a hearing

11  before the Court to determine whether the proposed settlement, and Plaintiffs' Counsel's

12  application for an award of attorneys' fees and reimbursement of litigation costs and expenses

13  should be granted final approval.

14    The grounds for this motion are that the proposed settlement is within the range of what

15  could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated

16  to members of the proposed settlement class and a hearing for final approval of the proposed

17  settlement scheduled.

18    This motion is supported by the following memorandum of points and authorities in

19  support thereof, the Declaration of Julie J. Bai with the attached Stipulation and Agreement of

20  Settlement dated June 9, 2009 and exhibits thereto which embody the terms of the proposed

21  settlement between the parties, the previous filings and orders in this case, and such other and

22  further representations as may be made by Counsel at any hearing on this matter.

23

**STATEMENT OF ISSUES TO BE DECIDED**

24    1.    Whether the proposed $72 million settlement of this action is within the range of

25  fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the

26  dissemination of notice of its terms to members of the proposed settlement class.

27

28

2.     Whether a settlement class should be preliminarily certified for purposes of settlement, the Lead Plaintiffs appointed as the representatives for the settlement class, and Co-Lead Counsel appointed as class counsel for the settlement class.

3.     Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the members of the settlement class should be approved.

4.     Whether the Court should set a date for a hearing for final approval of the proposed settlement and the application of Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Lead Plaintiffs, Police and Fire Retirement System of the City of Detroit, Monte Paschi Asset Management S.G.R. S.p.A., and Puerto Rico Government Employees Retirement System (collectively, "Lead Plaintiffs"), respectfully submit this memorandum of law in support of their motion for preliminary approval of a proposed $72 million class action settlement with all Defendants.[1]   By this motion, and pursuant to the terms of the Stipulation and Agreement of Settlement dated June 9, 2009 (the "Stipulation") and its exhibits,[2] the Lead Plaintiffs seek: (1) preliminary approval of the proposed settlement; (2) preliminary certification of a settlement class for purposes of settlement; (3) approval of the form and manner of notice of the proposed settlement to be mailed to the Class (referred to herein as the "Notice");[3] (4) approval of the form and manner of notice of the proposed settlement to be published (referred to herein as the "Summary Notice");[4] (5) approval of the Proof of Claim and Release;[5] (6) entry of the Preliminary Approval Order in the form attached to the Stipulation as Exhibit A,[6] and (7) setting of a date for

---

[1] Defendants are: Marvell Technology Group Ltd. ("Marvell" or the "Company"), Sehat Sutardja, Weili Dai and George Hervey.   Sutardja, Dai and Hervey are referred to collectively as the "Individual Defendants."

[2] *See* Declaration of Julie J. Bai in Support of Lead Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Bai Dec."), Exhibit ("Ex.") 1.

[3] *See* Bai Dec., Ex. 1 at Ex. A(1).

[4] *See* Bai Dec., Ex. 1 at Ex. A(3).

[5] *See* Bai Dec., Ex. 1 at Ex. A(2).

[6] *See* Bai Dec., Ex. 1 at Ex. A.

1   the final approval hearing on the proposed settlement and Plaintiffs' Counsel's application for an

2   award of attorneys' fees and reimbursement of litigation costs and expenses.

3          The proposed Settlement is the product of over two years of investigation and hard-fought

4   litigation as well as extensive settlement negotiations, including two formal mediations presided

5   over by a retired federal judge.  As discussed herein, the proposed Settlement is a substantial result

6   for the Class in light of the risks the Lead Plaintiffs faced if the Action continued, including

7   establishing scienter as to each Individual Defendant, loss causation and the full amount of the

8   Class' damages. Based on their evaluation of the facts and governing law, Lead Plaintiffs and Co-

9   Lead Counsel submit that the proposed Settlement falls well within the range of reasonableness.[7]

10  Accordingly, Lead Plaintiffs respectfully move for preliminary approval and submit this

11  Memorandum of Points and Authorities in support of the proposed Settlement.

12  **II.   DESCRIPTION OF THE LITIGATION**

13         **A.   Overview**

14         This case centers around alleged options backdating carried out by Defendants that caused

15  Marvell to make material misrepresentations in its Financial Statements during the Class Period.

16  The Company's filings with the United States Securities and Exchange Commission ("SEC"),

17  including its Forms 10-K and 10-Q, for the period from its Initial Public Offering in June 2000

18  through June 2006, were false and misleading because they omitted material facts related to the

19  Company's backdating of stock options.  ¶ 34.[8]

20         Marvell's alleged undisclosed stock option practices began to come to light on May 22,

21  2006, when Merrill Lynch issued a research analyst report that examined the unusually fortuitous

22  timing of stock option grants by semiconductor equipment companies comprising the Philadelphia

23  Semiconductor Index ("SOX"), including Marvell.  Then, on July 3, 2006, Marvell filed a Form 8-

24  K with the SEC disclosing that the Company had "received a letter of informal inquiry from the

25

26  [7]  According to a report by RiskMetrics Group, the Settlement represents the fourth highest
    settlement, in total dollar amount, in option backdating securities class actions.  *See* RiskMetrics
27  Group's "Securities Class Action Services, Tracking the Options Backdating Class Actions,"
    available at *http://slw.riskmetrics.com/Options_Backdating.pdf*.

28  [8]  All references to "¶__" are to the Consolidated Class Action Complaint (the "Complaint").

[SEC] requesting certain documents related to the Company's stock option grants and practices." The filing also revealed that a grand jury subpoena to the Company had been issued by the office of the U.S. Attorney for the Northern District of California, and announced that a Special Committee was conducting an internal review of the Company's stock option practices.   On August 17, 2006, Marvell announced that it was unlikely to be able to timely file its second-quarter 2007 results with the SEC on Form 10-Q because of the ongoing investigation into the Company's historical stock option practices and accounting matters.   On October 2, 2006, Marvell admitted that the Company's executives had backdated stock options when it announced the preliminary results of the Special Committee's review.   On January 4, 2007, the Company filed a Form 8-K that announced that the Special Committee had determined that, with respect to certain option grants to the Individual Defendants, the exercise prices of the grants were significantly lower than the fair market value of the stock on the measurement date.   On April 24, 2007, Marvell filed a Form 8-K with the SEC and disclosed that the SEC's "informal investigation" into the Company's stock option practices had been upgraded to a "formal investigation."   ¶¶ 81-94.

On July 2, 2007, Marvell restated its consolidated financial statements and related disclosures for fiscal years ended January 28, 2006 and January 29, 2005, "Selected Consolidated Financial Data" for fiscal years 2006, 2005, 2004, and 2003, and "Management's Discussion and Analysis of Financial Condition and Results of Operation" for fiscal years 2006 and 2005.

**B.     Litigation History**

Beginning on October 5, 2006, four putative securities class actions were filed in this Court against Marvell and certain of its officers and directors.   By Stipulation and Order dated February 7, 2007, the Court consolidated these four cases under the caption *In re Marvell Technology Group Ltd. Securities Litigation*, Master File No. C-06-06286 RMW.   By the same Order, the Court appointed the Lead Plaintiffs to prosecute the Action on behalf of the Class, and appointed Lead Plaintiffs' choice of counsel, Barroway Topaz Kessler Meltzer & Check, LLP (formerly, Schiffrin Barroway Topaz & Kessler, LLP) and Kohn, Swift & Graf, P.C. as lead counsel ("Co-Lead Counsel") and Berman DeValerio (formerly, Berman DeValerio Pease Tabacco Burt & Pucillo) as liaison counsel for the Class.

1    On August 16, 2007, Lead Plaintiffs filed the Complaint, asserting claims under Sections

2    10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and the rules

3    and regulations promulgated thereunder, including Rule 10b-5, against the Defendants.[9]

4    Defendants moved to dismiss the Complaint beginning on October 18, 2007.

5    On November 14, 2007, the parties engaged in the first of two formal mediations with the

6    Hon. Layn R. Phillips (Ret.) in an attempt to resolve the Action.  The parties, however, were too

7    far apart in their respective views to reach an agreement at the November 14, 2007 mediation, and

8    continued litigating the Action.

9    On December 21, 2007, Lead Plaintiffs filed an omnibus memorandum in opposition to

10   Defendants' motions to dismiss, and on January 22, 2008, Defendants filed reply memoranda in

11   further support of their motions.  On February 15, 2008, the Court heard oral argument on

12   Defendants' motions to dismiss.  By Order dated September 29, 2008, the Court granted in part

13   and denied in part the motions to dismiss filed by Marvel, Sutardja, Dai and Hervey and granted

14   the motion to dismiss filed by then-defendant Cioffi.  Specifically, the Court (1) denied the

15   motions of Marvel, Sutardja, Dai and Hervey as to Count I of the Complaint (Section 10(b) of the

16   Exchange Act and Rule 10b-5 thereunder); (2) denied the motions of Sutardja, Dai and Hervey as

17   to Count II of the Complaint (Section 20(a) of the Exchange Act); (3) granted the motions of

18   Sutardja, Dai and Hervey as to Counts III and IV (Section 14(a) of the Exchange Act and Rule

19   14a-9 thereunder); and (4) granted the motion of Cioffi in its entirety.  On January 12, 2009,

20   Defendants answered the Complaint.

21   While discovery was ongoing, the parties agreed to participate in a second formal

22   mediation with Judge Phillips on March 2, 2009.  Although the parties did not reach an agreement

23   at the March 2, 2009 mediation, they continued their negotiations telephonically, ultimately

24   reaching a tentative agreement to settle the Action for a cash payment of $72 million on May 4,

25   2009.

26

27

28   [9] John M. Cioffi ("Cioffi") was also named as a defendant in the Complaint, but was subsequently
     dismissed from the Action pursuant to this Court's September 29, 2008 Order.

1   Based upon their investigation and discovery, Co-Lead Counsel have recommended and

2   Lead Plaintiffs have concluded that the terms and conditions of the Settlement are fair, reasonable,

3   adequate, and in the best interests of, Lead Plaintiffs and the Class. Furthermore, as discussed

4   below, after considering (1) the benefits that Class members will receive from the Settlement; (2)

5   the attendant risks of further litigation; and (3) the desirability of permitting the Settlement to be

6   consummated as provided by the terms of the Stipulation, Co-Lead Counsel and Lead Plaintiffs

7   agreed to settle the Action as set forth in the Stipulation.

8   **III.   PRELIMINARY SETTLEMENT APPROVAL**

9       **A.   The Standards for Preliminary Approval of a Class Action Settlement**

10   The Ninth Circuit has declared that a strong judicial policy favors settlement of class

11   actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "there is an

12   overriding public interest in settling and quieting litigation," and this is "particularly true in class

13   action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility*

14   *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

15   The approval of a class action settlement is a matter within the sound discretion of the

16   district court. *See Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice v. Civil Serv. Comm'n*,

17   688 F.2d 615, 625 (9th Cir. 1982). This discretion should be exercised in the context of the public

18   policy strongly favoring the pretrial settlement of class action lawsuits. *Class Plaintiffs*, 955 F.2d

19   at 1276; *Officers for Justice*, 688 F.2d at 625. The district court's "decision to approve or reject a

20   settlement is committed to the sound discretion of the trial judge because he is exposed to the

21   litigants, and their strategies, positions, and proof." *In re: Mego Financial Corp. Sec. Litig.*, 213

22   F.3d 454, 458 (9th Cir. 2000) (quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir.

23   1998)).

24   Recognizing that a settlement represents an exercise of judgment by the negotiating

25   parties, *Torrisi v. Tuscon Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon*, 150 F.3d at

26   1026, the Ninth Circuit has directed that:

27       [T]he court's intrusion upon what is otherwise a private consensual agreement

28       negotiated between the parties to a lawsuit must be limited to the extent necessary to

1  reach a reasoned judgment that the agreement is not the product of fraud or

2  overreaching by, or collusion between, the negotiating parties, and that the settlement,

3  taken as a whole, is fair, reasonable and adequate to all concerned.

4  *Officers for Justice*, 688 F.2d at 625.

5  In the context of the preliminary approval of a settlement, the sole issue before the Court

6  is whether the settlement is within the range of what could be found to be fair, adequate, and

7  reasonable, so that notice may be given to the proposed class and a hearing for final approval can

8  be scheduled.  *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist.

9  LEXIS 42074, at *29 (E.D. Cal. June 13, 2006).  As stated by the Court in *Young v. Polo Retail,*

10  *LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006),

11  the Court should grant preliminary approval:

12  [i]f the proposed settlement appears to be the product of serious, informed, non-

13  collusive negotiations, has no obvious deficiencies, does not improperly grant

14  preferential treatment to class representatives or segments of the class, and falls

15  within the range of possible approval, then the court should direct that the notice

16  be given to the class members of a formal fairness hearing.

17  (citing MANUAL FOR COMPLEX LITIGATION, Second § 30.44 (1985)); *see also West*, 2006 U.S.

18  Dist. LEXIS 42074, at *34.  In assessing a settlement proposal for its fairness, adequacy, and

19  reasonableness, the Court is required to balance a number of facts:

20  (1)      the strength of the plaintiffs' case;

21  (2)      the risk, expense, complexity, and likely duration of further litigation;

22  (3)      the risk of maintaining class action status throughout the trial;

23  (4)      the amount offered in settlement;

24  (5)      the extent of discovery completed and the stage of the proceedings;

25  (6)      the experience and views of counsel;

26  (7)      the presence of a governmental participant; and

27  (8)      the reaction of the class members to the proposed settlement.

28  *Hanlon*, 150 F.3d at 1026; *In re: Mego*, 213 F.3d at 458; *Yeagley v. Wells Fargo & Co.*, No. C 05-

1   03403, 2008 U.S. Dist. LEXIS 5040, at *7-8 (N.D. Cal. Jan. 18, 2008).[10] Given that some of these

2   factors cannot be fully assessed until the court conducts the fairness hearing, "a full fairness

3   analysis is unnecessary at this [preliminary approval] stage..." *West*, 2006 U.S. Dist. LEXIS

4   42074, at *29. Instead, at this preliminary approval stage, the Court need only "determine whether

5   the proposed settlement is within the range of possible approval." *Alberto v. GMRI, Inc.*, No. CIV.

6   07-1895 WBS DAD, 2008 U.S. Dist. LEXIS 50418, at *31 (E.D. Cal. June 23, 2008). Further, the

7   Court needs only to consider "whether the proposed settlement discloses grounds to doubt its

8   fairness or other obvious deficiencies such as unduly preferential treatment of class representatives

9   or segments of the class, or excessive compensation of attorneys…." *West*, 2006 U.S. Dist. LEXIS

10  42074, at *34. As demonstrated herein, the settlement satisfies the criteria for preliminary

11  approval.

12      **B.    The Settlement Should Be Preliminarily Approved Because the Proposed
13   Settlement Falls Within the Range of What Could Be Found To Be Fair, Reasonable and Adequate**

14           **1.    The Strength of Plaintiffs' Case and the Risk, Expense,
15   Complexity and Likely Duration of Further Litigation**

16  Here, experienced counsel for Lead Plaintiffs and Defendants, after vigorous litigation and

17  arm's-length settlement negotiations using the services of an experienced retired federal judge as

18  mediator, have concluded that the proposed Settlement is in the best interests of their respective

19  clients.

20  The proposed Settlement provides a $72 million cash payment to the Class. *See* Bai Dec.,

21  Ex. 1 at ¶ 4. Lead Plaintiffs believed and still believe that they have a good case, but are,

22  nonetheless, fully cognizant of the fact that translating their belief into a judgment in excess of $72

23  million was far from certain.

24  The Defendants have denied and continue to deny that they violated the securities laws or

25  caused damage to Marvell's stockholders. Defendants claim that they did not act with the requisite

26  scienter to be found to have committed securities fraud. Defendants further assert that loss

27  _____

28  [10] Co-Lead Counsel have provided the Court with a brief description of each of the foregoing factors herein. A full description of each of these factors will be provided in Co-Lead Counsel's briefing submitted in support of final approval of the Settlement.

1  causation is lacking for all of the allegedly corrective disclosures.  Lead Plaintiffs recognize that
2  given the sharp dispute between the parties on these issues, a court or jury might find that
3  Defendants had not violated the federal securities laws or, if it was found that they did, that the
4  disclosure of the false and misleading statements did not cause Marvell's stock price to decline.
5  Defendants will also contest the amount of any damages allegedly caused by the alleged
6  misstatements and omissions.  Taking all of these factors into account, the $72 million is an
7  excellent recovery.

### 2.    The Amount Offered in Settlement

9  Under the proposed Settlement, a $72 million settlement fund will be created.  *See* Bai
10  Dec., Ex. 1 at ¶¶ 4-5.  As discussed above, the risk and uncertainty of further litigation as well as
11  the possibility that, even if Lead Plaintiffs prevailed at trial, they may not be able to obtain a
12  judgment for the Class in an amount greater than, if even an amount equal to, the proposed
13  Settlement.  Given the issues faced with respect to proving liability and damages if this Action
14  were to proceed, Lead Plaintiffs and Co-Lead Counsel have concluded that the $72 million
15  settlement fund is a reasonable and fair amount under the circumstances and represents a
16  substantial recovery for the Class.

### 3.    The Risk of Maintaining Class Action Status

18  As discussed *infra,* Lead Plaintiffs believe that this Action meets all of the requirements
19  for class certification and that the Court should certify a class for settlement purposes.  This is a
20  neutral factor in the preliminary approval analysis.

### 4.    The Extent of Discovery Completed and the Stage of the Proceedings

23  Lead Plaintiffs, through Co-Lead Counsel, have conducted a thorough investigation into
24  the facts and circumstances relevant to the claims alleged in the Complaint.  Co-Lead Counsel's
25  investigation has included, *inter alia*: (1) review of filings made by Marvell with the SEC; (2)
26  review of press releases, public statements, news articles, securities analysts' reports and other
27  publications disseminated by or concerning Marvell; (3) interviews with former Marvell
28  employees; (4) review of publicly available information regarding the investigations by the SEC

and the DOJ of Marvell's stock option grants and practices; (5) review of documents filed in certain legal proceedings regarding Marvell's stock option grants and practices;[11] and (6) review of other publicly available information about Marvell.  Co-Lead Counsel have also reviewed and analyzed approximately 20,000 pages of documents previously produced by Defendants to the SEC and DOJ in connection with their investigations, and have consulted with market and damage experts.

Therefore, though all discovery was not yet complete, Co-Lead Counsel have had an opportunity to thoroughly examine the issues raised in the Complaint and to examine the relative strengths and weaknesses of Lead Plaintiffs' claims.

### 5. The Settlement Resulted From Arm's-Length Negotiations and Is Not the Product of Collusion

The proposed Settlement is the product of extensive, arm's-length negotiations, including two formal mediation sessions with the assistance of an experienced mediator.[12]  The negotiations were informed by the knowledge Co-Lead Counsel gained by reviewing documents produced by Marvell, Marvell's SEC filings, some of which set forth a summary of the Special Committee's findings regarding options backdating at Marvell, and from consultation with damage experts. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation.  In addition, all of the Lead Plaintiffs were informed of the settlement negotiation process and one of the Lead Plaintiffs participated in-person at the mediation.  The negotiations were at all times hard-fought and at arm's-length, and have produced a result that the settling parties believe to be in their respective best interests.

Co-Lead Counsel have a great deal of experience in the prosecution and resolution of complex class action securities litigation.  They have carefully evaluated the merits of the case and

---

[11] A derivative action, *In re: Marvel Technology Ltd. Derivative Litigation*, Case No. 5:06-cv-03894-RMW, was filed on June 22, 2006.  A settlement of the derivative action has been preliminarily approved by the Court.

[12] The assistance of a mediator has been considered a factor supporting the fairness of a settlement. *E.g., Glass v. Fin. Servs. Inc.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007).

1  the proposed Settlement.  In light of Defendants' defenses, there are substantial liability and

2  damages issues that would have to be litigated.  Co-Lead Counsel believe that there was sufficient

3  evidence to proceed to the jury on the claims, but cannot ignore that proving all the elements of the

4  securities fraud claim with respect to stock option backdating issues, and the magnitude of the

5  damages caused by the alleged misrepresentations and omissions, present many risks.

6         In light of the above considerations, the proposed Settlement is reasonable and within the

7  range of possible approval.   Lead Plaintiffs respectfully ask the Court to grant preliminary

8  approval of the Settlement and direct that notice of its terms be given to the Class.

9  **IV.    CERTIFICATION OF THE CLASS UNDER FED. R. CIV. P. 23 IS**
10         **APPROPRIATE**

11         Where the "parties reach a settlement agreement prior to class certification, courts must

12  peruse the proposed compromise to ratify both (1) the propriety of the certification and (2) the

13  fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  For purposes

14  of settlement, Lead Plaintiffs seek certification of a settlement class of all persons who purchased

15  or acquired Marvell securities between February 27, 2003 and October 2, 2006, inclusive, and who

16  suffered damages thereby (the "Class").   Excluded from the Class are (1) the Defendants; (2)

17  members of the immediate family of each Individual Defendant; (3) any person who was an officer

18  or director of Marvell during the Class Period; (4) any firm, trust, corporation, or other entity in

19  which any Defendant has a controlling interest; and (5) the legal representatives, agents, affiliates,

20  heirs, successors-in-interest or assigns of any such excluded party.   The parties agree that

21  certification of a class, for purposes of settlement, is appropriate.  *See* Bai Dec., Ex. 1 at ¶ 6.  If,

22  however, the Settlement does not become effective, then Defendants retain all rights to contest

23  certification of a litigation class.  *Id.*

24         In order for a settlement class to be certified, the requirements of Rule 23 must generally

25  be satisfied.  *Hanlon*, 150 F.3d at 1019 (citing *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 613

26  (1997)).  Trial manageability, however, is not a factor to consider when deciding whether to certify

27  a settlement class, because the idea is that there will not be a trial.  *Amchem*, 521 U.S. at 620.

28

1   Fed. R. Civ. P. 23(a) (1) – (4) provides four prerequisites that must be satisfied before a

2   class can be certified: (1) the class must be so numerous that joinder of all members is

3   impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims of the

4   representative parties are typical of the claims of the class, (4) the representative parties will fairly

5   and adequately protect the interests of the class.  In addition, common questions of law or fact

6   must predominate over questions that affect only individual members of the class, and a class

7   action must be found to be superior to other available methods of adjudication.  Fed. R. Civ. P.

8   23(b)(3).

9       A.       **The Requirements of Rule 23(a) Are Satisfied**

10          1.       **The Proposed Class Is So Numerous that Joinder of All Class**
                       **Members Would Be Impracticable**

11

12   Rule 23(a)(1) requires that the class be "so numerous that joinder of all [class] members is

13   impracticable," not impossible.  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed where the

14   plaintiff class contains forty or more members.  *See In re Cooper Co. Inc. Sec. Litig.*, No. 06-

15   00169, 2009 U.S. Dist. LEXIS 3244, at *11 (C.D. Cal. Jan. 6, 2009); *Perez-Funez v. District*

16   *Director, Immigration & Naturalization Service*, 611 F. Supp. 990, 995 (C.D. Cal. 1994).

17   Additionally, the exact size of the class need not be known when the plaintiff's allegations "plainly

18   suffice" to meet the numerosity requirement.  *See Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D.

19   Cal. 1985).  In securities fraud cases such as this in which "several million" shares of stock were

20   purchased during the class period, courts routinely find that the class is sufficiently numerous.  *See*,

21   *e.g.*, *Cooper*, 2009 U.S. Dist. LEXIS 3244, at *11.

22   Marvell's common stock was publicly traded on the NASDAQ, with approximately 600

23   million shares of common stock outstanding, and an average trading volume of over 10 million

24   shares per day during the Class Period.[13]  Given this information, Lead Plaintiffs believe that the

25   Class consists of thousands of members, at a minimum, who are geographically located throughout

26   the United States, making joinder of all Class Members impractical.  *See In re THQ Inc. Sec.*

27   [13]  *See* Historical Prices for Marvell Technology Group Ltd. obtained from
     *http://finance.yahoo.com*, and Form 10-Ks for Marvell Technology Group Ltd. for fiscal years

28   ended 2003-2006.

1  *Litig.*, Case No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *10 (C.D. Cal. Mar. 22,

2  2002); *In re DJ Orthopedics, Inc.*, Case No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534,

3  at *8 (S.D. Cal. Nov. 16, 2003). Therefore, the proposed Class easily satisfies the numerosity

4  requirement of Rule 23 (a)(1).

5
6  **2.    Common Questions of Law and Fact Exist With Respect To the Plaintiffs' and the Class Members' Claims**

7         Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P.

8  23(a)(2).  Rule 23(a)(2) has been construed permissively.  *Hanlon*, 150 F.3d at 1019.  All questions

9  of fact and law need not be common to satisfy the rule.  *Id.*  In general, a few factual variations

10  among the class grievances will not defeat commonality so long as class members' claims arise

11  from "shared legal issues" or "a common core of salient facts."  *Staton*, 327 F.3d at 953; *Cooper*,

12  2009 U.S. Dist. LEXIS 3244, at *12.  Indeed, just one common question of law or fact is sufficient

13  to establish commonality.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987)

14  ("Plaintiffs' burden of meeting the requirement of Rule 23(a)(2) is fulfilled by showing a single

15  issue common to all members of that class.").

16         Moreover, the Ninth Circuit has held that common questions of law and fact are present in

17  securities fraud cases where a common course of conduct is alleged:

18         The overwhelming weight of authority holds that repeated misrepresentations of

19         the sort alleged here satisfy the 'common question' requirement.  Confronted with

20         a class of purchasers allegedly defrauded over a period of time by similar

21         misrepresentations, courts have taken the common sense approach that the class is

22         united by a common interest in determining whether a defendant's course of

23         conduct is in its broad outlines actionable, which is not defeated by slight

24         differences in class members' positions….

25  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (citations omitted).

26         Lead Plaintiffs allege that they and the Class purchased Marvell securities at artificially

27  inflated prices during the period when Defendants were allegedly disseminating false and

28

**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**       13       **CASE NO.: C-06-06286 RMW**

misleading statements.  ¶¶ 46, 230, 275.  Therefore, numerous issues of law and fact are common to all Class members, including, but not limited to, the following:

(a)     Whether the federal securities laws were violated by Defendants' alleged misstatements and omissions as alleged in the Complaint;

(b)     Whether documents that Marvell filed with the SEC, press releases and other public statements made by Defendants during the Class Period contained misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(c)     Whether Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts in SEC filings, press releases and other public statements;

(d)     Whether the market price of Marvell's securities during the Class Period was artificially inflated due to the material misrepresentations and omissions complained of in the Complaint; and

(e)     Whether the Class members have sustained damages and, if so, the appropriate measure thereof.  Compl. ¶ 48.

These common questions form the core of a securities fraud case.  *See Cooper*, 2009 U.S. Dist. LEXIS 3244, at *15.  Furthermore, if individual Class members chose to bring their claims individually, they would still have to prove these very same elements.   The presence of these common questions is sufficient evidence of "commonality," and the requirement of Rule 23 (a) (2) is met.

### 3.     The Claims of the Proposed Class Representatives are Typical of the Claims of the Proposed Class

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class."  The Ninth Circuit does not require the named plaintiffs' injuries to be "identical with those of the other class members, [but] only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct."  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th

1  Cir. 2001); *Hanlon*, 150 F.3d at 1020; *Cooper*, 2009 U.S. Dist. LEXIS 3244, at *16.  As one court

2  in this District explained:

> 3   Typicality refers to the nature of the claim or defense of the class representative,
>
> 4   and not to the specific facts from which it arose or the relief sought.  Accordingly,
>
> 5   differences in the amount of damage, the size or manner of [stock] purchase, the
>
> 6   nature of the purchaser, and even the specific document influencing the purchase
>
> 7   will not render a claim atypical in most securities cases.

8  *Weinberger v. Jackson*, 102 F.R.D. 839, 844 (N.D. Cal. 1984) (quoting 5 Herbert B. Newberg &

9  Alba Conte, NEWBERG ON CLASS ACTIONS, §8816, at 850 (1977)).

10   Accordingly, differences in the amount of damages, the size or manner of purchase, the

11  nature of the purchaser, and the date of purchase are insufficient to defeat class certification.  *Id.*

12  ("As the typicality requirement should be loosely construed…it is no barrier that plaintiff may

13  have purchased…stock pursuant to the initial offering yet he seeks to represent purchasers in the

14  aftermarket.").  In other words, typicality exists "even where factual distinctions exist between the

15  claims of the named representative and the other class members."  *Danis v. USN Communs., Inc*.,

16  189 F.R.D. 391, 395 (N.D. Ill. 1999).

17   Here, Lead Plaintiffs' claims are typical of those of other Class members.  In this Court's

18  Stipulation and Order Consolidating Related Actions, Appointing Lead Plaintiffs and Approving

19  Selection of Co-Lead Counsel, this Court found that Lead Plaintiffs satisfy the requirements of

20  Rule 23.  *See* Dkt. No. 114, at ¶ 9.  Furthermore, every issue of law and fact to be determined will

21  be common for Lead Plaintiffs and each Class member.  Lead Plaintiffs stand in the same position

22  as the other Class members, as they—just like every member of the Class—purchased Marvell

23  securities during the Class Period at allegedly artificially inflated prices as a result of Defendants'

24  violation of the securities laws.  Similarly, all Class members, like Lead Plaintiffs, were allegedly

25  damaged when Defendants' material misrepresentations and omissions were disclosed and the

26  value of the shares dropped.  The elements of the claims will thus succeed or fail on the same

27  evidence and legal theories.  Accordingly, there is sufficient evidence that the element of typicality

28  under Rule 23(a)(3) is satisfied.

1

### 4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

2

3       Rule 23(a)(4) permits certification of a class action only if "the representative parties will

4 fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy

5 requirement depends on: (1) whether the class representatives and their counsel have any conflicts

6 of interest with other class members; and (2) whether the class representatives and their counsel

7 will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957; *Cooper*, 2009

8 U.S. Dist. LEXIS 3244, at *19. One court in this Circuit has observed:

9       [t]here is considerable overlap between the typicality prerequisite of Rule 23(a)(3)

10       and the adequate representation requirement of Rule 23(a)(4). Although a court

11       may consider potential conflicts of interest, the Ninth Circuit has observed that

12       courts generally decline to consider conflicts at the outset, unless the conflict is

13       apparent and at the very heart of the suit.

14 *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985); *Cooper*, 2009 U.S. Dist. LEXIS

15 3244, at *19.

16       The Court previously concluded in appointing Lead Plaintiffs that they "satisfy the

17 requirements of Rule 23." Docket No. 114, at p. 5. Nothing has diminished their adequacy since

18 that time. In fact, Lead Plaintiffs have proved their adequacy since being appointed Lead

19 Plaintiffs, through their ability and willingness to vigorously litigate their claims against

20 Defendants on behalf of all Class members.

21       Furthermore, there are no disabling conflicts. Lead Plaintiffs contend that Defendants

22 made multiple false and misleading statements, followed by partial "corrective" disclosures.

23 ¶¶ 92, 144. Lead Plaintiffs purchased Marvell securities during the Class Period and held or sold

24 their Marvell securities after corrective information began to reach the market. The issues of

25 whether each statement was fraudulent and caused damages are common issues for Lead Plaintiffs

26 and the Class members.

27       As to the second factor, in appointing the law firms of Barroway Topaz Kessler Meltzer &

28 Check, LLP and Kohn, Swift & Graf, P.C. as Co-Lead Counsel in this Action, this Court found

1   that they had the "requisite experience and expertise to lead this litigation on behalf of the putative

2   class." *See* Lead Plaintiff Order, Dkt. No. 114, at ¶10.

3       Subsequently, Co-Lead Counsel prepared a detailed amended Complaint, responded to

4   multiple motions to dismiss the Complaint filed by Defendants, reviewed thousands of pages of

5   documents, engaged in discovery, retained and worked with damage and loss causation experts,

6   participated in two formal mediations, and negotiated the extensive settlement papers.[14]

7       Accordingly, Co-Lead Counsel have—and will continue to—provide fair and adequate

8   representation for the Class, satisfying Rule 23(a)(4).

9       **B.      The Requirements of Rule 23(b)(3) Are Satisfied**

10      A class should be certified under Rule 23(b)(3) if the Court finds that the questions of law

11  or fact common to the members of the class predominate over any questions affecting only

12  individual members, and that a class action is superior to other available methods for the fair and

13  efficient adjudication of the controversy.  These requirements are met here.

14      When a complaint alleges a "common course of conduct" of misrepresentations,

15  omissions and other wrongdoing that affect all members of the class in the same manner, common

16  questions predominate.  *Blackie*, 524 F.2d at 902; *In re Computer Memories Sec. Litig.*, 111 F.R.D.

17  675, 684 (N.D. Cal. 1986).  In determining whether common questions predominate, the Court's

18  inquiry should be directed primarily toward the issue of liability.  *See Blackie*, 524 F.2d at 902; *In*

19  *re Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973).

20      Further, as discussed above, questions of law and fact common to the Class that Lead

21  Plaintiffs seek to certify will establish Defendants' liability for securities law violations at one time

22  for all Class members using common proof.  These questions clearly predominate over individual

23  questions.  Lead Plaintiffs will offer common proof and theories of liability for the entire Class

24  regarding whether the statements at issue (1) contained material misstatements and/or omissions,

25  (2) occurred in connection with the purchase or sale of securities, (3) were made with scienter,

26  which (4) caused Class members (5) harm.  For each of these elements, Lead Plaintiffs' evidence

27

28  ---
[14]  Co-Lead Counsel have been ably assisted in their efforts by Court-appoint Liaison Counsel
Berman DeValerio and additional plaintiffs' counsel Nix Patterson & Roach, LLP.

1    will be uniform.  On the basis of common proof, as go Lead Plaintiffs' claims, so go the claims of

2    the Class.

3           Further, there are no issues of individual reliance present in this case.  Lead Plaintiffs' and

4    the Class' claims arising under §10(b) of the Exchange Act require no proof of individual reliance

5    because, as the Complaint specifically pled, such claims are entitled to a class-wide presumption of

6    reliance under the fraud-on-the-market doctrine.  *Basic v. Levinson*, 486 U.S. 224, 246 (1988).  ¶¶

7    274-75.  District courts in the Ninth Circuit have held that when plaintiffs plead a fraud-on-the-

8    market theory, questions of whether misleading conduct occurred, and whether that conduct

9    occurred with fraudulent intent, predominate over other questions.  *See, e.g., Cooper*, 2009 U.S.

10   Dist. LEXIS 3244, at *30-31; *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399 (D. Or.

11   1996); *Unioil,* 107 F.R.D. at 619, 622.

12          Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other

13   available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

14   It is here.  *See, e.g., DJ Orthopedics*, 2003 U.S. Dist. LEXIS 21534, at *29 ("[A] class action is

15   clearly the preferred mechanism for adjudicating these [securities fraud] cases."); *In re Alco Int'l*

16   *Group Sec. Litig.*, 158 F.R.D. 152, 155 (S.D. Cal. 1994) ("Class treatment has proven to be the

17   most effective and efficient way of bringing security fraud actions.").  Consideration of the

18   "superiority" factors enumerated in Rule 23(b)(3) weigh in favor of a finding of superiority.[15]

19          First this Court previously determined that the Marvell securities actions should be

20   consolidated, Dkt. No. 114, ¶¶1-5, and it appointed Lead Plaintiffs and Co-Lead Counsel pursuant

21   to the PSLRA.  Second, there is no indication that any absent Class member would prefer to

22   individually control the prosecution of separate actions.  The case has been pending since 2006,

23   and no individual claim has been asserted.  Third, the Court's determination that it is both desirable

24   and appropriate to concentrate this action in this Court satisfies the third factor.  Finally, given the

25   numerosity of Class members and the small size of many individual Class members' claims, a

---

26   [15] Those factors are: (1) the interest of members of the class in individually controlling the
27   prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning
     the controversy already commenced by or against members of the class; (3) the desirability or
     undesirability of concentrating the litigation of the claims in the particular forum; and (4) the
28   difficulties likely to be encountered in the management of a class action.  FED. R. CIV. P. 23 (b)(3).

1   class action is superior.  *See DJ Orthopedics*, 2003 U.S. Dist. LEXIS 21534, at *29 ("[L]itigation

2   costs might dwarf potential recovery for many class members, thereby placing a significant burden

3   on plaintiffs.").[16]

4        For the foregoing reasons, this case is appropriate for certification as a class action under

5   Rule 23.  Accordingly, Lead Plaintiffs – the proposed Class Representatives - respectfully request

6   that the Court:  (1) certify this Action as a class action pursuant to Federal Rule of Civil Procedure

7   23(a) and 23(b)(3) for settlement purposes only; (2) certify Lead Plaintiffs as representatives of the

8   Class; and (3) appoint Co-Lead Counsel as Class Counsel.

9   **V.    THE PROPOSED CLASS NOTICE**

10       Notice of a proposed settlement to the class must be given in the most practicable manner

11   under the circumstances, describing "the terms of the settlement in sufficient detail to alert those

12   with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson*

13   *Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980); *see also* Fed. R. Civ. P. 23(c)(2)(B)

14   (requiring "the best notice practicable under the circumstances, including individual notice to all

15   members who can be identified through reasonable effort").   The Notice, attached to the

16   Stipulation as Exhibit A(1), fully complies with the requirements of Rule 23 and the Private

17   Securities Litigation Reform Act of 1995 ("PSLRA").   15 U.S.C.§78u-4(a)(7).[17]   The Notice

18   describes the terms of the proposed Settlement, the attorneys' fees and expenses sought, the plan of

19   allocation, and the Class members' rights to participate in the Settlement, seek exclusion from the

20

21   _____

[16] As stated above, manageability is not a factor in deciding whether to certify a settlement class.

22   [17] Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i)

23   the amount of the settlement proposed to be distributed to the parties to the action, determined in
the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average

24   amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement
from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement

25   indicating which parties or counsel intend to make an application for an award of attorneys' fees
and costs (including the amount of such fees and costs determined on an average per share basis),

26   and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and
address of one or more representatives of counsel for the plaintiff class who will be reasonably

27   available to answer questions concerning any matter contained in the notice of settlement
published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why

28   the parties are proposing the settlement; and (vi) such other information as may be required by the
Court.  *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F).

1    Class or to object to the proposed Settlement, the plan of allocation, or the attorneys' fees and

2    expense request. *See* Bai Dec., Ex. 1 at Ex. A(1).

3        As detailed in the proposed Order Preliminarily Approving Class Action Settlement

4    ("Preliminary Approval Order"), Co-Lead Counsel and the Claims Administrator propose to mail

5    copies of the Notice and the Proof of Claim and Release form by first class mail, postage pre-paid,

6    to all identifiable members of the Class, at their last known address appearing in the transfer

7    records maintained by or on behalf of Marvell. *See* Bai Dec., Ex. 1 at Ex. A. Co-Lead Counsel

8    also intend to mail copies of the Notice to the largest banks and brokerage houses requesting that

9    the Notice be sent to all persons and entities for whom they act as nominee purchasers. *Id.* In

10    addition, Co-Lead Counsel will cause to be published a summary notice (the "Summary Notice")

11    in *The Wall Street Journal* and over the *PR Newswire*. *Id.*

12        The proposed notice program detailed above fulfills the requirements of due process

13    because the proposed Notice alerts and informs those members of the Class who can be identified

14    through reasonable efforts of all of the information set forth above. In addition, the Summary

15    Notice to be published in *The Wall Street Journal* and over the *PR Newswire* provides an

16    abbreviated but informative description of the Action and the proposed Settlement, and also

17    explains how to obtain the more detailed Notice. *See* Bai Dec., Ex. 1 at Ex. A(3). Moreover,

18    courts routinely find that comparable notice programs meet the requirements of due process and

19    Rule 23. *See, e.g.*, *Santos v. Camacho*, Civil Case No. 04-00006, 2007 U.S. Dist. LEXIS 1668, at

20    \*24-25 (D. Guam Jan. 9, 2007) (notice approved where each class member would be mailed a

21    notice and notice would also be published, and where the proposed notice adequately described the

22    facts of the case, the members of the class, the settlement terms, information regarding attorney's

23    fees, information on how class members may object to the settlement, and contact information for

24    class counsel and defense counsel); *In re Sorbates Direct Purchaser Antitrust Litig.*, Nos. C 98-

25    4886MMC et al., 2002 WL 31655191, \*1 (N.D. Cal. Nov. 25, 2002).

26    **VI.**     <u>**PROPOSED SCHEDULE**</u>

27        Attached as Exhibit A to the Stipulation is the proposed Preliminary Approval Order, in

28    which Co-Lead Counsel request the Court to schedule a final settlement hearing (the "Settlement

Fairness Hearing") to determine whether the proposed Settlement should be approved as fair, reasonable and adequate; whether an order approving the Settlement should be entered and the Action dismissed; whether the plan of allocation of the settlement amount should be approved; and whether to award Plaintiffs' Counsel attorneys' fees and to reimburse litigation costs and expenses incurred by Plaintiffs' Counsel. *See* Bai Dec., Ex. 1 at Ex. A.  The settling parties propose that the Settlement Fairness Hearing be held as soon as practicable.

As set forth in the proposed Preliminary Approval Order, the parties propose the following schedule to be established by filling in the referenced blanks in the Preliminary Approval Order:

| Event | Time for Compliance |
| --- | --- |
| Deadline for Mailing of Notice and Proof of Claim and Release form | 20 calendar days after the entry of the Proposed Preliminary Approval Order (the "Notice Date") (Preliminary Approval Order, ¶13) |
| Deadline for Publishing the Summary Notice in *The Wall Street Journal* and over the *PR Newswire* | 10 calendar days after Notice Date (Preliminary Approval Order, ¶15) |
| Deadline for filing Proof of Claim and Release forms | 120 calendar days following the Notice Date (Preliminary Approval Order, ¶19) |
| Deadline for submitting exclusion requests or objections | 14 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order, ¶¶17, 18) |
| Filing of motions and papers in support of the Settlement, Plan of Application by Co-Lead Counsel for an award of attorneys' fees and reimbursement of expenses | 21 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order, ¶24) |
| Filing of all reply briefs in support of the Settlement, Plan of Application by Co-Lead Counsel for an award of attorneys' fees and reimbursement of expenses | 7 calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order, ¶24) |
| Settlement Fairness Hearing | Approximately 95 days after entry of the Proposed Preliminary Approval Order, or later at the Court's convenience (Preliminary Approval Order, ¶9) |

1  *See* Bai Dec., Ex. 1 at Ex. A.

2    The schedule outlined above requires that the Settlement Fairness Hearing will be held not

3  less than 95 days after the entry of the proposed Preliminary Approval Order.  Thus, Co-Lead

4  Counsel request that the Court schedule the Settlement Fairness Hearing for 95 days from entry of

5  the Preliminary Approval Order, or later at the Court's convenience.  If this schedule is not

6  convenient for the Court, the parties request that the Court use at least the same or greater intervals

7  between each event listed in the proposed schedule to provide all parties sufficient time to comply

8  with the proposed Preliminary Approval Order.

9  **VII.**   <u>**CONCLUSION**</u>

10    Accordingly, based on the Stipulation and exhibits thereto (Bai Dec., Ex.1), this

11  memorandum, and the prior proceedings in this matter, Lead Plaintiffs, with the consent of

12  Defendants, respectfully request that the Court enter the proposed Preliminary Approval Order

13  attached as Exhibit A to the Stipulation, which will grant (i) preliminary approval of the proposed

14  Settlement, (i) certification of the Class for purposes of settlement; (iii) approval of the forms of

15  Notice, Proof of Claim and Release and Summary Notice and the proposed manner for

16  dissemination to the Class, and (iv) a date for the Settlement Fairness Hearing.

17  DATED:  June 12, 2009      Respectfully Submitted,

18

19             /s/ Michael K. Yarnoff

        Michael K. Yarnoff (admitted *Pro Hac Vice*)

20          John A. Kehoe (admitted *Pro Hac Vice*)

        Bharati O. Sharma

21          **BARROWAY TOPAZ KESSLER**

         **MELTZER & CHECK, LLP**

22          280 King of Prussia Road

        Radnor, PA 19087

23          Telephone:  610-667-7706

        Facsimile:  610-667-7506

24          myarnoff@btkmc.com

        jkehoe@btkmc.com

        bsharma@btkmc.com

25

26

27

28

1
Joseph C. Kohn (admitted *Pro Hac Vice*)
Denis F. Sheils (admitted *Pro Hac Vice*)
2
William E. Hoese (admitted *Pro Hac Vice*)
**KOHN, SWIFT & GRAF, P.C.**
3
One South Broad Street, Suite 2100
Philadelphia, PA 19107
4
Telephone:  215-238-1700
Facsimile:  215-238-1968
5
jkohn@kohnswift.com
dsheils@kohnswift.com
6
whoese@kohnswift.com

7
***Co-Lead Counsel for Lead Plaintiffs***

8
Joseph J. Tabacco, Jr. (Bar No. 75484)
Nicole Lavallee (Bar No. 165755)
9
Julie J. Bai (Bar No. 227047)
**BERMAN DeVALERIO**
10
425 California Street, Suite 2100
San Francisco, CA 94104
11
Telephone:  415-433-3200
Facsimile:  415-433-6382
12
jtabacco@bermandevalerio.com
nlavallee@bermandevalerio.com
13
jbai@bermandevalerio.com

14
***Liaison Counsel for Lead Plaintiffs***

15
Jeffrey J. Angelovich (admitted Pro Hac Vice)
Bradley E. Beckworth (admitted Pro Hac Vice)
16
Susan Whatley (admitted Pro Hac Vice)
**NIX PATTERSON & ROACH, LLP**
17
205 Linda Drive
Daingerfield, TX 75638
18
Telephone:  903-645-7333
Facsimile:   903-645-4415
19
bbeckworth@nixlawfirm.com
jangelovich@nixlawfirm.com
20
susanwhatley@nixlawfirm.com

21
***Additional Counsel for Lead Plaintiffs***

22

23
## E-Filing Attestation

24
I, Nicole Lavallee, am the ECF User whose ID and password are being used to file this

25
document.  In compliance with General Order 45 X.B., I hereby attest that Michael K. Yarnoff,

26
whose e-filing signature appears above, has concurred in the filing of this document.

27
                    /s/ Nicole Lavallee
                       Nicole Lavallee

28