1  Michael K. Yarnoff (admitted *Pro Hac Vice*)
   John A. Kehoe (admitted *Pro Hac Vice*)
2  Bharati O. Sharma
   **BARROWAY TOPAZ KESSLER**
3    **MELTZER & CHECK, LLP**
   280 King of Prussia Road
4  Radnor, PA  19087
   Telephone: (610) 667-7706
5  Facsimile:  (610) 667-7056
   myarnoff@btkmc.com
6  jkehoe@btkmc.com
   bsharma@btkmc.com
7
   *Co-Lead Counsel*
8
   Joseph C. Kohn (admitted *Pro Hac Vice*)        Joseph J. Tabacco, Jr. (Bar No. 75484)
9  Denis F. Sheils (admitted *Pro Hac Vice*)       Nicole Lavallee (Bar No. 165755)
   William E. Hoese (admitted *Pro Hac Vice*)      Julie J. Bai (Bar No. 227047)
10 **KOHN, SWIFT & GRAF, P.C.**                     **BERMAN DeVALERIO**
   One South Broad Street, Suite 2100              425 California Street, Suite 2025
11 Philadelphia, PA  19107                         San Francisco, CA  94104
   Telephone: (215) 238-1700                       Telephone: (415) 433-3200
12 Facsimile:  (215) 238-1968                       Facsimile:  (415) 433-6382
   jkohn@kohnswift.com                             jtabacco@bermandevalerio.com
13 dsheils@kohnswift.com                           nlavallee@bermandevalerio.com
   whoese@kohnswift.com                            jbai@bermandevalerio.com
14
   *Co-Lead Counsel*                                *Liaison Counsel*
15 [Additional counsel appear on signature page]

16                 **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
17                         **SAN JOSE DIVISION**

18
                                                   Master File No. C-06-06286 RMW
19 In re Marvell Technology Group Ltd.
   Securities Litigation                           **CLASS ACTION**
20
   _____         **LEAD PLAINTIFFS' NOTICE OF**
21                                                  **MOTION AND MOTION FOR FINAL**
   THIS DOCUMENT RELATES TO:                        **APPROVAL OF PROPOSED CLASS**
22                                                  **ACTION SETTLEMENT AND PLAN**
   All Actions                                      **OF ALLOCATION, AND**
23                                                  **MEMORANDUM OF POINTS AND**
                                                    **AUTHORITIES IN SUPPORT**
24                                                  **THEREOF**

25                                                  DATE:  NOVEMBER 6, 2009
26                                                  TIME:  9:00 A.M.
                                                    PLACE: COURTROOM 6
27                                                  **THE HONORABLE RONALD M. WHYTE**

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND BACKGROUND ........................................................................ 3

II. DESCRIPTION OF THE LITIGATION ..................................................................... 4

    A. Overview ........................................................................................................... 4

    B. Litigation History ............................................................................................ 5

III. SETTLEMENT APPROVAL ...................................................................................... 7

    A. The Standards for Approval of a Class Action Settlement ..................................... 7

    B. The Settlement Should be Approved Because it is Fair, Reasonable, and
       Adequate ........................................................................................................ 8

        1. The Amount Offered in Settlement ........................................................... 8

        2. The Settlement Appropriately Balances the Strength of Plaintiffs'
           Case and the Benefit to the Class of a Certain Recovery Against the
           Risk, Expense, Complexity and Likely Duration of Continued
           Litigation ......................................................................................... 10

           a. Risks In Proving Liability, Causation and Damages ..................... 11

           b. The Expense and Likely Duration of Continued Litigation
              Favors Settlement ....................................................................... 13

        3. The Risk of Maintaining Class Action Status ........................................... 14

        4. The Extent of Discovery Completed and the Stage of the
           Proceedings .................................................................................... 14

        5. The Settlement Resulted From Arm's-Length Negotiations, is Not
           the Product of Collusion, and is Supported by Experienced Counsel ....... 15

        6. Reaction of the Class Supports Approval of the Settlement ..................... 16

        7. Presence of a Governmental Participant ................................................. 16

IV. THE PLAN OF ALLOCATION ................................................................................. 17

    A. The Different Characteristics of Option Contracts .............................................. 20

    B. The Reaction of the Class Supports Approval of the Plan of Allocation .............. 21

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

i

V.      DUE NOTICE OF THE PROPOSED SETTLEMENT HAS BEEN PROVIDED
         TO THE CLASS MEMBERS.............................................................................. 21

VI.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS UNDER FEDERAL
         RULE OF CIVIL PROCEDURE 23 IS APPROPRIATE ................................................. 22

VII.    CONCLUSION ............................................................................................. 23

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

ii

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Amchem Prods. Inc. v. Windsor,*
   521 US. 591, 613 (1997) ............................................................................................. 23

*In re Apple Computer Sec. Litig.,*
   No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) .............. 13

*In re Broadcom Corp. Sec. Litig.,*
   Case No. SACV 01-275 DT................................................................................................ 17

*Class Plaintiffs v. Seattle,*
   955 F.2d 1268 (9th Cir. 1992)........................................................................................ 7, 17

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) .......................................................................................... 11, 18, 19

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ........................................................................................................ 22

*Glass v. Fin. Servs. Inc.,*
   No. C-06-4068MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................... 15

*Hanlon v. Chrysler Corp,*
   150 F.*3d* 1011 (9th Cir. 1998)..................................................................................... 7, 8, 23

*Holmes v. Cont'l Can Co.,*
   706 F.2d 1144 (11th Cir. 1983)......................................................................................... 19

*Hughes v. Microsoft Corp.,*
   No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ......................... 8

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
   194 F.R.D. 166 (E.D. Pa. 2000)................................................................................... 10-11, 17

*In re Insurance Brokerage Antitrust Litig.,*
   579 F.3d 241 (3d Cir. 2009).............................................................................................. 19

*Kincade v. General Tire & Rubber Co.,*
   635 F.2d 501 (5th Cir. 1981)............................................................................................. 19

*Lewis v. Newman,*
   59 F.R.D. 525 (S.D.N.Y. 1973) ......................................................................................... 10

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF**

**CASE NO.: C-06-06286 RMW**

iii

*Maywalt v. Parker & Parsley Petroleum Co.*,
   No. 92 Civ 1152 (RWS), 1997 U.S. Dist. LEXIS 97 (S.D.N.Y. Jan. 9, 1997)
   *aff'd*, 145 F.3d 513 (2d Cir. 1998) ......................................................................... 21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................... *passim*

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
   Nos. 02 MDL 1484 (JFK), *et al.*, 2007 U.S. Dist. LEXIS 9450
   (S.D.N.Y., Jan. 31, 2007) ................................................................................... 9

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   Master File No. 96-CV-230 BTM (AJB), 1998 U. S. Dist. LEXIS 23217 (S.D. Cal.
   Dec. 21, 1998) ................................................................................................. 12

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ..................................................................... 19-20

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ........................................................................................... 22

*In re NASDAQ Market-Makers Antitrust Litig.*,
   MDL No. 1023, 2000 U.S. Dist. LEXIS 304 (S.D.N.Y. Jan. 18, 2000) ...................... 20, 21

*Nat'l Rural Telecoms. Coop. v. DIRECTV Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 10

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982).................................................................... 7, 8, 9, 13

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................................... 9, 10, 17, 19

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)................................................................................... 8

*Rubenstein v. Republic Nat'l Life Ins. Co.*,
   74 F.R.D. 337 (N.D. Tex. 1976) ........................................................................... 19

*Torrisi v. Tucson Elec. Power*,
   8 F.3d 1370 (9th Cir. 1993)....................................................................... 7, 17, 19

*Utility Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989)................................................................................. 7

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)................................................................................. 7

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                   CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

iv

*In re Warner Commc'ns. Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ............................. 12, 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379 (D. Ariz. 1989), *aff'd,* 955 F.2d 1268,(9th Cir. 1992) ............................. 17

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993) .................................................................................... 20

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985).................................................................................................... 22


STATUTES

15 U.S.C. § 78u-4(e) ................................................................................................................. 22

28 U.S.C. § 1332(d) ................................................................................................................... 22

28 U.S.C. § 1453 ....................................................................................................................... 22

28 U.S.C. §§ 1711-1715............................................................................................................ 22


OTHER AUTHORITIES

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

*Laura E. Simmons & Ellen M. Ryan, Securities Class Action Settlements: 2008 Review
and Analysis*, Cornerstone Research, available at *http://securities.cornerstone.com*............... 9

NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS §11.45 (4th ed. 2002) ................................. 15

*Securities Class Action Services, Tracking the Options Backdating Class Actions*,
RiskMetrics Group, available at *http://slw.riskmetrics.com/Options_Backdating.pdf*
(June 2009)............................................................................................................................... 3

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

v

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on November 6, 2009 at 9:00 a.m., before the Honorable Ronald M. Whyte, Courtroom 6, Robert F. Peckham Courthouse & Federal Building, 280 South First Street, San Jose, California, Lead Plaintiffs Police and Fire Retirement System of the City of Detroit, Monte Paschi Asset Management S.G.R. S.p.A., and Puerto Rico Government Employees Retirement System (collectively "Lead Plaintiffs") will and do hereby move for an order: (1) finally approving the proposed $72 million settlement (the "Settlement") of this action pursuant to Fed. R. Civ. P. 23(e)(2); (2) finally certifying the settlement class ("the "Class"); and (3) approving the proposed plan for allocating the settlement proceeds (the "Plan of Allocation"). The grounds for this motion are that the Settlement and Plan of Allocation are fair, reasonable and adequate, and that the requirements for certifying a settlement class pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3) are met.

This motion is supported by the following memorandum of points and authorities, the Joint Declaration of Michael K. Yarnoff and Denis F. Sheils in Support of Final Approval of Settlement, Plan of Allocation and Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl."), the Stipulation and Agreement of Settlement dated as of June 9, 2009 (the "Stipulation") and exhibits thereto, which embody the terms of the Settlement between the parties, the previous filings and orders in this case, and such other and further evidence or representations as may be presented by Co-Lead Counsel at any hearing on this matter.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

1

1

**STATEMENT OF ISSUES TO BE DECIDED Civil L. R. 7-4(a)(3))**

2      1.      Whether the proposed $72 million Settlement of this action should be finally

3   approved as fair, reasonable, and adequate.

4      2.      Whether the Class should be finally certified for settlement purposes.

5      3.      Whether the Plan of Allocation of the Net Settlement Fund[1] should be approved.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   [1] The Net Settlement Fund is the balance of the Gross Settlement Fund (the $72 million
26   settlement consideration plus interest accrued thereon) less amounts paid for taxes, notice,
     settlement administration costs and attorneys' fees and litigation expenses as awarded by the
27   Court.  *See* Stipulation p. 11 at ¶5.  Unless otherwise noted, capitalized terms used herein shall
     have those meanings contained in the Stipulation previously submitted with the Court.
28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO.: C-06-06286 RMW

2

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.     INTRODUCTION AND BACKGROUND**

3           Lead Plaintiffs respectfully submit this memorandum of law in support of their motion

4    for: (1) final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2); (2) final certification

5    of the Class for settlement purposes; and (3) approval of the Plan of Allocation.

6           The Settlement before the Court is the product of approximately three years of

7    investigation and hard-fought litigation as well as extensive settlement negotiations, including

8    two formal mediations presided over by a retired federal judge.  The Court preliminary approved

9    the Settlement on July 31, 2009 and notice of the Settlement has been disseminated to the

10   members of the Class in accordance with the Court's July 31, 2009 Order Preliminarily

11   Approving Class Action Settlement (the "Preliminary Approval Order").  As discussed herein, the

12   proposed Settlement deserves final approval because it is a fair, reasonable, and adequate result

13   for the Class in light of the risks the Lead Plaintiffs faced if the Action continued, including

14   establishing scienter as to each Individual Defendant, loss causation and the amount of the Class'

15   damages, as well as the Company's limited insurance proceeds.[2]  The Plan of Allocation also

16   deserves approval as it is a fair, reasonable and adequate method for allocating the Net Settlement

17   Fund among eligible Class Members.  Finally, because all the requirements for class certification

18   under Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3) are met, the Court should finally certify the Class for

19   settlement purposes.

20

21

22

23

24

25

---

26   [2] According to a report by RiskMetrics Group, the Settlement represents the fourth highest

27   settlement, in total dollar amount, in option backdating securities class actions.  *See* RiskMetrics
     Group's "Securities Class Action Services, Tracking the Options Backdating Class Actions,"

28   available at *http://slw.riskmetrics.com/Options_Backdating.pdf* (June 2009).

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    **II.    DESCRIPTION OF THE LITIGATION**

2        **A.    <u>Overview</u>**

3        This case centers around alleged options backdating carried out by Defendants[3] that

4    caused Marvell to make material misrepresentations regarding adherence to the Company's stock

5    option plan, compensation expenses, and earnings during the Class Period.  As a result, the

6    Company's filings with the United States Securities and Exchange Commission ("SEC"),

7    including its Forms 10-K and 10-Q, and other public statements, for the period from its Initial

8    Public Offering in June 2000 through June 2006, were false and misleading because they omitted

9    material facts related to the Company's backdating of stock options.  ¶34.[4]

10       Marvell's alleged undisclosed stock option practices began to come to light on May 22,

11   2006, when Merrill Lynch issued a research analyst report that examined the unusually fortuitous

12   timing of stock option grants by semiconductor equipment companies comprising the

13   Philadelphia Semiconductor Index ("SOX"), including Marvell.  Then, on July 3, 2006, Marvell

14   filed a Form 8-K with the SEC disclosing that the Company had "received a letter of informal

15   inquiry from the [SEC] requesting certain documents related to the Company's stock option

16   grants and practices."   The filing also revealed that a grand jury subpoena to the Company had

17   been issued by the office of the U.S. Attorney for the Northern District of California, and

18   announced that a Special Committee was conducting an internal review of the Company's stock

19   option practices.  On August 17, 2006, Marvell announced that it was unlikely to be able to

20   timely file its second-quarter 2007 results with the SEC on Form 10-Q because of the ongoing

21   investigation into the Company's historical stock option practices and accounting matters.  On

22   October 2, 2006, Marvell admitted that the Company's executives had backdated stock options

23   when it announced the preliminary results of the Special Committee's review.  On January 4,

24   2007, the Company filed a Form 8-K that announced that the Special Committee had determined

25   _____

26   [3] Defendants are: Marvell Technology Group Ltd. ("Marvell" or the "Company"), Sehat Sutardja, Weili Dai and George Hervey.  Sutardja, Dai and Hervey are referred to collectively as the

27   "Individual Defendants."

28   [4] All references to "¶__" are to the Consolidated Class Action Complaint (the "Complaint").

1  that, with respect to certain option grants to the Individual Defendants, the exercise prices of the

2  grants were significantly lower than the fair market value of the stock on the measurement date.

3  Thereafter, on April 24, 2007, Marvell filed a Form 8-K with the SEC and disclosed that the

4  SEC's "informal investigation" into the Company's stock option practices had been upgraded to a

5  "formal investigation."  ¶¶81-94.

6       On July 2, 2007, Marvell restated its consolidated financial statements and related

7  disclosures for fiscal years ended January 28, 2006 and January 29, 2005, "Selected Consolidated

8  Financial Data" for fiscal years 2006, 2005, 2004, and 2003, and "Management's Discussion and

9  Analysis of Financial Condition and Results of Operation" for fiscal years 2006 and 2005.  Joint

10  Decl. ¶¶11-14.

11      **B.**    **Litigation History**

12       Beginning on October 5, 2006, four securities class action complaints were filed in this

13  Court against Marvell and certain of its officers and directors.  By Stipulation and Order dated

14  February 7, 2007, the Court consolidated these four cases under the caption *In re Marvell*

15  *Technology Group Ltd. Securities Litigation*, Master File No. C-06-06286 RMW (the "Action").

16  By the same Order, the Court appointed the Lead Plaintiffs to prosecute the Action on behalf of

17  the Class, and appointed Lead Plaintiffs' choice of counsel, Barroway Topaz Kessler Meltzer &

18  Check, LLP (formerly, Schiffrin Barroway Topaz & Kessler, LLP) and Kohn, Swift & Graf, P.C.

19  as lead counsel ("Co-Lead Counsel") and Berman DeValerio (formerly, Berman DeValerio Pease

20  Tabacco Burt & Pucillo) as liaison counsel for the Class.

21       On August 16, 2007, Lead Plaintiffs filed the Complaint, asserting claims under Sections

22  10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and the

23  rules and regulations promulgated thereunder, including Rule 10b-5, against the Defendants.[5]

24  Defendants moved to dismiss the Complaint beginning on October 18, 2007.

25       On November 14, 2007, the parties engaged in the first of two formal mediations with the

27  [5] John M. Cioffi ("Cioffi") was also named as a defendant in the Complaint, but was subsequently dismissed from the Action pursuant to this Court's September 29, 2008 Order.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

5

1   Hon. Layn R. Phillips (Ret.) in an attempt to resolve the Action.  The parties, however, were too

2   far apart in their respective views to reach an agreement at the November 14, 2007 mediation, and

3   continued litigating the Action.

4        On December 21, 2007, Lead Plaintiffs filed an omnibus memorandum in opposition to

5   Defendants' motions to dismiss, and on January 22, 2008, Defendants filed reply memoranda in

6   further support of their motions.  On February 15, 2008, the Court heard oral argument on

7   Defendants' motions to dismiss.  By Order dated September 29, 2008, the Court granted in part

8   and denied in part the motions to dismiss filed by Marvell, Sutardja, Dai and Hervey and granted

9   the motion to dismiss filed by then-defendant Cioffi.  Specifically, the Court (1) denied the

10  motions of Marvell, Sutardja, Dai and Hervey as to Count I of the Complaint (Section 10(b) of

11  the Exchange Act and Rule 10b-5 thereunder); (2) denied the motions of Sutardja, Dai and

12  Hervey as to Count II of the Complaint (Section 20(a) of the Exchange Act); (3) granted the

13  motions of Sutardja, Dai and Hervey as to Counts III and IV of the Complaint (Section 14(a) of

14  the Exchange Act and Rule 14a-9 thereunder); and (4) granted the motion of Cioffi in its entirety.

15  On January 12, 2009, Defendants answered the Complaint.

16       While discovery was ongoing, the parties agreed to participate in a second formal

17  mediation with Judge Phillips on March 2, 2009.  Although the parties did not reach an agreement

18  at the March 2, 2009 mediation, they continued their negotiations telephonically, ultimately

19  reaching an agreement to settle the Action for a cash payment of $72 million on June 9, 2009.

20  The Stipulation was submitted to the Court for preliminary approval on June 12, 2009.  By Order

21  dated July 31, 2009, the Court preliminarily approved the Settlement.  Notice was thereafter

22  disseminated to Class Members per the Court's July 31, 2009 Order.  Joint Decl. ¶¶15-29.

23       Based upon their investigation, knowledge and experience, Co-Lead Counsel believe that

24  the terms and conditions of the Settlement are fair, reasonable, adequate, and in the best interests

25  of Lead Plaintiffs and the Class based upon: (1) the benefits that Class Members will receive from

26  the Settlement; and (2) the attendant risks of further litigation.  Further, Co-Lead Counsel believe

27  that the Plan of Allocation is fair, reasonable, and adequate.

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

1    III.    **SETTLEMENT APPROVAL**

2           A.    <u>The Standards for Approval of a Class Action Settlement</u>

3           The Ninth Circuit has declared that a strong judicial policy favors settlement of class

4    actions.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Indeed, "there is an

5    overriding public interest in settling and quieting litigation," and this is "particularly true in class

6    action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility*

7    *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for*

8    *Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

9           Fed. R. Civ. 23(e)(2) requires the Court to find the proposed Settlement fair, reasonable,

10   and adequate before approving it.  Within Rule 23(e)'s general parameters, the approval of a class

11   action settlement is a matter within the sound discretion of the district court.  *See Class Plaintiffs*,

12   955 F.2d at 1276; *Officers for Justice*, 688 F.2d at 625.  This discretion should be exercised in the

13   context of the public policy strongly favoring the pretrial settlement of class action lawsuits.  *Id.*

14   The district court's "decision to approve or reject a settlement is committed to the sound

15   discretion of the trial judge because he is exposed to the litigants, and their strategies, positions,

16   and proof."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (quoting *Hanlon*

17   *v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

18          Recognizing that a settlement represents an exercise of judgment by the negotiating

19   parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon*, 150 F.3d at

20   1026, the Ninth Circuit has directed that:

21
22          [T]he court's intrusion upon what is otherwise a private consensual agreement
            negotiated between the parties to a lawsuit must be limited to the extent necessary
23          to reach a reasoned judgment that the agreement is not the product of fraud or
            overreaching by, or collusion between, the negotiating parties, and that the
24          settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

25   *Officers for Justice*, 688 F.2d at 625.

26          In assessing a settlement proposal for its fairness, adequacy, and reasonableness, the

27   Court is required to balance a number of factors:

28          (1)    the strength of the plaintiffs' case;

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

(2)    the risk, expense, complexity, and likely duration of further litigation;

(3)    the risk of maintaining class action status throughout the trial;

(4)    the amount offered in settlement;

(5)    the extent of discovery completed and the stage of the proceedings;

(6)    the experience and views of counsel;

(7)    the presence of a governmental participant; and

(8)    the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Mego Fin. Corp.*, 213 F.3d at 458.  When deciding whether a proposed settlement is fair, it "is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis in original).  Further, there is an initial presumption that a proposed settlement is fair and reasonable when it is entered into by experienced counsel knowledgeable about the strengths and weaknesses of the claims after arm's-length negotiations. *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at **20-21 (W.D. Wash. Mar. 26, 2001).  The involvement of a mediator provides additional support for the presumption, and for an ultimate finding that a settlement is fair, reasonable, and adequate.[6] *E.g., Hughes*, 2001 U.S. Dist. LEXIS 5976, at *17; *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As demonstrated herein, the Settlement satisfies the standard for final approval.

**B.    The Settlement Should be Approved Because it is Fair, Reasonable, and Adequate**

Consideration of the factors the Court is to consider when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval demonstrates that the Settlement is fair, reasonable, and adequate.  Joint Decl. ¶¶30-49.

**1.    The Amount Offered in Settlement**

Under the Settlement, a $72 million fund has been created.  This amount must be compared to the risk and uncertainty of further litigation, as well as the possibility that, even if

---

[6] *See* Declaration in Support of Final Approval of Settlement submitted by the Honorable Layn R. Phillips attached to the Joint Declaration as Exhibit 2.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

8

1    Lead Plaintiffs prevailed at trial, they might not be able to obtain a judgment for the Class in an

2    amount greater than, or even equal to, $72 million.  *See Officers for Justice*, 688 F.2d at 624

3    ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving

4    of cost and elimination of risk, the parties each give up something they might have won had they

5    proceeded with litigation ...") (internal citation omitted).

6        Lead Plaintiffs' damages expert has estimated class damages to be in a range of

7    approximately $250 to $850 million, depending on Lead Plaintiffs' ability to establish damages

8    based on certain of the alleged corrective disclosures.  The $72 million recovery equals 29% of

9    $250 million, 8% of $850 million, and 13% of the median.  The recovery for the Class compares

10   favorably to percentage recoveries in other securities class action settlements.[7]  Joint Decl. ¶35.

11       In addition, the Settlement was funded almost entirely by Marvell.  At the time of the

12   parties' first mediation, Defendants had a total of $60 million in insurance and there were

13   significant coverage issues surrounding this insurance.[8]  Prior to the parties' November 2007

14   mediation, certain of Marvell's insurance carriers asserted grounds for rescission of their policies.

15   Subsequently, in connection with the settlement of the related derivative litigation, Marvell and

16   all insured parties resolved their dispute with the Company's insurers, and the settlement of the

17   derivative litigation, which was entered into in March 2008, released all insurance policies

18   implicated in this Action in exchange for a $24.5 million payment from the insurers.  As part of

19   the derivative settlement, up to $5 million of this amount was set aside for use towards a possible

20

21   [7] *See Laura E. Simmons & Ellen M. Ryan, Securities Class Action Settlements: 2008 Review and Analysis,* Cornerstone Research, http://securities.cornerstone.com, at 6 (The median recovery rate of securities cases with estimated damages between $251-500 million is 3.7%, and the median recovery rate of securities cases with estimated damages between $501 million and $1 billion is 1.9%).  *See also In re Omnivision Techs. Inc.,* 559 F. Supp. 2d 1036, 1042 N.D. Cal. 2007) (finding settlement resulting in approximately 9% of the maximum potential recovery to be "higher than the median percentage of investor losses recovered in recent shareholder class action settlements."); *In re Merrill Lynch & Co., Research Reports Sec. Litig.,*  Nos. 02 MDL 1484 (JFK), *et al.*, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y., Jan. 31, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations.").

22

23

24

25

26

27   [8] Defendants' insurance coverage was comprised of eight $5 million layers and an additional four stand-alone Side A policies totaling $20 million.

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1   settlement of this Action.  Ultimately, only $2 million was used to fund the Settlement while the

2   Company funded the remaining $70 million out of its own pockets.  Continued litigation would

3   have definitely depleted the Company's available insurance entirely.  Moreover, the Class' ability

4   to recover more from a company that, in a difficult economic environment, would be forced to

5   fund a settlement or satisfy a judgment in this Action without any assistance from its insurers, in

6   addition to paying the mounting costs to defend this Action from its own pockets, would have

7   become much riskier.  Joint Decl. ¶34.

8        Given the issues Lead Plaintiffs faced with respect to proving liability and damages if this

9   Action were to proceed as well as the Company's limited insurance coverage, $72 million is a

10  reasonable and fair amount under the circumstances and represents a substantial recovery for the

11  Class.

12          2.      **The Settlement Appropriately Balances the Strength of Plaintiffs' Case and the Benefit to the Class of a Certain Recovery Against the Risk, Expense, Complexity and Likely Duration of Continued Litigation**

13

14

15       To determine whether the Settlement is fair, reasonable, and adequate, the Court must

16  balance the continuing risks of litigation against the benefits afforded to Class Members and the

17  immediacy and certainty of a substantial recovery.  *Mego Fin. Corp.*, 213 F.3d at 458;

18  *Omnivision*, 559 F. Supp. 2d at 1046.  In other words,

19       [t]he Court shall consider the vagaries of litigation and compare the significance
         of immediate recovery by way of the compromise to the mere possibility of relief
20       in the future, after protracted and expensive litigation. In this respect, [i]t has been
         held proper to take the bird in hand instead of a prospective flock in the bush.
21

22  *Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

23       In the context of approving class action settlements, courts attempting to balance these

24  factors have recognized that "stockholder litigation is notably difficult and notoriously uncertain."

25  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  After enactment of the Private Securities

26  Litigation Reform Act of 1995 ("PSLRA"), it has become even more difficult for plaintiffs to

27  successfully litigate a securities fraud action.  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194

28  F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                          CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

10

1    plaintiff's perspective in the wake of the PSLRA.").

2               a.    **Risks In Proving Liability, Causation and Damages**

3         At the time the Stipulation was signed, Lead Plaintiffs believed (and still believe) that they

4    have a good case, but are, nonetheless, fully cognizant of the fact that translating their belief into

5    a judgment in excess of $72 million is far from certain.   Nevertheless, while Lead Plaintiffs

6    believe that they could defeat the inevitable summary judgment motions and prevail at trial, there

7    are numerous risks associated with continuing this litigation that, on balance, weigh in favor of

8    approval of the substantial recovery obtained now for the benefit of Class Members.

9         The litigation risks faced by the Class are significant.   Defendants have denied and

10   continue to deny that they violated the securities laws or caused damage to Marvell's

11   stockholders.   Defendants claim that they did not act with the requisite scienter to be found to

12   have committed securities fraud.  Joint Decl. ¶42.  Defendants further assert that loss causation is

13   lacking for all of what Lead Plaintiffs allege were corrective disclosures.   Lead Plaintiffs

14   recognize that given the sharp dispute between the Parties on these issues, a court or jury might

15   find that Defendants had not violated the federal securities laws or, if it were found that they did,

16   that the disclosure of the false and misleading statements did not cause Marvell's stock price to

17   decline.   Defendants also contest the amount of any damages allegedly caused by the alleged

18   misstatements and omissions.   Although Lead Plaintiffs believe that they would be able to

19   establish significant damages, Defendants' arguments on damages presented substantial factual

20   and legal risks to Class Members, not only at the summary judgment stage, but through trial and

21   any subsequent appeals.   Taking all of these factors into account, $72 million is an excellent

22   recovery.  Joint Decl. ¶¶37-43.

23        Lead Plaintiffs faced their biggest obstacle with respect to proving causation and damages

24   if the Action continued.  Throughout the Action, Defendants have contested Lead Plaintiffs' loss

25   causation and damages positions.  The Supreme Court has held that the law requires that "a

26   plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately

27   caused the plaintiff's economic loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

11

1    Lead Plaintiffs asserted that loss causation is established by the stock market's reaction to a May

2    22, 2006 research analyst report issued by Merrill Lynch that examined the unusually fortuitous

3    timing of stock option grants by semiconductor equipment companies comprising the SOX,

4    including Marvell, as well as to other corrective disclosures made on July 3 and October 2, 2006.

5    Defendants, not surprisingly, vigorously contested Lead Plaintiffs' position, arguing, among other

6    things, that the May 22, 2006 analyst report lacked company-specific information sufficient to

7    establish loss causation, and that the later disclosures were not "corrective."  Joint Decl. ¶39.

8         Lead Plaintiffs would also have to overcome Defendants' arguments that damages were

9    minimal at best, because, in Defendants' view, other factors contributed to the drops in the price

10   of Marvell stock, including the price drop immediately following the May 22, 2006 report.  With

11   respect to the October 2, 2006 disclosure, Defendants claim that another negative disclosure made

12   by the Company that day is what caused all or most of the drop in Marvell's stock price.  Joint

13   Decl. ¶40.  Thus, although Lead Plaintiffs believe they would prevail on these issues, Defendants'

14   damages arguments presented real risks to the Class.  Joint Decl. ¶41.

15        Moreover, expert testimony is necessary in order to establish the amount, and indeed the

16   existence, of actual damages.  The loss causation and damages valuations of Lead Plaintiffs' and

17   Defendants' experts would vary substantially, rendering it impossible to predict with any

18   certainty which arguments would find favor with the jury.  *See In re Warner Commc'ns. Sec.*

19   *Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) (approving

20   settlement where "it is virtually impossible to predict with any certainty which testimony would

21   be credited, and ultimately, which damages would be found to have been caused by actionable,

22   rather than the myriad nonactionable factors such as general market conditions.").

23        In sum, although Co-Lead Counsel believe that the claims asserted in this Action are

24   meritorious, their experience has taught them how the risks discussed above can render the

25   outcome of a trial extremely uncertain.  *See In re Mfrs. Life Ins. Co. Premium Litig.*, Master File

26   No. 96-CV-230 BTM (AJB), 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998)

27   ("[E]ven if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial

28   would yield a greater recovery than the Settlement - which is not at all apparent - there is easily

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                   CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    enough uncertainty in the mix to support settling the dispute rather than risking no recovery in

2    future proceedings.").

3        Moreover, even if Lead Plaintiffs were to prevail at trial, risks to the Class would remain.

4    Recently in *In re Apollo Group, Inc. Securities Litigation*, the court threw out a jury verdict of

5    approximately $280 million in favor of the plaintiffs after a lengthy trial. CV 04-2147-PHX-JAT,

6    Order (D. Ariz. Aug. 4, 2008).  Likewise, in *In re Apple Computer Securities Litigation*, No. C-

7    84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a

8    verdict for plaintiffs after an extended trial.  Based upon the jury's findings, recoverable damages

9    would have exceeded $100 million.  However, the *Apple* court overturned the verdict, entering

10   judgment n.o.v. for the individual defendants, and ordered a new trial with respect to the

11   corporate defendant.  Consideration of the above risks supports approval of the Settlement as fair,

12   adequate and reasonable.

13           **b.      The Expense and Likely Duration of Continued**
                      **Litigation Favors Settlement_____**
14

15       The immediacy and certainty of a recovery is a factor for the Court to consider in

16   determining whether the proposed Settlement is fair, adequate and reasonable.   Courts

17   consistently have held that the expense and possible duration of the litigation should be

18   considered in evaluating the reasonableness of a settlement.  *Officers for Justice*, 688 F.2d at 626.

19   Approval of the Settlement will mean a present recovery for the Class.  If this case had continued

20   to trial, and appeal, in the interim there would have been lengthy formal discovery, class

21   certification briefing and summary judgment, with the outcome not a guaranteed victory for the

22   Class.  Even assuming that the case withstood summary judgment, a trial would have required

23   substantial, costly and prolonged expert testimony on both sides.   Moreover, a favorable

24   judgment for the Class, in light of the contested nature of every aspect of this case, would

25   unquestionably be the subject of post-trial motions and further appeals, which could prolong the

26   case for several more years.  *See, e.g., Warner Commc'ns.*, 618 F. Supp. at 745 (delay from

27   appeals is a factor to be considered).  Therefore, delay, not just at the trial stage, but through post-

28   trial motions and the appellate process as well, could force Class Members to wait many more

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                              CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    years for any recovery, reducing its value.  Joint Decl. ¶¶44-45

2         The Settlement provides for a $72 million cash benefit, plus interest, which is the fourth

3    largest settlement, in terms of dollar amount, in options backdating class action settlements.  *See*

4    f.n. 2 above.  Settlement of this litigation will ensure a recovery now, eliminating all risks of a

5    lower recovery or no recovery at all.  The Settlement is, therefore, in the best interest of the Class.

6              **3.      The Risk of Maintaining Class Action Status**

7         As discussed *infra,* Lead Plaintiffs believe that this Action meets all of the requirements

8    for class certification, and that the Court should finally certify a class for settlement purposes.

9    Although there may be a risk that a class would not be certified, Lead Plaintiffs believe that this is

10   a neutral factor in the approval analysis.  Joint Decl. ¶48.

11             **4.      The Extent of Discovery Completed and the Stage of the
                         Proceedings**
12

13        The Court is to consider the stage of the proceedings and the amount of information

14   available to the parties to assess the strengths and weaknesses of their case in determining the

15   fairness, reasonableness, and adequacy of a settlement.  *See Mego Fin. Corp.*, 213 F.3d at 459.

16        Lead Plaintiffs, through Plaintiffs' Counsel, conducted a thorough investigation into the

17   facts and circumstances relevant to the claims alleged in the Complaint.  Plaintiffs' Counsel's

18   investigation included, *inter alia*: (1) review of filings made by Marvell with the SEC; (2) review

19   of press releases, public statements, news articles, securities analysts' reports and other

20   publications disseminated by or concerning Marvell; (3) communications with former Marvell

21   employees; (4) review of publicly available information regarding the investigations by the SEC

22   and the DOJ into Marvell's stock option grants and practices; (5) review of documents filed in

23   certain legal proceedings regarding Marvell's stock option grants and practices; and (6) review of

24   other publicly available information about Marvell.  Co-Lead Counsel have also reviewed and

25   analyzed approximately 18,000 pages of documents previously produced by Defendants to the

26   SEC and DOJ in connection with their investigations, and have consulted with market and

27   damages experts.  Joint Decl. ¶¶22-25, 46.

28        Therefore, though all discovery was not yet complete, Co-Lead Counsel have had an

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

14

1   opportunity to thoroughly examine the issues raised in the Complaint and to examine the relative

2   strengths and weaknesses of Lead Plaintiffs' claims.  *See Mego Fin. Corp.*, 213 F.3d at 459

3   (quoting *Linney v. Cellular Alaska P'shp.*, 151 F.3d 1234, 1239 (9th Cir. 1998) (finding parties

4   could identify strengths and weaknesses of claims without formal discovery because, "in the

5   context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining

6   table' where the parties have sufficient information to make an informed decision about

7   settlement.").  Moreover, "[t]here is no precise formula for what constitutes sufficient evidence to

8   enable the court to analyze intelligently the contested questions of fact.  It is clear that the court

9   need not possess evidence to decide the merits of the issue, because the compromise is proposed

10  in order to avoid further litigation."  NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS § 11.45

11  (4th ed. 2002).  Consideration of this factor supports final settlement approval.

12          5.      **The Settlement Resulted from Arm's-Length Negotiations, is
                    Not the Product of Collusion, and is Supported by Experienced
13                  Counsel**

14          The Settlement is the product of extensive, arm's-length negotiations, including two

15  formal mediation sessions involving an experienced mediator.[9]  The negotiations were informed

16  by the knowledge Co-Lead Counsel gained by reviewing documents produced by Marvell,

17  Marvell's SEC filings, some of which set forth a summary of the Special Committee's findings

18  regarding options backdating at Marvell, and from consultation with market and damages experts.

19  Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair

20  settlement, taking into account the costs and risks of continued litigation.  In addition, all of the

21  Lead Plaintiffs were informed of the settlement negotiation process and one of the Lead Plaintiffs

22  participated in-person at the mediation.  The negotiations were at all times hard-fought and at

23  arm's-length, and have produced a result that Co-Lead Counsel believe to be in the best interests

24  of the Class.  This factor also weighs in favor of final settlement approval.  Joint Decl. ¶¶47, 49.

25

26

27  [9] As noted above, the assistance of a mediator has been considered a factor supporting the fairness
    of a settlement.  *E.g., Glass v. Fin. Servs. Inc.*, No. C-06-4068MMC, 2007 U.S. Dist. LEXIS
28  8476, at *15 (N.D. Cal. Jan. 26, 2007).

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1

### 6.     Reaction of the Class Supports Approval of the Settlement

2          The reaction of the Class supports approval of the Settlement.  Through October 12, 2009,

3    nearly 340,000 copies of the Notice have been mailed, and a summary notice was published in

4    *The Wall Street Journal* and over the *PR Newswire* on August 28, 2009.[10]  The time period for

5    objecting to or requesting exclusion from the Settlement expires on October 23, 2009.  As of the

6    filing of this Memorandum, no objection to the Settlement has been filed, and only twelve

7    requests for exclusion have been received.[11]  Joint Decl. ¶36.  Co-Lead Counsel will address any

8    objections or additional requests for exclusion received after this submission prior to the date of

9    the settlement approval hearing.

10         ### 7.     Presence of a Governmental Participant

11         This factor is also neutral because no government entity is involved in this Action and

12   none has taken a position in favor of or against the Settlement.[12]

13                                    *        *        *

14         Consideration of all the above factors supports approval of the Settlement as fair,

15   reasonable and adequate.

16

17

18   _____

19   [10]  *See* Affidavit of Rachel Braun-Wnorowski of Epiq Class Action and Claims Solutions
     ("Epiq"), the Court-approved claims administrator for this Action, attached as Exhibit 1 to the
     Joint Declaration (the "Epiq Affidavit"), at ¶¶9, 11.

20   [11]  A report detailing the twelve requests for exclusion received by Epiq is attached as Exhibit 4 to
21   the Epiq Affidavit.  Seven of the exclusion requests received (Nos. 1, 3, 6, 9, 10, 11 and 12),
     however, do not conform to the requirements for requesting exclusion because they do not
22   include all of the necessary information set forth in the Notice (*e.g.*, transactions in Marvell
     securities during the Class Period) and may be considered invalid exclusions.

23   [12]  In May 2008 the SEC brought a civil action against Marvell and Dai based on historical stock
24   option backdating.  Marvell and Dai, without admitting or denying the allegations, agreed to settle
     the SEC matter by paying financial penalties of $10 million and $500,000, respectively, and
25   agreeing to other non-monetary relief.  The SEC complaint did not name the other Defendants in
     this Action.  The SEC action would not materially assist the private litigation.  The settlements
26   with the SEC cannot be used to collaterally estop Marvell or Dai from contesting the claims
27   against them in this case, and could not be used as evidence of their alleged wrongdoing.  Joint
     Decl. ¶32, f.n. 23.

28

1    **IV.    THE PLAN OF ALLOCATION**

2        The fair, reasonable, and adequate standard used in assessing a proposed settlement also

3    applies when considering approval of a plan of allocation.  That standard is met in this case.  Joint

4    Decl. ¶¶56-59.

5        As stated by the court in *Omnivision*, 559 F. Supp. 2d at 1045 (internal quotations

6    omitted, emphasis added):

7        Approval of a plan of allocation of settlement proceeds in a class action…is
         governed by the same standards of review applicable to approval of the settlement
8        as a whole:  the plan must be fair, reasonable and adequate.  *In re Oracle Sec.
         Litig.*, No. C-90-0931 VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June
9        16, 1994) (citing *Class Plaintiffs. v City of Seattle*, 955 F.2d 1268, 1284-85 (9th
         Cir 1992)).  It is reasonable to allocate the settlement funds to class members
10       based on the extent of their injuries or the strength of their claims on the merits.
         *See Class Plaintiffs*, 1994 U.S. Dist. LEXIS 21593, at **3-4 (citing *In re Gulf
11       Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992 )).

12

13   *See also Torrisi* 8 F.3d at 1375-76; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp.

14   1379 (D. Ariz. 1989), *aff'd*, 955 F.2d 1268, 1291 (9th Cir. 1992).  Generally, "a plan of allocation

15   that reimburses class members based on the type and extent of their injuries is reasonable." *Ikon

16   Office Solutions*, 194 F.R.D. at 184 (citing *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp.

17   2d 313, 321 (D.N.J. 1998)).

18       Section 9 of the Notice describes the Plan of Allocation for the Net Settlement Fund.  The

19   Net Settlement Fund will be distributed *pro rata* to each "Authorized Claimant" based on the

20   Authorized Claimant's "Recognized Claim."  *See In re Broadcom Corp. Sec. Litig.*, Case No.

21   SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976, at *17 (C.D. Cal. Sept. 12, 2005)

22   (approving plan of allocation where the allocation was pro rata across the Class).  The Plan of

23   Allocation reflects the proposition that the price of Marvell securities was artificially inflated

24   during the Class Period (February 27, 2003 through October 2, 2006, inclusive) due to

25   misrepresentations and/or omissions by Defendants.  The Plan of Allocation allows for a: (1)

26   recovery for damages to common stock, calculated using a Class Member's purchase price, sales

27   price and/or the estimated economic loss per share; and (2) recovery for damages to options,

28   calculated using a Class Member's purchase price, sales price and/or the economic loss per share

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

17

1   for all shares covered by the put/call option contract, and discounted for the inclusion of

2   premiums on the options and the expected additional volatility of such derivative securities.  The

3   Plan of Allocation is not a formal damage study.  It is designed to compare one Class Member to

4   another for distribution purposes based on their respective transactions in Marvell securities

5   during the Class Period.  Joint Decl. ¶¶58-59.

6          As stated in the Notice, the determination of how to calculate a "Recognized Claim" and

7   the Plan of Allocation are based upon Co-Lead Counsel's assessment of the maximum

8   recoverable damages for Class Members and how to distribute the settlement funds in the fairest

9   manner.  In developing this Plan of Allocation, Co-Lead Counsel conferred with a damages

10  expert and the provisions of the Plan of Allocation reflect the expert's input, as well as Co-Lead

11  Counsel's evaluation of the factual and legal issues relating to loss causation and damages.

12         In developing how to calculate a "Recognized Claim" for purposes of the Plan of

13  Allocation, Co-Lead Counsel developed a formula for computing a Recognized Claim as

14  described in the Notice.  The formula reflects the different features of common stock and options,

15  the different amounts of estimated maximum recoverable damages and the degree to which the

16  estimated maximum recoverable damages varied during the Class Period, changing market

17  conditions, the prices for the Marvell securities, and the impact of the disclosures made on May

18  22, July 3 and October 2, 2006.

19         In order to formulate this Plan of Allocation, Co-Lead Counsel considered, among other

20  things: (1) the Class Period; (2) that the corrective news about Marvell's secret backdating came

21  out as the result of a series of disclosures; and (3) that other disclosures may have had some effect

22  on the price of Marvell's securities during the Class Period.  Co-Lead Counsel structured the Plan

23  of Allocation to provide, among other things: (1) an exclusion for Class Members whose

24  transactions resulted in a net profit; and (2) an exclusion for all transactions in Marvell shares that

25  were purchased/acquired during the Class Period and sold prior to May 22, 2006, the day of the

26  publication of the Merrill Lynch report, because sales of Marvell securities purchased/acquired

27  during the Class Period, but sold before May 22, 2006, even if they realized a loss, may not be

28  able to satisfy the loss causation requirements of the PSLRA and *Dura*.  For example, in

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

18

*Omnivision*, the court rejected a challenge to a plan of allocation in stating:

> Simply put there is no basis for [the objector who sold before any corrective disclosure] to recover damages. They bought and sold all of their OmniVision shares during the Class Period and held none at the time of the purportedly corrective disclosure. Where an investor sells his shares "before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L.Ed.2d 577 (2005); see also *In re CornerStone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819, at **27-28 (N.D. Cal. May 3, 2006) (plaintiffs who bought and sold stock before corrective disclosure cannot prove loss causation and therefore are not entitled to recover).

559 F. Supp. 2d at 1043 (citation omitted).

Class Members who are most likely to be able to establish loss causation at trial are those who purchased/acquired their Marvell securities before May 22, 2006 and then sold the same shares for a loss on May 22, 2006 or thereafter. However, even for these Class Members, the amount they would likely be able to recover at trial will vary depending upon the price paid for the shares and the price received at the time of sale. As a result, the Plan of Allocation provides that the losses to be allowed as a Recognized Claim will be determined as the lesser of the claimant's actual loss, or the average loss per share during the period in which the claimant sold the security.[13]

Although Class Members will benefit differently under the Plan of Allocation depending on the date(s) they purchased, acquired or sold their Marvell securities, "there is no rule that settlements benefit all class members equally …." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983). *See also In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. Sept. 8, 2009); *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981). Thus, intra-class allocations are routinely approved by courts, as here, based on differences in class members' individual claims and the timing of purchases of the securities at issue. *See Torrisi*, 8 F.3d at 1370 (approving settlement and plan of allocation which gave certain claims four times the weight of other claims); *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337 (N.D. Tex. 1976); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 67

---

[13] The complete formula for calculating a Recognized Claim is set forth in the Notice at pp. 6-8.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

CASE NO.: C-06-06286 RMW

19

1   (S.D.N.Y. 1993).

2          Among the factors that courts have given great weight in determining the fairness,

3   reasonableness and adequacy of a proposed plan of allocation is the opinion of class counsel.  *In*

4   *re NASDAQ Market-Makers Antitrust Litig.*, Nos. MDL 1023, *et al.*, 2000 U.S. Dist. LEXIS 304,

5   at *5 (S.D.N.Y. Jan. 18, 2000) ("An allocation formula need only have a reasonable, rational

6   basis, particularly if recommended by 'experienced and competent' Class Counsel.") (quoting

7   *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993)) (The court "affords considerable weight

8   to the opinion of experienced and competent counsel that is based on their informed

9   understanding of the legal and factual issues involved" in approving distribution of different

10  categories of claims reflecting differences in damages.).  The Plan of Allocation employed in this

11  case is recommended by experienced and fully-informed counsel after consultation with a

12  damages expert, and should be approved.

13         A.      **The Different Characteristics of Option Contracts**

14         Although purchases of call option and put option contracts on Marvell common stock are

15  included in the definition of the Class, these options are derivative securities, issued by the

16  Options Clearing Corporation and not by Marvell, and the price of these options is correlated only

17  partially to the price of Marvell stock.  Indeed, the price of call options and put options is heavily

18  influenced by other factors such as time available until the expiration of the option, interest rates

19  and the volatility in the price of Marvell stock, as well as the strike price of the options.[14]

20         Because of the characteristics unique to call and put options and the derivative nature of

21  the relationship between the price of options and the price of the underlying Marvell stock, the

22  Plan of Allocation recognizes that the May 22, July 3 and October 2, 2006 disclosures may have

23  had an indirect impact on the price of the options resulting in what may be a more attenuated

24  causal connection between the disclosures and the price of the options.  Because of the more

25  attenuated connection of option prices to the price of the underlying stock, the Plan of Allocation

26  _____

27  [14] These factors, along with the strike price of the option and the price of the underlying stock
    are part of the complex, Nobel Prize-winning Black-Scholes model for determining options

28  prices.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    recognizes 25% of losses stemming from option contracts, with no more than 8% of the Net

2    Settlement Fund to be distributed to Authorized Claimants from transactions in call and put

3    options.[15]

4            **B.      The Reaction of the Class Supports Approval of the Plan of Allocation**

5

6            The Notice describes the Plan of Allocation at great length, and to date, no Class Member

7    has objected to it.  The lack of objections supports a finding of fairness.  *See, e.g., NASDAQ*, 2000

8    U.S. Dist. LEXIS 304, at *6 ("Of substantial weight is the small number of objections to the

9    Proposed Plan."); *Maywalt v. Parker & Parsley Petroleum Co.*, No. 92 Civ 1152 (RWS), 1997

10   U.S. Dist. LEXIS 97, at **11-12 (S.D.N.Y. Jan. 9, 1997) (stating that lack of objections to plan of

11   allocation is an important factor in evaluating the plan), *aff'd*, 145 F.3d 513 (2d Cir. 1998).

12                                    *        *        *

13           Co-Lead Counsel believe they have developed a Plan of Allocation that fairly distributes

14   the Net Settlement Fund among Authorized Claimants based on the degree of loss experienced,

15   and that it should be approved as fair, reasonable, and adequate.[16]

16   **V.     DUE NOTICE OF THE PROPOSED SETTLEMENT HAS BEEN
             PROVIDED TO THE CLASS MEMBERS**

17

18           Nearly 340,000 copies of the Notice have been mailed to identifiable Class Members,

19   brokerage firms, banks and financial institutions.  In addition, a summary notice was published in

20   *The Wall Street Journal* and over the *PR Newswire* on August 28, 2009 and the Notice and Proof

21   of Claim have been posted on the claims administrator's website.  The Notice, as approved by the

22   Court and consistent with the PSLRA's requirements, provides detailed information concerning:

23   (1) the settlement amount and statement of recovery; (2) the rights of Class Members, including

24

25   [15] *See* Plan of Allocation, Notice at pp. 6-8.

26   [16] Finally, the Plan of Allocation contains several administrative provisions, including the
     application of the first-in, first-out method to calculate a Recognized Claim.  Also, no distribution
27   will be made if the recovery is $10.00 or less.  These provisions are typically found in approved
     plans of allocation in securities cases.

28
     NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
     OF PROPOSED CLASS ACTION SETTLEMENT AND                              CASE NO.: C-06-06286 RMW
     PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
     AND AUTHORITIES IN SUPPORT THEREOF

1   how to request exclusion and the manner in which objections can be lodged; (3) the nature,

2   history and progress of the litigation; (4) the proposed Settlement and reasons therefore; (5) the

3   process for filing a Proof of Claim; (6) a description of the Plan of Allocation of the Net

4   Settlement Fund among Class Members; (7) the fees and expenses to be sought by Plaintiffs'

5   Counsel and the estimated average cost per share if the amount requested is approved by the

6   Court; (8) the date, time and place of the settlement hearing; (9) the necessary information for the

7   examination of the Court record should any Class member elect to do so; and (10) the

8   identification of counsel to contact with questions regarding the Settlement.

9          The Notice in this case provided the required PSLRA information and was "reasonably

10   calculated, under all the circumstances, to apprise interested parties of the pendency of the action

11   and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank &*

12   *Trust Co.*, 339 U.S. 306, 314 (1950). Thus, the method of Notice described above satisfies the

13   requirements of due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see*

14   *also Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)

15   ("First-class mail and publication have consistently been considered sufficient to satisfy the

16   notice requirements of Rule 23(d)(2) and Rule 23(e) for advising class members ...."). In addition,

17   the Notice satisfies all the requirements of the PSLRA, the Class Action Fairness Act of 2005

18   ("CAFA") and Rule 23.  *See* PSLRA, 15 U.S.C. §78u-4(e); CAFA, 28 U.S.C. §§1332(d), 1453

19   and 1711-1715; Fed. R. Civ. P. 23.  Defendants have sent out notice pursuant to CAFA.

20   **VI.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS UNDER**
         **FEDERAL RULE OF CIVIL PROCEDURE 23 IS APPROPRIATE**
21

22          The Court certified the Class for purposes of settlement and dissemination of the Notice

23   on July 31, 2009.  Lead Plaintiffs now seek final certification of a Class for settlement purposes

24   of all persons who purchased or acquired Marvell securities between February 27, 2003 and

25   October 2, 2006, inclusive, and who suffered damages thereby.  Excluded from the Class are: (1)

26   the Defendants; (2) members of the immediate family of each Individual Defendant; (3) any

27   person who was an officer or director of Marvell during the Class Period; (4) any firm, trust,

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                          CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1  corporation, or other entity in which any Defendant has a controlling interest; and (5) the legal

2  representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded

3  party.[17]

4         In order for a settlement class to be certified, the requirements of Rule 23 must generally

5  be satisfied.  *Hanlon*, 150 F.3d at 1019 (citing *Amchem Prods. Inc. v. Windsor,* 521 US. 591, 613

6  (1997)).  Trial manageability, however, is not a factor to consider when deciding whether to

7  certify a settlement class, because the idea is that there will not be a trial.  *Amchem*, 521 U.S. at

8  620.

9         Fed. R. Civ. P. 23(a)(1) – (4) provides four prerequisites that must be satisfied before a

10 class can be certified: (1) the class must be so numerous that joinder of all members is

11 impracticable, (2) questions of law or fact that are common to the class, (3) the claims of the

12 representative parties are typical of the claims of the class, (4) the representative parties will fairly

13 and adequately protect the interests of the class.  In addition, common questions of law or fact

14 must predominate over questions that affect only individual members of the class, and a class

15 action must be found to be superior to other available methods of adjudication.  Fed. R. Civ. P.

16 23(b)(3).

17        For the reasons set forth in Lead Plaintiffs' Notice of Motion and Motion for Preliminary

18 Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in

19 Support Thereof [Doc. 279], listed in this Court's Preliminary Approval Order [Doc. 284], and set

20 forth in the Joint Declaration at ¶¶50-55, all of the requirements of Rule 23 are met and final

21 certification of the Class for settlement purposes is appropriate here.

22 **VII.   CONCLUSION**

23        Because the Settlement and Plan of Allocation are fair, reasonable and adequate, Lead

24 Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement pursuant to

25 Fed. R. Civ. P. 23(e)(2); and (2) approve the Plan of Allocation.  Also, because the requirements

26

27 [17] Also excluded from the Class are all persons and entities who exclude themselves from the Settlement by timely requesting exclusion in accordance with the requirements set forth in the

28 Notice.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

of Fed. R. Civ. P. 23 (a) (1)-(4) and (b)(3) are met, Lead Plaintiffs respectfully ask the Court to finally certify the Class for settlement purposes.

DATED:   October 16, 2009                    Respectfully Submitted,


                                                          /S/
                                             Michael K. Yarnoff (admitted *Pro Hac Vice*)
                                             John A. Kehoe (admitted *Pro Hac Vice*)
                                             Bharati O. Sharma
                                             Jennifer L. Enck
                                             **BARROWAY TOPAZ KESSLER
                                                MELTZER & CHECK, LLP**
                                             280 King of Prussia Road
                                             Radnor, PA 19087
                                             Telephone:  610-667-7706
                                             Facsimile:   610-667-7506
                                             myarnoff@btkmc.com
                                             jkehoe@btkmc.com
                                             bsharma@btkmc.com
                                             jenck@btkmc.com


                                             Joseph C. Kohn (admitted *Pro Hac Vice*)
                                             Denis F. Sheils (admitted *Pro Hac Vice*)
                                             William E. Hoese (admitted *Pro Hac Vice*)
                                             **KOHN, SWIFT & GRAF, P.C.**
                                             One South Broad Street, Suite 2100
                                             Philadelphia, PA 19107
                                             Telephone:  215-238-1700
                                             Facsimile:  215-238-1968
                                             jkohn@kohnswift.com
                                             dsheils@kohnswift.com
                                             whoese@kohnswift.com

                                             ***Co-Lead Counsel for Lead Plaintiffs***


                                             Joseph J. Tabacco, Jr. (Bar No. 75484)
                                             Nicole Lavallee (Bar No. 165755)
                                             Julie J. Bai (Bar No. 227047)
                                             **BERMAN DeVALERIO**
                                             425 California Street, Suite 2100
                                             San Francisco, CA 94104
                                             Telephone:  415-433-3200
                                             Facsimile:   415-433-6382
                                             jtabacco@bermandevalerio.com
                                             nlavallee@bermandevalerio.com
                                             jbai@bermandevalerio.com

                                             ***Liaison Counsel for Lead Plaintiffs***

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                        CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    Jeffrey J. Angelovich (admitted Pro Hac Vice)
     Bradley E. Beckworth (admitted Pro Hac Vice)
2    Susan Whatley (admitted Pro Hac Vice)
     **NIX PATTERSON & ROACH, LLP**
3    205 Linda Drive
     Daingerfield, TX 75638
4    Telephone:  903-645-7333
     Facsimile:   903-645-4415
5    bbeckworth@nixlawfirm.com
     jangelovich@nixlawfirm.com
6    susanwhatley@nixlawfirm.com

7    *Additional Counsel for Lead Plaintiffs*

8

9                    **E-Filing Attestation**

10       I, Nicole Lavallee, am the ECF User whose ID and password are being used to file this

11   document.  In compliance with General Order 45 X.B., I hereby attest that Michael K. Yarnoff,

12   whose e-filing signature appears above, has concurred in the filing of this document.

13

14                    _____/S/_____
                          Nicole Lavallee

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND                    CASE NO.: C-06-06286 RMW
PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF
                              25